# Exhibit 1

_Verified Correct Copy of Original 4/15/2022._

FILED

22 APR 15 PH 2:59

4ᵀᴴ JUDICIAL DIST.

1
2
3
4
5
6
7       IN THE CIRCUIT COURT OF THE STATE OF OREGON

8       IN AND FOR THE COUNTY OF MULTNOMAH

9   KEYSTONE REAL ESTATE LENDING
    FUND, L.P., a Delaware limited partnership,
10                                                  Case No. 22CV07952
                        Plaintiff,
11                                                  ORDER APPOINTING AMPLĒO AS
            v.                                      RECEIVER
12
    CAPREF LLOYD CENTER EAST LLC, a
13  Delaware limited liability company; and
    CYPRESS ACQUISITION PARTNERS
14  RETAIL FUND, L.P., a Delaware limited
    partnership,
15
                        Defendants.
16

17

18          This matter came before the Court on Plaintiff's Motion for Appointment of Receiver, (the

19  "**Motion**") filed by KEYSTONE REAL ESTATE LENDING FUND, L.P. ("**Keystone**" or

20  "**Plaintiff**"), appearing by Snell & Wilmer L.L.P. In the Motion, Keystone requests, among other

21  relief, the entry of an Order appointing CFO Solutions LLC, d/b/a Amplēo ("**Amplēo**"), as the

22  Receiver (defined below) for the "**Loan Collateral**".

23  ///

24  ///

25  ///

26  ///

ORDER APPOINTING RECEIVER - 1

_Verified Correct Copy of Original 4/15/2022._

The Loan Collateral is more particularly described as the following real property owned by Defendant, CAPREF Lloyd Center East LLC ("**Borrower**"):

That certain real property located in the County of Multnomah, Oregon, and more particularly described as follows:

PARCEL 1:

PARCEL 2, PARTITION PLAT 1999-146, IN THE CITY OF PORTLAND, COUNTY OF MULTNOMAH, STATE OF OREGON, RECORDED NOVEMBER 1, 1999, AS DOCUMENT NO. 99201508.

PARCEL 2: (EASEMENT)

EASEMENT RIGHTS AND EASEMENTS CONSTITUTING RIGHTS IN REAL PROPERTY, INCLUDING EASEMENTS FOR INGRESS, EGRESS, PARKING AND UTILITIES, FOR THE BENEFIT OF PARCEL 1, AS CREATED (AND/OR PURPORTED TO BE CREATED), DEFINED AND LIMITED BY (AND SUBJECT TO THE TERMS AND CONDITIONS OF) THAT CERTAIN CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT, DATED JULY 19, 1990, RECORDED SEPTEMBER 5, 1990 IN VOLUME 2340, PAGE 1635 AND AS FEE NO. 90082469, AS AFFECTED BY (1) PARTIAL RELEASE OF CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT RECORDED DECEMBER 23, 1993 IN VOLUME 2806, PAGE 0272 AND AS FEE NO. 93176795, (2) PARTIAL RELEASE OF CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT RECORDED APRIL 29, 1994 AS FEE NO. 94068247, (3) SECOND AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT BY AND BETWEEN GLIMCHER LLOYD VENTURE, LLC, A DELAWARE LIMITED LIABILITY COMPANY, NORDSTROM, INC., A WASHINGTON CORPORATION AND SEARS, ROEBUCK AND CO., A NEW YORK CORPORATION, DATED MARCH 2, 1999, RECORDED JANUARY 6, 2000, AS FEE NO. 2000 001863, AND (4) THIRD AMENDMENT TO CONSTRUCTION, OPERATION AND RECIPROCAL EASEMENT AGREEMENT BY AND BETWEEN GLIMCHER LLOYD VENTURE, LLC, A DELAWARE LIMITED LIABILITY COMPANY, NORDSTROM, INC., A WASHINGTON CORPORATION AND SEARS, ROEBUCK AND CO., A NEW YORK CORPORATION, DATED MAY 15, 2013, RECORDED JUNE 11, 2013, AS FEE NO. 2013079097, ALL IN THE CLERK'S OFFICE OF MULTNOMAH COUNTY, OREGON, OVER THE FOLLOWING DESCRIBED TRACT A AND TRACT B:

PARCEL 2, TRACT A (EASEMENT):

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

_ Verified Correct Copy of Original 4/15/2022._

A TRACT OF LAND SITUATED IN THE NORTHWEST ONE-QUARTER OF SECTION 35, TOWNSHIP 1 NORTH, RANGE 1 EAST OF THE WILLAMETTE MERIDIAN, IN THE CITY OF PORTLAND, COUNTY OF MULTNOMAH AND STATE OF OREGON, SAID TRACT BEING A PORTION OF BLOCKS 114 AND 115 OF HOLLADAY'S ADDITION TO EAST PORTLAND [PLAT BOOK 1, PAGE 0072], AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF SAID BLOCK 114, HOLLADAY'S ADDITION [PLAT BOOK 1, PAGE 0072],
THENCE NORTH ALONG THE WEST LINE OF SAID BLOCK 114 AND THE WEST LINE OF A TRACT DEDICATED FOR STREET PURPOSES BY DEED RECORDED IN VOLUME 1865, PAGE 0292, MULTNOMAH COUNTY DEED RECORDS, A DISTANCE OF 140.00 FEET;
THENCE EAST PARALLEL WITH THE SOUTH LINE OF SAID BLOCK 114, A DISTANCE OF 10.00 FEET TO A POINT IN THE EAST LINE OF SAID DEDICATED TRACT AND THE POINT OF BEGINNING OF THE TRACT HEREIN TO BE DESCRIBED;
THENCE NORTH ALONG THE EAST LINE OF SAID DEDICATED TRACT AND PARALLEL WITH THE WEST LINE OF SAID BLOCKS 114 AND 115, A DISTANCE OF 324.67 FEET;
THENCE EAST 15.67 FEET;
THENCE SOUTH 15.00 FEET;
THENCE EAST 17.33 FEET TO A POINT OF CURVE;
THENCE ALONG THE ARC OF A 5.17 FOOT RADIUS CURVE TO THE RIGHT THROUGH A CENTRAL ANGLE OF 90° 00' 00" AN ARC LENGTH OF 8.12 FEET, SAID CURVE IS SUBTENDED BY A CHORD WHICH BEARS SOUTH 45° 00' 00" EAST 7.31 FEET;
THENCE EAST 116.83 FEET;
THENCE SOUTH 20.42 FEET;
THENCE EAST 23.25 FEET;
THENCE SOUTH 251.08 FEET;
THENCE SOUTH 45° 00' 00" WEST 46.67 FEET;
THENCE WEST 145.25 FEET TO THE POINT OF BEGINNING.

PARCEL 2, TRACT B (EASEMENT)

PARCEL 1, PARTITION PLAT 1999-146, IN THE CITY OF PORTLAND, COUNTY OF MULTNOMAH AND STATE OF OREGON, RECORDED NOVEMBER 1, 1999 AS DOCUMENT NO. 99201508.

PARCEL 3: (EASEMENT)

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

EASEMENT RIGHTS AND EASEMENTS CONSTITUTING RIGHTS IN REAL PROPERTY AS CREATED (AND/OR PURPORTED TO BE CREATED), DEFINED AND LIMITED BY (AND SUBJECT TO THE TERMS AND CONDITIONS OF) THAT CERTAIN EASEMENT AGREEMENT BY AND BETWEEN GLIMCHER LLOYD VENTURE, LLC, A DELAWARE LIMITED LIABILITY COMPANY AND SEARS, ROEBUCK AND CO., A NEW YORK CORPORATION, RECORDED JANUARY 6, 2000 AS FEE NO. 2000 001862, IN THE CLERK'S OFFICE OF MULTNOMAH COUNTY, OREGON.

PARCEL 4: (EASEMENT)

EASEMENT RIGHTS AND EASEMENTS CONSTITUTING RIGHTS IN REAL PROPERTY AS CREATED (AND/OR PROPORTED TO BE CREATED), DEFINED AND LIMITED BY (AND SUBJECT TO THE TERMS AND CONDITIONS OF) THAT CERTAIN CONSTRUCTION, ENCROACHMENT, USE, AND OCCUPANCY EASEMENT AGREEMENT BY AND BETWEEN BORROWER LLOYD II LLC, A DELAWARE LIMITED LIABILITY COMPANY AND BORROWER LLOYD CENTER EAST LLC, A DELAWARE LIMITED LIABILITY COMPANY, RECORDED NOVEMBER, 2017, AS DOCUMENT NO. 2017 133199, IN THE CLERK'S OFFICE OF MULTNOMAH COUNTY, OREGON.

The Loan Collateral also includes all improvements, fixtures, and personal property located on or used in connection with the real property, all rents, profits, contract rights or leases, and all other personal property owned by the Borrower, as described in the documents evidencing the Loan obligations of Borrower to Keystone, as further described herein.

The Court, having considered the pleadings, including the Motion, Declaration of Heston H. Nielson, and the Declaration of Matthew R. McKinlay, a member and authorized representative of the proposed Receiver (defined below), the other pleadings, papers and exhibits submitted in support thereof, and the arguments and evidence (if any) presented in support of the Motion, and good cause appearing therefore, makes the following findings:

1.      Good and sufficient grounds exist to grant the Motion and appoint a receiver over the Loan Collateral, in that:

A.      It appears that Keystone holds a properly perfected lien on and security interest against the Loan Collateral;

B.      The Loan Collateral secures the performance and payment of substantial monetary

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

_ Verified Correct Copy of Original 4/15/2022._

1  obligations owed by the Borrower to Keystone;

2  C.    The monetary obligations owed by the Borrower to Keystone have been accelerated

3  and are payable in full, have not been paid, and are in default;

4  D.    The loan evidenced by the Note described in the Motion (the "**Loan**") is due and

5  payable in full, and events of default have occurred concerning the Loan. Keystone is owed over

6  $8,751,532 on the Loan to the Borrower; Keystone has made demand for payment in full, and the

7  outstanding balance of the Loan remains due and owing.

8  E.    The provisions of the Deed of Trust executed by the Borrower that secure all

9  indebtedness owed by the Borrower to Keystone provide that upon the occurrence of an event of

10  default—which has occurred here with respect to the Loan due and owing to Keystone—Keystone

11  may commence an action to have a receiver appointed by any court of competent jurisdiction to take

12  possession of the Loan Collateral described therein.

13  F.    The Loan Collateral consists primarily of real property, which may not be insured or

14  protected, and the Borrower has not been paying property taxes as they come due, or maintaining or

15  managing the real property in a profitable manner, as the Loan Collateral is not generating any

16  income. In short, the Loan Collateral is in danger of being lost, impaired, destroyed or dissipated

17  without a receiver being appointed to oversee it.

18  G.    The Borrower appears to be insolvent. Under the Receivership Code, "insolvency'

19  means a financial condition of a person such that . . .  the person is not generally paying debts as

20  they become due." ORS 37.030(8).  Under the Uniform Commercial Code, as adopted in Oregon,

21  "insolvent means: (i) having generally ceased to pay debts in the ordinary course of business other

22  than as a result of bona fide dispute; (ii) being unable to pay debts as they become due; or (iii) being

23  insolvent within the meaning of federal bankruptcy law." ORS 71.2010(w). Federal bankruptcy law,

24  in turn, says insolvency includes a "financial condition such that the sum of such entity's debts is

25  greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32).

26  Here, Keystone is owed over $8,751,532 by Borrower. The Loan is in default. Borrower has

ORDER APPOINTING RECEIVER - 5

_Verified Correct Copy of Original 4/15/2022._

1    ceased paying debts in the ordinary course of business, has failed to pay property taxes on the Loan

2    Collateral, and has made clear that it is unwilling or unable to pay debts as they come due.

3        2.    The failure to appoint a receiver in this action over the Loan Collateral could result

4    in the immediate and irreparable injury, loss, or damage to Keystone's interest in the Loan Collateral.

5        3.    The appointment of a receiver over the Loan Collateral with, among other things, the

6    powers set forth in ORS 37.060 *et seq.* (a) to collect, control, maintain and manage the Loan

7    Collateral, (b) to market and sell the Loan Collateral, to operate the Loan Collateral preceding a sale

8    or other disposition of the Loan Collateral, (c) to assume or reject executory contracts and leases

9    related to the Loan Collateral, and (d) to collect proceeds from the Loan Collateral and apply the

10   proceeds over and above the cost of the receivership against the indebtedness owed to Keystone and

11   to other claims per the statutory priority scheme of the Receivership Code (defined below), is

12   reasonably necessary to preserve and protect the Loan Collateral, and to ensure that the Loan

13   Collateral is not lost, dissipated, damaged or commingled.

14       4.    Other potential remedies, including legal remedies, are either unavailable or

15   inadequate.

16       5.    Notice as required by Oregon law has been properly and timely given to all parties

17   entitled to such notice, and no defendant has appeared or filed an objection to the appointment of

18   Receiver, or any objections that have been filed have been overruled.

19       Based upon the foregoing findings of fact, and such other facts as the Court made upon the

20   record, which are incorporated herein by this reference, and pursuant to ORCP 79, 80, 82 and the

21   Receivership Code (as defined below) now in effect, it is hereby **ORDERED, ADJUDGED AND**

22   **DECREED**, as follows:

23       **1.    APPOINTMENT OF RECEIVER.** CFO Solutions LLC, d/b/a Ampleo

24   ("**Receiver**"), whose office is located at 13601 West McMillan Road, Suite 102, PMB 320, Boise,

25   Idaho  83713;  Telephone:  (208)  724-2257;  Facsimile:  (208)  562-4110;  email:

26   mmckinlay@ampleo.com, shall be, and hereby is, appointed as receiver over the Loan Collateral,

ORDER APPOINTING RECEIVER - 6

_Verified Correct Copy of Original 4/15/2022._

1    on the further terms and conditions of this Order.

2    As a condition to the effectiveness of this Order and the Receiver's appointment, the
3    Receiver shall post a Receiver's bond in the amount of $100,000.00 within seven days of the date
4    of this Order. The Receiver is authorized to use the Loan Collateral to fund the bond premium. The
5    Receiver is authorized to act by and through its agents, representatives and employees. During the
6    term of the Receiver's appointment, and until further order of the Court, the Loan Collateral shall
7    remain under the Court's exclusive jurisdiction. The Receiver is not interested in this action and is
8    competent and qualified to act as the receiver over the Loan Collateral. The Court has exclusive
9    authority over the Receiver. The Receiver shall not be subject to the control of any other parties to
10   this matter, but shall be subject only to the Court's direction in the fulfillment of the Receiver's
11   duties.

12   A.    At all times until the Receiver is discharged by the Court, the Receiver shall maintain
13   errors and omissions insurance with a policy limit of at least $500,000.00 per claim.

14   B.    The Receiver shall file with the Court and serve on all parties in interest an Opening
15   and Inventory Report (the "**Opening Report**") within forty-five days of the entry of this Order. The
16   Opening Report shall contain a summary of the Receiver's findings at the takeover as well as an
17   inventory of the Loan Collateral in the Receiver's possession.

18   C.    So long as any part of the Loan Collateral remains in the Receiver's possession, the
19   Receiver shall file and serve on all parties in interest quarterly reports of the condition and operation
20   of the Loan Collateral in the receivership estate within thirty (30) days of the closing of each
21   accounting period or quarter ("**Interim Reports**"). These Interim Reports shall include the
22   Receiver's fees and expenses of the receivership estate incurred for each reporting period for the
23   operation and administration of the receivership estate. The Receiver shall follow accounting
24   standards typical for similar properties, and may enlist the aid of accountants for preparation of the
25   Interim Reports.

26   ///

ORDER APPOINTING RECEIVER - 7

_Verified Correct Copy of Original 4/15/2022._

2.    **INCORPORATION OF OREGON RECEIVERSHIP CODE.** The Oregon Receivership Code (the **"Receivership Code"**) (ORS 37.020 et seq.) is expressly incorporated herein by this reference. To the extent of any inconsistency between the terms, conditions and requirements of this Order and the terms, conditions and requirements of the Receivership Code, the Receivership Code shall control.

3.    **SUBJECT TO APPLICABLE LAW THAT EXCLUDES CERTAIN TYPES OF COLLATERAL, ALL LOAN COLLATERAL IS HEREBY PLACED IN THE POSSESSION OF THE RECEIVER, AND UNDER THE COURT'S CONTROL, PENDING FURTHER ORDERS OF THE COURT.** The Receiver, as an officer of this Court, shall have and take possession, custody and control, either physically or constructively as determined by the Receiver in his, her or its sole and absolute discretion, and subject to all existing and valid liens, claims and encumbrances of secured or lien creditors (including all liens and claims of Plaintiff) of the Loan Collateral, and any and all rents, income, profits or proceeds of the Loan Collateral (including but not limited to all cash, checks and credit card receipts), and all rights, entitlements, leases, interests, contracts, contracts for sale, and business affairs associated with and relating to the Loan Collateral, both tangible and intangible and both choate and inchoate, whether now existing or after-acquired, and any and all books and records related to the Loan Collateral (hereinafter the **"Receivership Estate"**).

The Receivership Estate includes, but is not necessarily limited to, the following types or categories of real property of the Borrower, or in which any or all of the Defendants may have an interest, whether legal or equitable:

a.    the real property located in Portland Oregon with Assessor's Parcel Numbers R488239 and R649795810, and as more particularly described in the Deed of Trust (**"Deed of Trust"**) recorded in the Official Records of Multnomah County on March 24, 2017, as Instrument No. 2017-035671, as amended by that First Amendment to Deed of Trust, Assignment of Rents, Security Agreement and

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

_Verified Correct Copy of Original 4/15/2022._

1  Fixture Filing dated February 4, 2019 and recorded on March 20, 2019 as

2  Instrument No. 2019-027801, and further amended by that Second Amendment

3  to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing

4  (together, the "**Real Property**");

5  **4.    POWERS AND DUTIES OF RECEIVER WITH RESPECT TO THE**

6  **RECEIVERSHIP ESTATE.** With respect to the Receivership Estate, the Receiver is granted all

7  powers and is charged with all duties granted or imposed by the Receivership Code, including but

8  not limited to the following powers and duties:

9      A.    To enter upon and take possession, custody and control of the Receivership Estate,

10  whether tangible or intangible, and all income, proceeds and profits thereof, with the power and

11  authority to preserve, protect, and liquidate those assets and to distribute the proceeds thereof to the

12  party or parties legally entitled thereto;

13      B.    To seize and collect any and all funds or other assets which constitute income,

14  proceeds or profits of the Receivership Estate, in whatever form and wherever located, including but

15  not limited to any and all cash, deposits, accounts, bank accounts, other cash accounts or cash

16  equivalents, and lock box funds, and to change the signatory authority on all such accounts related

17  to the Receivership Estate, with the power and authority to distribute such income, proceeds or

18  profits to the party or parties legally entitled thereto;

19      C.    To present or otherwise process for payment any checks, money orders, credit card

20  receipts or payments or other forms of payment made payable to the Borrower, which constitute

21  rents, profits, income, or proceeds of the Receivership Estate, endorse the same and collect the

22  proceeds thereof, such proceeds to be held, used and maintained as elsewhere provided herein;

23      D.    To open and utilize bank accounts for receivership funds relating to the Receivership

24  Estate, with such funds to be held in a federal insured financial institution with an office in Boise,

25  Idaho;

26  ///

ORDER APPOINTING RECEIVER - 9

_ Verified Correct Copy of Original 4/15/2022._

E.    Subject to further requirements of this Order and any requirements of the Receivership Code, and in the Receiver's business discretion, to hire, employ or contract with third parties to access computer files related to the Receivership Estate, which are password protected or not otherwise readily accessible to the Receiver;

F.    To have and collect all rents, income, proceeds or other profits generated by or from the Receivership Estate, and to deposit the same into one or more bank or other financial accounts controlled by the Receiver;

G.    To take any and all other actions with respect to the Receivership Estate, including managing its employees (if any), assets, vendors, creditors, debtors, tenants, customers and third-parties which in the Receiver's business discretion the Receiver finds to be reasonably necessary and prudent to preserve and protect the Receivership Estate, and to avoid any diminution or impairment to the value of the Receivership Estate, which may include, but is not limited to, the following:

    1.    Expending any cash or other income generated from the Receivership Estate;

    2.    Paying for maintenance and operating expenses and taxes;

    3.    Prosecuting and defending legal actions in respect of the Receivership Estate;

    4.    Subject to the requirements of this Order and any requirements of the Receivership Code, employing attorneys, accountants, investigators, consultants, and any other persons or entities deemed necessary by the Receiver to assist the Receiver in the discharge of the Receiver's duties under this Order, with the costs of such services to be paid out of the Receivership Estate in the ordinary course of business as and when invoiced, so long as the fees charged for such services are deemed by the Receiver to be usual and customary;

    5.    The Receiver shall give notice to Plaintiff, Borrower, other Defendants, and all other interested parties of the fees to be paid and expenses to be reimbursed to the Receiver and its professionals on a quarterly basis in the Interim Reports, and shall be authorized to make such payments unless the Receiver receives a written objection within fourteen (14) days of such notice.

ORDER APPOINTING RECEIVER - 10

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

_Verified Correct Copy of Original 4/15/2022._

1  If an objection is received, the Receiver may pay any fees and reimburse any expenses not subject

2  to objection, and may promptly file a motion with the Court to have such objection heard and ruled

3  upon;

4        6.     Subject to and limited by any contrary requirements set forth in the

5  Receivership Code, purchasing such merchandise, materials, supplies, and services as the Receiver

6  deems necessary and advisable to assist the Receiver in performing the Receiver's duties hereunder,

7  and to pay therefore the ordinary and usual rates and prices in the ordinary course, provided,

8  however, that the Receiver shall obtain the prior approval of the Court after appropriate notice to

9  parties in interest for any singular transaction which will cost the Receivership Estate more than

10  $25,000.00;

11        7.     Subject to and limited by any contrary requirements set forth in the

12  Receivership Code, transferring, disposing of, selling and/or abandoning any tangible or intangible

13  assets of the Receivership Estate, including but not limited to any accounts, contract rights,

14  documents, documents of title, payment intangibles, investment property, chattel paper, instruments,

15  deposit accounts, inventory, equipment, general intangibles (including all intellectual property as

16  defined in the Loan Documents), trade secrets, trade processes and business lines, provided,

17  however, that the Receiver shall obtain the prior approval of this Court after appropriate notice to

18  parties in interest respecting the proposed terms of any such dispositions if the aggregate book value

19  or market value of the same is reasonably believed by the Receiver to be greater than $25,000.00;

20        8.     Investigating the Receivership Estate and, in the Receiver's business

21  discretion, preparing such additional report or reports (beyond those required by this Order) that the

22  Receiver determines to be necessary and proper;

23        9.     Subject to and limited by any contrary requirements set forth in the

24  Receivership Code, entering into or modifying contracts affecting any part or all of the Receivership

25  Estate, including, without limitation, employment contracts, independent contractor agreements,

26  leases, daily rental agreements, and service agreements, provided, however, that the Receiver shall

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

_ Verified Correct Copy of Original 4/15/2022._

1    obtain the prior approval of this Court after appropriate notice to parties in interest respecting the

2    proposed terms of any such contracts or modifications of such contracts if the aggregate costs of the

3    contracts or the modifications over their term are reasonably expected by the Receiver to be greater

4    than $25,000.00;

5            10.    The Receiver shall have the right to assume or reject executory contracts and

6    unexpired leases as provided in ORS 37.240;

7            11.    Subject to and limited by any contrary requirements set forth in the

8    Receivership Code, paying and discharging out of the funds and assets coming into the hands of the

9    Receiver all of the costs and expenses of the Receivership Estate, including all taxes, governmental

10   assessments and charges lawfully imposed upon the Receivership Estate, provided, however, that

11   the Receiver shall obtain the prior approval of the Court after appropriate notice to parties in interest

12   for any singular transaction or expense which will cost the Receivership Estate more than

13   $25,000.00;

14           12.    Applying for, obtaining, and paying any reasonable fees for any lawful

15   license, permit or other governmental approval relating to the Receivership Estate; confirming the

16   existence of and, to the extent permitted by law, exercising the privileges of any existing license or

17   permit; and doing all things necessary to protect and maintain such licenses, permits and approvals,

18   subject to the further provisions of this Order;

19           13.    Hiring, firing, selecting and retaining employees and independent contractors

20   as the Receiver deems reasonable or necessary to preserve and maintain the value of the Receivership

21   Estate;

22           14.    Notifying all federal and state taxing and applicable regulatory agencies in

23   accordance with any applicable laws imposing this duty, including 26 U.S.C. § 6036;

24           15.    Presenting or recording a certified copy of this Order to all appropriate

25   governmental entities as proof of the Receiver's authority hereunder;

26   ///

ORDER APPOINTING RECEIVER - 12

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

_ Verified Correct Copy of Original 4/15/2022._

16.     The Receiver may issue demand that the U.S. Postal Service grant exclusive possession and control of mail, including postal boxes, as may have been used by the Borrower and may direct that certain mail related to the Loan Collateral be re-directed to the Receiver;

17.     In discharging its above duties, the Receiver may avoid administering unsecured claims or providing notice to unsecured creditors or filing a plan of distribution if, in the Receiver's business judgment, no purpose would be served thereby; and

18.     The Receiver is authorized to seek the assistance of the County Sheriff or other law enforcement officials as necessary or proper to preserve the peace and protect the Receivership Property, the Loan Collateral, and to enforce this Order. The Sheriff of Multnomah County, Oregon, is hereby authorized and directed to assist in the enforcement of the terms of this Order as may be requested by the Receiver. The Sheriff of every other county in the state of Oregon is similarly authorized and directed to assist in the enforcement of the terms of this Order as may be requested by the Receiver to the extent any of the Receivership Estate property is found or located in said county and/or to the extent any person holding any portion of the Receivership Estate property or otherwise failing to comply with the terms of this Order is found or located in said county.

19.     The Receiver shall have authority to market and sell the Loan Collateral, to enter into listing agreements and sale agreements for the sale of the Loan Collateral subject to further orders of the court as to the terms of any such listing contract or sales agreement.  Receiver is authorized to select a purchase offer for the sale of any portion of the Loan Collateral that Receiver believes would serve the best interest of the Receivership Estate. Provided, however, that, before any proposed sale by Receiver is finalized, Receiver shall (a) obtain the prior, written consent of Keystone, (b) provide at least fourteen calendar days prior notice of the proposed sale to Borrower and its counsel (if any) to provide the opportunity for the same to object to any such proposed sale, (c) set a further hearing on any objections that are filed, and (d) obtain a further order from the Court approving Receiver's proposed sale of the Loan Collateral or any part thereof.  Notwithstanding the foregoing, the Receiver's authority to market and sale the Loan Collateral shall not impact or

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

_ Verified Correct Copy of Original 4/15/2022._

1  preclude Keystone's ability to "credit bid" some or all of any outstanding amount owed to it, in its

2  discretion, as part of any sale process contemplated herein.

3       **5.**    **RECEIVER COMPENSATION AND OTHER MATTERS.** The Receiver shall:

4       A.    The Receiver is authorized to be compensated in the ordinary course of business for

5  work done in connection with the Receivership (including work done in preparation for its

6  commencement) at the rate of $295 per hour for Matthew McKinlay, and Ampleo project managers,

7  associates and other staff at their current rates of $75–$250 per hour, which rates will be subject to

8  annual increases of not more than ten percent (10%) per year on January 1 of each calendar year

9  while this receivership remains open, plus actual out of pocket expenses reimbursable at cost with

10 no markup, for services as Receiver herein; provided, however, that any such compensation paid to

11 the Receiver for such services shall be subject to the notice and approval provisions set forth in the

12 Receivership Code and this Order.  After notice and approval of any such compensation, the

13 Receiver may pay itself and its professionals and may reimburse such parties for reasonably incurred

14 expenses.

15      B.    Retain originals and/or legible electronic copies of all writings and other documents

16 which were used or referred to in order to prepare the statements under the foregoing paragraphs of

17 this Order, including, but not limited to, checks, contracts, agreements, and invoices.

18      C.    Subject to the requirements for the employment and compensation of professionals

19 found in the Receivership Code, nothing in this Order shall preclude the Receiver from hiring

20 professionals and third-party providers or vendors to assist the Receiver in the performance of the

21 Receiver's duties under this Order, so long as the fees charged for such services are deemed by the

22 Receiver in the Receiver's business discretion to be usual and customary in the locality where the

23 services are to be found, and any compensation for such services are subject to subsequent review

24 and approval of this Court after appropriate notice to parties in interest.

25      **6.**    **FURTHER POWERS GRANTED TO RECEIVER.** The Receiver is further

26 empowered and authorized to generally do such other things as may be necessary or incidental to

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

_Verified Correct Copy of Original 4/15/2022._

1   the specific powers, directions, and general authorizations set out in this Order, including any and

2   all actions permitted or authorized by the Receivership Code or Oregon common law, and may take

3   any further actions relating to the Receivership Estate that are necessary and appropriate to fulfill

4   the Receiver's duties hereunder beyond the scope contemplated by the provisions set forth above,

5   provided however, that the Receiver obtains the prior approval from this Court for any such

6   additional actions after appropriate notice to parties in interest.

7       **7.     GRANT OF IMMUNITY.** To the fullest extent allowed by law, and except as may

8   otherwise be provided under the Receivership Code dealing with the personal liability of a receiver,

9   the Receiver and the Receiver's agents, attorneys, consultants and employees, shall be immune from

10   and shall be held harmless from and against any and all suits, liabilities, claims, losses, lawsuits,

11   judgments, and/or expenses, including but not limited to attorney fees, costs and monetary damages,

12   arising out of or related to, either directly or indirectly, his, her, its or their performance of duties or

13   obligations pursuant to the terms of this Order.

14       **8.     RECEIVERSHIP LOANS AND ADVANCES.** If the Receivership Estate does not

15   generate sufficient revenue following the appointment of the Receiver sufficient to pay the operating

16   expenses and approved charges and expenses of the Receiver and the fees and expenses of any

17   attorneys, accountants, or other professionals employed by the Receiver in accordance with the

18   requirements of this Order, the Receiver may and is hereby authorized without further order of the

19   Court to borrow money from Plaintiff in order to pay such expenses, and the Plaintiff agrees to

20   advance such sums upon request. All funds borrowed from Plaintiff shall be deemed to be

21   borrowings of the Borrower under the Loan and related security documents described in the

22   Complaint and Motion to Appoint Receiver as determined by the Plaintiff in its sole discretion, and

23   said borrowings shall be added to the balance due and owing under the applicable loan(s) and secured

24   by the Loan Collateral. The Receiver may execute, issue and deliver (but is not required to do so to

25   effectuate the prior sentence) in favor of Plaintiff one or more promissory notes or other instruments

26   and documents evidencing the additional indebtedness with respect to all sums borrowed by the

ORDER APPOINTING RECEIVER - 15

_ Verified Correct Copy of Original 4/15/2022._

1   Receiver on behalf of the Borrower. All sums advanced by Plaintiff to the Receivership Estate

2   pursuant to this Order, together with interest thereon at the rates set forth in the applicable loan

3   documents, shall be secured by Plaintiff's existing liens on and security interests in the Loan

4   Collateral, and otherwise shall constitute a first and senior lien with respect to all such assets, except

5   as otherwise provided under law. In addition, all funds that the Receiver borrows from Plaintiff shall

6   be deemed administrative expenses of the Receivership Estate having priority over secured claims

7   of other secured claims of creditors. The Receiver, however, shall bear no obligation or

8   responsibility for repayment of any such loans or advances. In the event the Receivership is

9   dismissed or otherwise terminated prior to the payment of the administrative fees and expenses of

10  the Receiver and its professionals, Plaintiff agrees to pay such amounts.

11      **9.     FILING OF TAX RETURNS FOR BORROWER.** Notwithstanding any other

12  term or provision of this Order, the Receiver shall be under no obligation to file any tax returns or

13  other governmental returns or forms for or on behalf of the Borrower. Upon reasonable notice to the

14  Receiver, the Receiver shall provide to the Borrower and its authorized representatives reasonable

15  access to financial information necessary for the Borrower to prepare and file such governmental

16  returns or forms.

17      **10.    PAYMENTS TO PLAINTIFF.** Notwithstanding any other provisions of this Order,

18  the Receiver may distribute to Plaintiff as soon as reasonably practicable all surplus cash of the

19  Receivership Estate, to the extent the Receiver in its discretion does not deem such cash reasonably

20  necessary for the operation and administration of the Receivership Estate (including any reserves

21  the Receiver believes are appropriate), as well as all income, profits and proceeds resulting from the

22  sale of the Loan Collateral upon which Plaintiff has a lien or security interest, after such notice and

23  hearing as may be required by this Order or the Receivership Code. Plaintiff shall apply all

24  distributions received from the Receiver to the outstanding indebtedness due Plaintiff from the

25  Borrower under the terms of the promissory note, security agreement, assignment of rents, trust deed

26  and related loan agreements described in the Complaint and the Motion to Appoint Receiver.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

_ Verified Correct Copy of Original 4/15/2022._

11.    **FURTHER ORDERS.** The Receiver or the parties hereto may at any time apply to this Court for any further orders or other instructions and powers necessary to enable the Receiver to perform its duties properly. Any motion by the Receiver or the parties hereto for Court approval of any act of the Receiver shall be served on each party hereto and each other person who has filed and served on the Receiver a request for special notice. Further, the Receiver may file requests for special notice on behalf of any party; however, such requests filed by the Receiver shall not be deemed consents to the jurisdiction of this Court. In addition to service by mail or hand-delivery, service in this action may be made by facsimile or electronic mail. Notwithstanding any provision of this Order requiring Court approval of any act of the Receiver, the Receiver may nonetheless undertake an action without prior Court approval if the Receiver obtains the written consent of each party hereto and each other person who has filed and served on the Receiver a request for special notice. Such acts shall, as soon as practicable thereafter, be identified to the Court.

12.    **COUNSEL FOR RECEIVER.** The Receiver is hereby authorized to retain the law firm Leonard Law Group LLC ("**Receiver's Counsel**") as counsel pursuant to ORS 37.310 to act as attorneys for the Receiver. Receiver's Counsel is well qualified to represent the Receiver in this matter based upon its substantial experience representing receivers in both Washington and Oregon. Receiver's Counsel shall be paid for all such services at its regularly hourly rates for matters of this type ($330–$420 per hour) of any attorneys of the firm subject to the provisions of this Order. No conflicts of interest exist for Receiver's Counsel in representing the Receiver in this case, however, if any conflict arises between Receiver's Counsel and any creditor, vendor, customer, or party in interest, the Receiver is authorized to hire conflict counsel to handle those matters, on equivalent terms, without further order of the court.

13.    **DEFENDANTS' OBLIGATIONS.** Defendants and their officers, directors, managers, members, employees, agents, affiliates, and other individuals exercising or having the power to exercise control over the affairs of Defendants are directed to:

ORDER APPOINTING RECEIVER - 17

_ Verified Correct Copy of Original 4/15/2022._

1    A.    Assist and cooperate fully with the Receiver in the administration of the Receivership

2    Estate and the discharge of the Receiver's duties, and comply with all orders of the Court;

3    B.    Supply to the Receiver information necessary to enable the Receiver to complete any

4    schedules that the Receiver may be required to file, and otherwise assist the Receiver in the

5    completion of the schedules;

6    C.    Submit to examination by the Receiver, or by any other person upon order of the

7    Court, under oath, concerning any matter relating to the Receiver's administration of the Estate;

8    D.    Comply with all reasonable instructions of the Receiver in connection with its duties;

9    and

10    E.    Cooperate fully with the Receiver in carrying out the Receiver's duties and generally

11    comply with the provisions of ORS 37.150.

12    **14.    UTILITY SERVICES.** Any utility company providing services to the Receivership

13    Estate, including gas, electricity, water, sewer, trash collection, telephone, communications or

14    similar services, shall be prohibited from discontinuing service to the Receivership Estate for any

15    non-payment by the Borrower prior to the Receiver's appointment by this Court based upon unpaid

16    bills incurred by the Borrower. Further, such utilities shall transfer any deposits held by the utility

17    to the exclusive control of such Receiver and shall be prohibited from demanding that the Receiver

18    deposit additional funds in advance to maintain or secure such services. To the extent the Receiver

19    deems it prudent in the Receiver's business discretion, the Receiver may, but shall not be required

20    to, open new utility accounts in the name of the Receivership. Utility companies are prohibited from

21    discontinuing service while the new Receivership accounts are in process of being established.

22    **15.    AUTOMATIC STAY.** The automatic stay of certain proceedings imposed by ORS

23    37.220 and otherwise under the Receivership Code shall be in effect upon entry of this Order except

24    as to Plaintiff including, without limitation, the continuance of the above-entitled action or any other

25    action or proceeding brought by Plaintiff to enforce its rights under the promissory notes and security

26    documents related to the loan described in the Complaint.

ORDER APPOINTING RECEIVER - 18

_Verified Correct Copy of Original 4/15/2022._

Further, except as expressly authorized herein or under the Receivership Code, no person or entity shall file suit against the Receiver or its agents or professionals, or take other action against the Receiver or its agents or professionals, without an order of this Court permitting the suit or action after appropriate notice to parties in interest, provided, however, that no prior court order is required to file a motion in this action to enforce the provisions of this Order or any other order of this Court in this action and, provided, further, that nothing set forth herein shall preclude or prejudice any party from asserting claims in this proceeding, provided that adjudication of such claims shall be subject to any agreements executed by or affecting any party. All defenses to such claims are reserved and unaffected by this paragraph.

To the extent the Court allows any such litigation against the Receiver or its agents or professionals to proceed, the costs and expenses of defending such litigation may be paid from the Receivership Estate, except to the extent that the Court expressly determines otherwise in the order authorizing such litigation. Further, Plaintiff shall indemnify the Receiver for and hold the Receiver harmless from any and all actions, causes of action, claims, costs, damages, liabilities, or expenses, including reasonable attorney fees (collectively, "**Claims**") incurred by the Receiver by reason of, during, and/or arising from its appointment and service as receiver, except to the extent that they arise from the Receiver's bad faith, gross negligence, willful malfeasance, reckless disregard of duty or fraud, excluding any Claims to the extent same are covered and satisfied by insurance. The Receiver shall promptly provide Plaintiff with written notice of any Claims, litigation or other proceedings under which the Receiver shall request a defense and/or indemnification. If and to the extent that Plaintiff agrees to defend and/or indemnify the Receiver as requested, Plaintiff and the Receiver shall mutually agree to (a) select counsel and any other professionals to represent the Receiver and its agents or professionals, and (b) settle, compromise or otherwise resolve any such Claims, litigation, or other proceedings. To the extent they cannot agree, this Court will make the determination. Further, the Receiver and its agents and professionals shall fully cooperate with Plaintiff and Plaintiff's professionals with respect to any such defense or indemnification matters.

ORDER APPOINTING RECEIVER - 19

_Verified Correct Copy of Original 4/15/2022._

**16.    TURNOVER.** It is hereby further ordered that Borrower, and any other parties with actual or constructive notice of this Order who are subject to the jurisdiction of this Court, including, without limitation, Borrower's managers, officers, directors, employees, agents, lenders, depository institutions, representatives, attorneys, accountants (including CPA's), and consultants, and all persons or entities acting for or in concert with them, shall:

A.    Turn over to the Receiver the Loan Collateral that is included in the Receivership Estate, the rents, income, profits and proceeds therefrom, and all other property incidental thereto or that is or may be necessary or useful to allow and assist the Receiver in operating or in collecting the property and assets of and relating to the Receivership Estate, including, but not limited to, all mail and other correspondence, all post office boxes, all keys to all locks, and the contracts, records, books of account, bank accounts, ledgers, files and all business records for the Loan Collateral or the Receivership Estate or the rents, income, profits or proceeds thereof, wherever located and in whatever mode maintained (including, without limitation, information contained on computers and any and all software relating thereto as well as all banking records, statements and canceled checks); and

B.    Turn over to the Receiver all documents which constitute or pertain to all contracts, leases, subleases, royalty agreements, assignments, insurance policies, liens, security interests, licenses, permits or governmental approvals, or other agreements of any kind whatsoever, whether currently in effect or lapsed, which relate to the Loan Collateral or the Receivership Estate or any interest therein, or to the rents, income, profits or proceeds there from.

**17.    DISCHARGE OF RECEIVER.** The Receiver or Keystone may at any time file a motion requesting that the Receiver be exonerated, discharged and/or released from the Receiver's appointment under this Order. Such motion may be heard by the Court on no less than five (5) business days' notice. The receivership shall not be terminated, and the rights and obligations of the parties subject to this Order shall remain in full force, until this Court approves the Receiver's final report or until the Court enters an order terminating the receivership and discharging the Receiver.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

**18.    EFFECTIVE DATE OF ORDER.** This Order shall be effective when signed and upon the posting of the Receiver's Bond in the amount of $100,000.00 as required by the terms of this Order.

**IT IS SO ORDERED.**

4-15-22

_Jones Matarazzo_
Matarazzo

Presented By:

SNELL & WILMER L.L.P.

By: _s/ Raminta A. Rudys_
    Raminta A. Rudys, OSB No. 066806
    rrudys@swlaw.com
    Attorneys for Plaintiff

ORDER APPOINTING RECEIVER - 21

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

_Verified Correct Copy of Original 4/15/2022._

### Certificate of Readiness – UTCR 5.100

The undersigned, as counsel for the Plaintiff, hereby certifies that:

On March 24, 2022, I caused to be served a copy of the foregoing ORDER APPOINTING AMPLEO AS RECEIVER on Bruce H. Cahn, counsel for Defendants, via email and first-class U.S. Mail.

The submission is ready for judicial signature because:

☐  1. Each opposing party affected by this order or judgment has stipulated to the order or judgment, as shown by each opposing party's signature on the document being submitted.

☐  2. Each opposing party affected by this order or judgment has approved the order or judgment, as shown by signature on the document being submitted or by written confirmation or approval sent to me.

☒  3. I have served a copy of this order or judgment on all parties entitled to service and:

    ☒  a. No objection has been served on me.

    ☐  b. I received objections that I could not resolve with the opposing party despite reasonable efforts to do so. I have filed a copy of the objections I received and indicated which objections remain unresolved.

    ☐  c. After conferring about objections,   (opposing party)   agreed to independently file any remaining objection.

☐  4. The relief sought is against an opposing party who has been found in default.

☐  5. An order of default is being requested with this proposed judgment.

☐  6. Service is not required pursuant to subsection (3) of this rule, or by statute, rule, or otherwise.

☐  7. This is a proposed judgment that includes an award of punitive damages, and notice has been served on the Director of the Crime Victims' Assistance Section as required by subsection (4) of this rule.

Dated:      April 15, 2022

*s/ Raminta A. Rudys*
Raminta A. Rudys, OSB No. 066806
rrudys@swlaw.com

4888-4163-3820.1

CERTIFICATE OF READINESS - 1