## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CAPREF LLOYD CENTER EAST, LLC[1] | Case No. 23-11942 (JTD) |
| Debtor. | |

## DEBTOR'S MOTION FOR APPROVAL OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) GRANTING ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY AND (V) SCHEDULING A FINAL HEARING

The above-captioned debtor and debtor in possession (the "Debtor"), by and through its proposed undersigned counsel, hereby submits this motion (the "Motion") for entry of an interim order (the "Interim Order"), substantially in the form attached hereto as **Exhibit A**, and a final order (the "Final Order," and collectively with the Interim Order, the "Orders"), (i) authorizing the Debtor to (a) obtain post-petition financing on the terms described in the *DIP Loan Commitment Term Sheet* attached to the Interim Order as Exhibit 1 (the "DIP Term Sheet"), (b) utilize cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, "Cash Collateral") of its Prepetition Lender (as defined herein); (ii) granting liens and superpriority administrative expense claims in favor of DIP Lender, (iii) providing adequate protection to the DIP Lender to the extent set forth herein; (iv) modifying the automatic stay imposed by section 362 of the Bankruptcy Code (the "Automatic Stay") to the extent necessary to implement and effectuate the terms and provisions of the Orders; and (v) scheduling a final hearing (the "Final Hearing") to consider the entry of an order granting the relief requested in the Motion on a

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number, is: CAPREF Lloyd Center East, LLC (1920) and the location of its service address in this chapter 11 case is: 4514 Travis Street, Suite 208, Dallas, TX 75205.

final basis. In support of this Motion, the Debtor relies upon and incorporates by reference the *Declaration of Todd Minnis In Support of Debtor's First Day Motions and Related Relief* (the "First Day Declaration") filed concurrently herewith.[2]  In further support of this Motion, the Debtor respectfully states as follows:

### Jurisdiction, Venue and Statutory Predicates

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief requested in this Motion are sections 105, 361, 362, 363, 364 and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 4001-2 and 9013-1.

3.      Pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor hereby consents to the entry of a final order or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

### Background

4.      On the date hereof (the "Petition Date"), the Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 case.   The Debtor continues to operate its business and manage its

---

[2] Capitalized terms used but not defined herein have the meaning given to them in the First Day Declaration.

properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No creditors' committee has been appointed in this case.  No trustee or examiner has been appointed.

6.      A detailed description of the Debtor's business operations, corporate structure, capital structure, and reasons for commencing this case is set forth in full in the First Day Declaration, which was filed contemporaneously herewith and is incorporated herein by reference.  Additional facts in support of the specific relief sought herein are set forth below.

## BACKGROUND

7.      The Debtor and the DIP Lender entered into the proposed DIP Term Sheet, effective on or about November 30, 2023, which provides the principal terms and conditions for a post-petition debtor-in- possession loan (generally, the "DIP Loan") in the initial principal amount of $650,000. Under the DIP Term Sheet, the Debtor has the option to request an additional $250,000 at the approval of the DIP Lender in its sole discretion.  The DIP Lender has consented to the use of the DIP Loan proceeds and its pre-petition Cash Collateral consistent with the initial 13-week budget attached to the DIP Term Sheet as **Exhibit A** (the "Budget").

8.      The Debtor requires immediate access to liquidity to ensure that it is able to continue to preserve the value of the estate for the benefit of all parties in interest and to administer a value-maximizing chapter 11 process.  Without prompt access to Cash Collateral, the Debtor would be unable to continue to maintain the Property and fund the administration of this case, which would cause immediate and irreparable harm to the value of the Debtor's estate to the detriment of all stakeholders.

9.      The Debtor cannot meet its ongoing obligations without the DIP Loan or access

to Cash Collateral. The Debtor's property and business operations do not currently generate revenue. Consequently, other than the DIP Loan and use of Cash Collateral, the Debtor does not have access to funds. At the same time, the Debtor continues to incur obligations to its professionals in connection with (and support of) this Chapter 11 Case. More acutely, the Debtor has immediate need for cash in order to pay for certain site maintenance and safety measures such as utilities, security and property insurance. Each of these costs, as more fully set forth in the Budget is reasonable, actual, and necessary to preserve the Debtor's Property post-petition and pending a sale.

## **RELIEF REQUESTED**

10.      The Debtor requests the entry of Orders, including the Interim Order substantially in the proposed form attached hereto as **Exhibit A** (i) authorizing the Debtor to (a) obtain post- petition financing on the terms described in the DIP Term Sheet, (b) utilize Cash Collateral of its Prepetition Lender; (ii) granting liens and superpriority administrative expense claims in favor of DIP Lender, (iii) providing adequate protection to the Secured Lender to the extent set forth herein; (iv) modifying the Automatic Stay to the extent necessary to implement and effectuate the terms and provisions of the Orders; and (v) scheduling Final Hearing.

11.      As stated herein and in the First Day Declaration, the Debtor's need for post-petition financing and continued use of Cash Collateral is required to preserve the value of its estate and maximize its value for the benefit of all stakeholders. Under the Orders, the Debtor's post-petition financing and use of Cash Collateral is subject to certain limitations, including that the Debtor may only use proceeds and Cash Collateral in accordance with the Budget.

## **Concise Statement Pursuant to Bankruptcy**
## **Rule 4001 and Local Rule 4001-2**

12.      As required by Bankruptcy Rules 4001(b)(1)(B) and 4001(c)(1)(B) and Local

Rule 4001-2, the Debtor submits the following concise statement of the material terms of the DIP

Loan:

| Summary of Material Terms | |
|---|---|
| **Parties to the Proposed DIP Facility**<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B)* | <u>**Borrower**</u>:  The Debtor, CAPREF Lloyd Center East, LLC<br><br><u>**DIP Lender**</u>: Keystone Real Estate Lending Fund L.P.<br><br>*See* DIP Term Sheet at 1. |
| **Purpose**<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B); Local Rule 4001-2(a)(i)* | To provide access to funds necessary for the Debtor to pay the administrative expenses incurred to administer the Debtor's chapter 11 case and working capital necessary to continue ordinary course operations, subject to the Budget.<br>*See* DIP Term Sheet at 2. |
| **Borrowing Limits**<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B); Local Rule 4001-2(a)(i)A* | The DIP Loan provides for the following:<br><br>• Interim Advance: $150,000 shall be available upon entry of the Interim Order;<br><br>• Final Advance: $500,000 shall be available upon entry of the Final Order.<br><br>• Incremental Funding: $250,000 may be advanced subject to a revised Budget and the DIP Lender's sole discretion.<br><br>*See* DIP Term Sheet at 2-3. |
| **DIP Budget**<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B); Local Rule 4001-2(a)(iii)* | A copy of the Budget is attached to the Interim Order as Exhibit 1 to the DIP Term Sheet which is attached to the Interim Order as Exhibit A.<br><br>*See* DIP Term Sheet at 2 and Exhibit A. |
| **Interest Rates**<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B)* | The interest on each Advance shall accrue at the rate of 15.00% per annum, from the date of the funding of such Advance until such Advance is paid in full.  The interest shall be payable in kind; <u>provided</u>, <u>however</u>, if the Maturity Date occurs on or prior to April 30, 2024, the payment of all interest shall be waived.<br><br>*See* DIP Term Sheet at 3. |
| **Maturity Date**<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B); Local Rule 4001-2(a)(i)* | The maturity date (the "***Maturity Date***") of the DIP Loan shall be the earliest of:<br><br>• June 1, 2024 (the "***Stated Maturity Date***");<br><br>• the date of the closing (the "***Sale Closing Date***") of a sale of all or substantially all of the Collateral (as defined below) (the "***Sale***");<br><br>• the effective date of a Chapter 11 plan (the "***Plan***") confirmed pursuant to an order entered by the Bankruptcy Court; and<br><br>• the occurrence and continuation of an Event of Default (as defined below).<br><br>*See* DIP Term Sheet at 2. |

| | |
|---|---|
| **Repayment Features / Roll-Up**<br><br>*Local Rule 4001-2(a)(i)(E) & (O)* | If the Maturity Date occurs on or prior to April 30, 2024, the payment of all interest shall be waived.<br><br>The Debtor may prepay the DIP Loan, in full or in part, at any time, including all principal, interest, fees and expenses with respect to the DIP Loan.<br><br>There is no "roll-up" of any pre-petition debt.<br><br>*See* DIP Term Sheet at 2. |
| **Commitment**<br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | The initial principal amount of the DIP Loan shall be up to six hundred fifty thousand ($650,000.00) ("***Initial Loan Amount***"), subject to the terms and conditions provided herein.<br><br>The DIP Loan proceeds shall be made available to the Debtor as a debtor-in-possession multi-draw term loan facility, as follows:<br><br><ul><li>*First Draw*: Upon entry of the Interim DIP Order in form and substance satisfactory to the DIP Lender in its sole discretion, the DIP Lender shall advance to the Debtor the lesser of (x) the amount approved by the Interim Order and (y) one hundred fifty thousand ($150,000.00) (the "***Interim Advance***").</li><li>*Second Draw*: Upon entry of the Final DIP Order in form and substance satisfactory to the DIP Lender in its sole discretion, the DIP Lender shall advance, in one or more draws not less than $50,000.00, to the Debtor an additional amount up to the amount approved by the Final Order less the Interim Advance (the "***Final Advance***" and, together with the Interim Advance, the "***Advances***" and each individually, an "***Advance***"). For the avoidance of doubt, in no event shall the sum of the Interim Advance and Final Advance exceed the initial principal amount of six hundred fifty thousand ($650,000.00).</li></ul>*See* DIP Term Sheet at 2. |
| **Conditions Precedent to Closing and Lending**<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B); Local Rule 4001-2(a)(i)(E)* | The DIP Lender's obligations to close the DIP Loan shall be expressly subject to the following conditions precedent:<br><br><ul><li>By December 4, 2023, the Debtor shall have filed a copy of this Term Sheet with a motion seeking entry of the proposed DIP Orders each in form and substance acceptable to the DIP Lender, and served the same on all parties in interest required to be so served.</li><li>The Debtor shall have delivered the Budget to the DIP Lender in form and substance satisfactory to the DIP Lender.</li><li>By January 11, 2024, 2023, the Bankruptcy Court shall have entered the Final DIP Order in form and substance acceptable to the DIP Lender authorizing the DIP Loan under the terms set forth in this DIP Term Sheet and the Final DIP Order, which Final DIP Order shall not have been appealed, modified, stayed, vacated, or reversed, and which shall provide for, without limitation, (i) priming first priority liens or security interests in favor of the DIP Lender in the Collateral as more fully set forth above, (ii) a superpriority administrative expense claim of the DIP Lender against the Debtor and its estate in the amount of the DIP Loan and proceeds thereof</li></ul> |

<table>
<tr><td></td><td>as more fully set forth above, (iii) payment of the DIP Lender's fees and expenses incurred in connection with the DIP Loan and the Chapter 11 Case (including its reasonable attorneys' fees and expenses), (iv) the validity, perfection, priority, enforceability and non-avoidability of the liens and security interests granted in favor of the DIP Lender under the Pre-Petition Credit Agreement, and waiver by the Debtor of any and all claims of any kind against the DIP Lender with respect to the Pre-Petition Credit Agreement and the liens and security interests granted thereunder, including any right to investigate or challenge the validity, perfection, priority, enforceability or non-avoidability of such liens and security interests, and (v) any other customary provisions of final orders approving similar DIP financings.<br><br>• All reasonable fees, costs, disbursements and expenses of the DIP Lender (including all reasonable fees, costs, expenses and disbursements of the DIP Lender's lead counsel, Snell & Wilmer LLP, and the reasonable fees and expenses of a Delaware law firm who will serve as Delaware counsel for the DIP Lender ) shall have been paid in full including through use and application of DIP Loan proceeds.<br><br>*See* DIP Term Sheet at 6.</td></tr>
</table>

**Events of Default**

*Fed. R. Bankr. P. 4001(c)(1)(B); Local Rule 4001-2(a)(i)(M)*

The DIP Term Sheet contains customary events of default for financings of this type.

*See* DIP Term Sheet at 5-6.

**Carve-Out**

*Fed. R. Bankr. P. 4001(b)(l)(B)(ii)*

Local Rule 4001-2(a)(ii)

The carve-out (the "***Carve-Out***") shall mean the sum of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee, (ii) solely upon conversion of the Bankruptcy Case to a case under chapter 7, all reasonable fees and expenses up to $10,000.00 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "***Chapter 7 Trustee Carve-Out***"); and (iii) to the extent included in the Budget and allowed at any time, whether by interim order, procedural order, or otherwise, the payment of all unpaid fees, costs, disbursements and expenses (the "***Allowed Professional Fees***") incurred or earned by persons or firms retained by the Debtor pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "***Professional Persons***") at any time before or on the first business day following delivery by the DIP Lender of a Carve Out Notice (as defined in the Interim Order), whether allowed by the Court prior to, on or after delivery of a Carve Out Notice (the amounts in  (i)-(iii), collectively, the "***Pre-Trigger Carve Out Cap***"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $15,000.00 incurred after the first business day following delivery by the DIP Lender of the Carve Out Notice to the Carve Out Notice Parties (as defined in the Interim Order) (such date, the "***Trigger Date***"), to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "***Post-Carve Out Notice Cap***" and such amounts set forth in clauses (i) through (iv), the "***Carve Out Cap***"); provided that nothing herein shall be construed to impair any party's ability to object to Court approval of the fees, expenses, reimbursement of expenses or compensation of any Professional Person.

*See* DIP Term Sheet at 4.

| | |
|---|---|
| **Priority of Claims and Liens; Collateral**<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B)(i)* | Subject to the Carve Out and any Prior Permitted Lien (as defined in the Interim Order), the DIP Loan shall be secured by a first priority mortgage and/or lien (including, without limitation, under a deed of trust or similar security instrument) on all assets of the Debtor, whether now owned or hereafter acquired and wherever located, including, without limitation, all accounts, inventory, equipment, capital stock in subsidiaries of the Debtor, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles, and all products and proceeds thereof, including, without limitation, (i) any proceeds from (a) the Sale or (b) the confirmed Plan that becomes property of the Debtor's estate, and (ii) subject to entry of the Final DIP Order, any and all claims or causes of action under Sections 502(d), 544, 545, 547, 548 through 551, and 553(b) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable nonbankruptcy law and the proceeds thereof (the "***Collateral***").<br><br>Subject to the Carve Out and any Prior Permitted Liens, the priming mortgage liens and security interests in favor of the DIP Lender shall be senior to any and all other prepetition or postpetition liens or interests, including, without limitation, judgment liens, mechanics' liens, liens imposed by applicable covenants, declarations and restrictions, mortgages and security interests encumbering said Collateral pursuant to Sections 364(d) and 364(c)(2) of the Bankruptcy Code.<br><br>In addition to the foregoing and subject to the Carve Out, as a condition precedent to the DIP Lender's obligation to make the DIP Loan and as a material inducement to the DIP Lender, all obligations of the Debtor to the DIP Lender with respect to the DIP Loan and proceeds thereof shall at all times constitute a superpriority administrative expense claim against the Debtor and its estate in the Chapter 11 Case pursuant to Sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code, with priority and seniority over any and all other administrative expense claims in the Chapter 11 Case now existing or hereafter arising.<br><br>*See* DIP Term Sheet at 3-4. |
| **Adequate Protection / Identity of Each Entity with Interest in Cash Collateral**<br><br>*Fed. R. Bankr. P. 4001(c)(l)(B)(ii); (b)(1)(B)(i), (iv); Local Rule 4001-2(a)(i)(K) & (P)* | In consideration for the Debtor's use of the Prepetition Collateral (including Cash Collateral), the Prepetition Lender shall receive Adequate Protection Liens and adequate protection claims in the form of the Superpriority Prepetition Claim.<br><br>*See* Interim Order at ¶ 9. |
| **Debtor's Stipulations**<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B)(iii); Local Rule 4001-2(a)(i)(B)* | The Orders contain provisions or findings of fact that bind the estate with respect to the validity, perfection or amount of Secured Lenders claims.<br><br>The representations, admissions, stipulations, agreements, releases, and waivers set forth in the Orders (collectively, the "***Prepetition Lien and Claim Matters***") are and shall be binding on the Debtor, its estate and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the |

| | |
|---|---|
| | Debtor), creditors, responsible persons, examiners with expanded powers, any other estate representative, and all parties in interest and all of their successors in interest and assigns, including, without limitation, any Creditors' Committee, unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtor, as to which any Challenge (as defined herein) is irrevocably waived and relinquished) (a) has timely filed the appropriate papers, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in the Orders), challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "***Challenge***") by no later than the earlier of (x) the date of the hearing scheduled to consider confirmation of the Plan and (y) seventy-five (75) calendar days from the date of entry of the Interim Order, as the applicable period may be extended by the Court for good cause shown pursuant to an application filed by a party in interest before the expiration of the Challenge Period (as defined herein), or otherwise extended in writing from time to time in the sole discretion of the Secured Lender (as applicable for clauses (x) and (y), the "***Challenge Period***"); and (b) the Court enters judgment in favor of the plaintiff or movant in any such timely and property commenced Challenge proceeding, and any such judgment has become final and is not subject to any further review or appeal.<br><br>*See* DIP Term Sheet at 7; Interim Order at ¶¶ D and 5. |
| **Waiver/Modification of the Automatic Stay** *Fed. R. Bankr. P. 4001(c)(1)(B)(iv)* | The automatic stay will be modified to the extent necessary for the DIP Lenders to perfect the DIP Liens and, upon three (3) business days' notice to the Debtor and its counsel as set forth in the Interim Order, for the exercise of remedies upon the occurrence of an Event of Default.<br><br>*See* Interim Order at ¶¶ 10 and 12. |
| **Milestones** *Fed. R. Bankr. P. 4001(c)(1)(B)(vi);*<br><br>*Local Rule 4001-2(i)(a)(H)* | The DIP Term Sheet includes the following milestones as part of the "Events of Default" specified therein:<br><br>• the failure by the Debtor to obtain court approval of the Interim DIP Order on or before December 11, 2023;<br><br>• the failure by the Debtor to obtain court approval of the Final DIP Order on or before January 11, 2024;<br><br>• if no hearing to confirm a Plan has been held on or before May 10, 2024;<br><br>• a court order confirming a Plan (the "***Confirmation Order***") has not been obtained on or before May 15, 2024;<br><br>• if the Confirmation Order has not become a final court order on or before May 30, 2024;<br><br>• the failure to close a Sale by May 30, 2024, unless such date is extended by the DIP Lender in its sole discretion.<br><br>*See* DIP Term Sheet at 5. |

| | |
|---|---|
| **Indemnification**<br>*Fed. R. Bankr. P. 4001(c)(1)(B)(ix)* | Customary for similar debtor-in-possession financing and consistent with the DIP Loan.<br><br>*See* DIP Term Sheet at 7. |
| **506(c) Waiver / Section 552(b) Wavier**<br><br>*Fed. R. Bankr. P. 4001(c)(l)(B)(x)*<br><br>*Local Rule 4001-2(a)(i)(C)* | Upon entry of the Final DIP Order, the Debtor and its estate shall waive any claim under Bankruptcy Code section 506(c) for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Prepetition Lender upon the Prepetition Collateral (as defined in the PrePetition Credit Agreement) or the Collateral as defined herein.<br><br>The Prepetition Lender shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and, upon entry of the Final Order, the Debtor shall agree that the "equities of the case" exception shall not apply.<br><br>Subject to entry of a Final Order, in no event shall the Prepetition Lenders be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral or Collateral or any proceeds thereof.<br><br>*See* DIP Term Sheet at 7; Interim Order at ¶¶ 14, 15 and 16. |
| **Liens on Avoidance Actions**<br>*Fed. R. Bankr. P. 4001(c)(1)(B)(xi)* | None. |
| **Fees**  Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | An initial loan fee in the amount of 1.00% of the Initial Loan Amount.<br><br>An Incremental Funding advance fee of 0.75% of the amount of any Incremental Funding advances by DIP Lender.<br><br>The Debtor shall pay all reasonable fees, costs, disbursements and expenses of the DIP Lender (including all fees, costs, disbursements and expenses of the DIP Lender's lead counsel and Delaware counsel), whether incurred prior to or after commencement of the Chapter 11 Case, in connection with the discussion, negotiation, preparation, execution and delivery of any documents in connection with the DIP Loan, the DIP Orders or the Chapter 11 Case.<br><br>*See* DIP Term Sheet at 3; Interim Order at ¶ 10. |
| **Cross-Collateralization**<br><br>*Local Rule 4001-2(a)(i)(N)* | None. |
| **Provisions Governing Joint Liability**<br><br>*Local Rule 4001-2(a)(i)(J)* | None. |

**BASIS FOR RELIEF**

I.    **The Debtor Should be Authorized to Obtain Post-Petition Financing In Accordance with the DIP Term Sheet.**

    A.    **Entry Into the DIP Term Sheet Is a Sound Exercise of the Debtor's Business Judgment.**

13.    The Court should authorize the Debtor, as a sound exercise of the Debtor's business judgment, to execute, deliver, and perform under the DIP Term Sheet, and to obtain access to the DIP Facility. Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances. Indeed, courts grant a debtor-in-possession considerable deference in acting in accordance with its business judgment in obtaining post- petition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. *See, e.g., In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving a post-petition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised  so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

14.    Specifically, to determine whether the business judgment standard is met, a court need only "examine whether a reasonable businessperson would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see*

*also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code").

15.     Furthermore, in considering whether the terms of post-petition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *In re Farmland Indus., Inc*., 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003) ("Viewed in isolation, several of the terms of the [postpetition financing] might appear to be extreme or even unreasonable. Certainly, many of them favor the DIP Lenders. But, taken in context, and considering the relative circumstances of the parties, the Court does not believe that the terms are unreasonable."); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing that a debtor may have to enter into "hard bargains" to acquire funds for its reorganization). Courts may also appropriately take into consideration noneconomic benefits to a debtor offered by a proposed postpetition facility. *See, e.g., In re ION Media Networks, Inc*., 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009) (recognizing that "a business decision to obtain credit from a particular lender is almost never based purely on economic terms" and that "[r]elevant features of the financing must be evaluated, including non-economic elements").

16.     The Debtor's decision to enter into the DIP Term Sheet represents a sound exercise of the Debtor's business judgment following arm's-length negotiation with the DIP Lender and the realistic consideration of available financing alternatives. The postpetition financing offered by the DIP Term Sheet will provide the Debtor with adequate liquidity to

execute a comprehensive sale process for its assets and pursue confirmation of a plan in this Case. The Debtor negotiated the DIP Term Sheet with the DIP Lender in good faith, and the Debtor believes that it has obtained the best possible post-petition financing solution available under the circumstances. Accordingly, the Court should authorize the Debtor's entry into the DIP Term Sheet, as it is a sound exercise of the Debtor's business judgment.

**B.    The Debtor Should be Authorized to Grant Liens and Superpriority Claims**

17.    The Debtor proposes to obtain financing under the DIP Facility by providing security interests and liens as set forth in the DIP Term Sheet pursuant to section 364(c) and section 364(d) of the Bankruptcy Code. Specifically, the Debtor proposes to provide to the DIP Lender, subject to the Carve-Out, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected post-petition security interests in, and liens upon, all tangible and intangible prepetition and post-petition property of the Debtor of the same nature, scope, and type as the Prepetition Collateral.

18.    The statutory requirement for obtaining post-petition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that a debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c). *See In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained). Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code. Specifically, courts look to whether:

> (a)    the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code;

(b)     the credit transaction is necessary to preserve the assets of the estate; and

(c)     the terms of the transaction are fair, reasonable, and adequate, given the  circumstances of the debtor-borrower and proposed lenders.

*In re Crouse Grp., Inc.*, 71 B.R. at 549; *see also L.A. Dodgers LLC*, 457 B.R. at 312–13 (Bankr. D. Del. 2011); *Ames Dep't Stores*, 115 B.R. at 37–40 (Bankr. S.D.N.Y. 1990); *In re St. Mary Hosp.*, 86 B.R. 393, 401 (Bankr. E.D. Pa. 1988).

19.     As described in the First Day Declaration, the Debtor recognized that it would be difficult, if not impossible, to secure unsecured postpetition financing given that time to access incremental liquidity was limited and the Prepetition Lender would not consent to a "priming" DIP financing provided by a third party. In light of these circumstances and the realities imposed by the Debtor's existing capital structure, any third-party DIP financing would almost certainly have required the Debtor to engage in a protracted and costly priming fight at the very outset of this Chapter 11 Case. Regardless of the prospects of success, the expense and disruption associated with priming litigation (or non-consensual use of cash collateral litigation) at the outset of these cases would jeopardize the Debtor's ability to expeditiously proceed with its sale efforts. Such litigation would divert critical resources from accomplishing the Debtor's goals of maximizing estate value and creditor recoveries to instead litigating a potentially bitter and costly priming dispute. Further, the Debtor's already strained liquidity would be required to fund such a fight.

20.     Absent the DIP Loan, which will provide sufficient liquidity to administer this Chapter 11 Case and execute the Debtor's sale process and wind-down, the value of the Debtor's estate would be significantly impaired to the detriment of all stakeholders. The Debtor believes that the terms of the DIP Loan as set forth in the DIP Term Sheet are fair and reasonable. For

these reasons, the Debtor has met the standard for obtaining post-petition financing under section 364(c) of the Bankruptcy Code.

21.     In the event that a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, section 364(c) of the Bankruptcy Code provides that a court may:

> authorize the obtaining of credit or the incurring of debt (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code]; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c). As described above, the Debtor is unable to obtain unsecured credit. Therefore, approving superpriority claims in favor of the DIP Lender is reasonable and appropriate.

22.     Further, section 364(d) of the Bankruptcy Code provides that a debtor may obtain credit secured by a senior or equal lien on property of the estate already subject to a lien, after notice and a hearing, where the debtor is "unable to obtain such credit otherwise" and "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d)(1). The Debtor may incur "priming" liens under the DIP Facility to the extent such DIP Collateral is subject to prepetition liens that secure existing pre-petition indebtedness. *See Anchor Savs. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 122 (N.D. Ga. 1989) ("[B]y tacitly consenting to the superpriority lien, those [undersecured] creditors relieved the debtor of having to demonstrate that they were adequately protected."). Accordingly, the Debtor may incur "priming" liens under the DIP Facility if either (a) the pre-petition Secured Lender has consented or (b) the pre-petition Secured Lender's interests in collateral are adequately protected.

23.       Here, the Prepetition Lender is the proposed DIP Lender and thus has affirmatively consented to the DIP Facility. Therefore, the relief requested pursuant to section 364(d)(1) of the Bankruptcy Code is appropriate.

**C.       No Comparable Alternative to the DIP Facility is Reasonably Available.**

24.       A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) of the Bankruptcy Code. *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Reading Tube Indus.,* 72 B.R. 329, 332 (Bankr. E.D. Pa 1987). Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc*., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also In re Stanley Hotel, Inc.,* 15 B.R. 660, 663 (D. Colo. 1981) (holding that the bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that the section 364 requirement was met); *Ames Dep't Stores*, 115 B.R. at 37–39 (finding that the debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b) of the Bankruptcy Code).

25.       The Debtor does not believe that alternative sources of financing are reasonably or readily available given the Debtor's unique circumstance.  While the Debtor has not solicited additional offers for postpetition debtor in possession financing from sources other than the DIP Lender, the Debtor submits that such effort would be futile in that the Debtor does not have any unencumbered assets to offer as collateral to support such alternate financing. Moreover, it is extremely unlikely that any lender would be willing to provide postpetition

financing on an unsecured or junior basis to the prepetition liens of the Prepetition Lender that already fully encumber the Debtor's assets.  Finally, any proposed postpetition financing on a priming basis would require the Prepetition Lender's consent, which it has not given.  Thus, the Debtor submits that the proposed postpetition financing to be provided by the DIP Lender is the only financing available to the Debtor.    Thus, the DIP Facility offered by the DIP Lender represents the Debtor's only available option to meet the Debtor's urgent liquidity needs and to successfully finance this Chapter 11 Case. Therefore, the requirement of section 364 of the Bankruptcy Code that alternative credit on more favorable terms be unavailable to the Debtor is satisfied.

**II.        The Debtor Should be Authorized to Use Cash Collateral.**

26.        Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use, sell or lease cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." 11 U.S.C. §363(c)(2). The Prepetition Lender is the only entity that possesses an interest in the Cash Collateral and consents to its use in accordance with the Interim Order and Budget.

27.        The Debtor further submits that the adequate protection provided to the Prepetition Lender under the Orders is appropriate and sufficient. Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property … proposed to be used, sold or leased, by the trustee, the court…shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. §363(e). Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to: (a) a lump sum or periodic cash payments to the extent that

such use will result in a decrease in value of such entity's interest in the property; (b) "additional or replacement lien[s]" to the extent that the use of cash collateral will cause a "decrease in the value of such entity's interest in such property;" and (c) "granting such other relief…as will results in the realization by [the] entity of the indubitable equivalent of such entity's interest in the property." 11 U.S.C §361; *see also Resolution Tr. Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 522, 564 (3d Cir. 1994)("a determination of whether there is adequate protection is made on a case by case basis.").

28.      The principal purpose of adequate protection is to safeguard the interest of the secured creditor in the particular collateral against diminution in the value of such interest. *See Swedeland*, 16 F.3d at 564 ("[T]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (quoting *Mbank Dallas N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10 Cir. 1987); *Del. Tr. Co. v. Wilmington Tr., N.A. (In re Energy Future Holdings Corp.)*, 546 B.R. 566, 581 (Bankr. D. Del. 2016) ("The purpose of adequate protection 'is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use by the debtor.'")(quoting *In re Satcon Tech Corp.*, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012)).

29.      As adequate protection for the Debtor's use of Cash Collateral, the Debtor will grant to the Prepetition Lender (a) an additional and replacement valid, binding, enforceable, non- avoidable, and automatically perfected, *nunc pro tunc* to the Petition Date, postpetition security interest in and liens on (the "Adequate Protection Liens") all of the Debtor's presently owned or hereafter acquired property and assets, to the extent set forth in the Interim and Final Orders, subject or subordinate only to the Carve Out; and (b) an allowed superpriority administrative expense claim (the "Superpriority Claim"), for the diminution in the value of the

Prepetition Collateral, if any, subsequent to the Petition Date, junior only to the Carve Out, but senior to, and with priority over, all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507, 546(c), 552(b), 726, and 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment) and all other claims against the Debtor or its estate, at any time existing or arising, of any kind or nature whatsoever. The provision of these forms of adequate protection is appropriate.

30.     The terms and conditions on which the Debtor may use Cash Collateral have been carefully designed to meet the dual goals of sections 361 and 363 of the Bankruptcy Code. If the relief requested in this Motion is granted (and an interim and then final basis), the Debtor will have working capital sufficient to fulfill its near-term obligations and continue its efforts to reorganize and sell the Property through this Chapter 11 Case. At the same time, the Prepetition Lender will be adequately protected in a manner that it has agreed in exchange for consenting to the Debtor's use of Cash Collateral. Therefore, the Debtor respectfully submits that the proposed adequate protection, as provided for in the Interim Order, adequately protects the Prepetition Lender, is in the best interests of the Debtor, its estate, its creditors and all parties in interest and should be authorized by the Court.

### III.     The Automatic Stay Should be Modified on Limited Basis

31.     The proposed Interim Order contemplates the modification of the automatic stay to the extent necessary to implement the provisions of the Interim Order, thereby permitting the Debtor to grant the DIP Liens and Adequate Protection Liens described herein.  Stay modifications of this kind are ordinary and standard features of debtor-in- possession financing

arrangements, and, in the Debtor's business judgment, are reasonable and fair under the circumstances of this Chapter 11 Case. *See, e.g., In re SiO2 Medical Prods., Inc*., No. 23-10366 (JTD) (Bankr. D. Del. Apr. 26, 2023) (modifying automatic stay as necessary to effectuate the terms of the order and following occurrence of an event of default); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (same). Accordingly, the Debtor respectfully requests that this Court authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order.

## REQUEST FOR INTERIM AND FINAL HEARINGS

32.      Pursuant to Rule 4001(b) of the Bankruptcy Rules, the Debtor requests that the Court conduct an interim hearing and authorize the Debtor, on an interim basis, to obtain post- petition financing on the terms described in the DIP Term Sheet and to us the Cash Collateral in accordance with the Budget (including any permitted deviations or variances). If the Debtor is unable to obtain immediate approval to enter into the Term DIP Sheet or to use of Cash Collateral, it would likely be unable to comply with its post-petition obligations or reorganize, causing irreparable harm to the estate and its creditors, including the Prepetition Lender. Indeed, the conditions in the DIP Term Sheet require that the Debtor obtain an Interim Order authorizing the post-petition financing and use of Cash Collateral on or before December 11, 2023 and a Final Order on or before January 11, 2024. Pursuant to Rule 4001(b)(2) of the Bankruptcy Rules, the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable and fix the date and time prior to the Final Hearing for parties in interest to file objections to the relief  requested by this Motion.

## NO PRIOR REQUEST

33.      No previous request for the relief sought herein has been made by the Debtor to

this or any other Court.

## NOTICE

34.     Notice of this Motion will be provided to the following parties or their respective counsel: (i) the Office of the U.S. Trustee for the District of Delaware; (ii) Eastgate Theatre, Inc.; (iii) New RCI Holdings, Inc.; (iv) counsel for Keystone Real Estate Lending Fund, L.P.; (v) counsel for the Receiver; (vi) the Internal Revenue Service; (vii) the offices of the attorneys general for the state(s) in which the Debtor operates; (viii) the U.S. Department of Justice; (ix)  the Debtor's largest unsecured creditors, as identified in its chapter 11 petition; and (x) all parties requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtor submits no other or further notice is necessary or required.

WHEREFORE, the Debtor respectfully requests that the Court enter Orders, including the proposed Interim Order attached hereto as **Exhibit A**, (i) granting the relief requested in this Motion, (ii) scheduling a final hearing on the Motion, and (iii) granting such other and further relief as the Court may deem proper.

Dated: December 4, 2023
Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

*/s/ Gregory A. Taylor*
Gregory A. Taylor (No. 4008)
Michael D. DeBaecke (No. 3186)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Phone: (302) 654-1888
Email: GTaylor@ashbygeddes.com
        MDeBaecke@ashbygeddes.com

*Proposed Counsel for the Debtor and Debtor in Possession*