# EXHIBIT A

**(Proposed Interim Order)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CAPREF LLOYD CENTER EAST, LLC[1] | Case No. 23-11942 (JTD) |
| Debtor. | Related Docket No. _____ |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING LIENS AND SUPERPRIORITY ADMINSTRATIVE EXPENSE CLAIMS, (III) GRANTING ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY AND (V) SCHEDULING A FINAL HEARING**

Upon the above-captioned debtor's (the "***Debtor***") *Motion for Approval of Interim and Final Orders (I) Authorizing the Debtor to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expenses Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay and (V) Scheduling a Final Hearing* (the "***Motion***"),[2] pursuant to sections 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rules 4001-2 and 9013-1, seeking entry of an Interim Order and a Final Order (collectively, "***DIP Orders***"), and an initial hearing on the Motion having been held by this Court on ____, 2023 (the "***Interim Hearing***"), and the Court having considered the Motion, the *Declaration of Todd Minnis In Support of Debtor's First Day Motions and Related Relief* (the "***First Day Declaration***") [Docket No. __], and the evidence submitted or adduced and the arguments of counsel made at the Interim Hearing; and notice of the Motion and the Interim Hearing having

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number, is: CAPREF Lloyd Center East, LLC (1920) and the location of its service address in this chapter 11 case is: 4514 Travis Street, Suite 208, Dallas, TX 75205.

[2] Capitalized terms not otherwise defined herein shall have the meaning given to such terms in the Motion.

been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the relief requested in the Motion on an interim basis having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, and otherwise is fair and reasonable, in the best interests of the Debtor, its estate, creditors, and equity holders, and essential to maximize the value of the assets of the Debtor's business and estate; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.        <u>Petition Date</u>. On December 4, 2023 (the "***Petition Date***"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code (the "***Chapter 11 Case***") in the United States Bankruptcy Court for the District of Delaware (the "***Court***").

B.        <u>Debtor-in-Possession</u>. The Debtor is continuing in the management and operation of its business and property as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner or official committee of unsecured creditors has been appointed in this Chapter 11 Case, to date.

C.        <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Debtor, the Debtor's estate, this proceeding, and the persons and properties affected hereby, pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtor has consented to entry of a final order by

this Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     <u>Debtor's Representations</u>. Without prejudice to the rights of any other party, the Debtor represents, admits, stipulates, and agrees (collectively, the "***Debtor's Stipulations***") as follows:

(i)     *The Prepetition Secured Loan*. Prior to the Petition Date, the Debtor as borrower and Keystone Real Estate Lending Fund L.P. as lender (in such capacity, the "***Prepetition Lender***") under a loan (the "***Prepetition Loan***") evidenced by, among other things, (i) that certain Term Loan Agreement dated as of March 21, 2017, by and between the Debtor and the Prepetition Lender (as thereafter amended and/or modified, the "***Prepetition Loan Agreement***") and (ii) that certain Secured Promissory Note dated as of March 21, 2017, in the original principal amount of $7,526,520.00 made by the Debtor in favor of the Prepetition Lender (the "***Prepetition Note***").  As of the Petition Date, the Debtor was indebted to the Prepetition Lender under the Prepetition Loan in an amount of not less than $10,699,166.86.

(ii)     *Prepetition Liens and Collateral*. The obligations evidenced by the Prepetition Loan Agreement and Prepetition Note (the "***Prepetition Obligations***") are secured by, among other things, that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of March 21, 2017, and recorded in the Multnomah County Official Records on March 24, 2017 as Instrument No. 2017-035671 (the "***Prepetition Deed of Trust***").  The Prepetition Deed of Trust encumbers certain real property, buildings, fixtures and other improvements, including all rights and easements appurtenant thereto (the "***Prepetition First Priority Liens***"), all as described therein (the "***Prepetition Collateral***").  Cypress Acquisition Partners Retail Fund, L.P. (the "***Guarantor***") has guaranteed payment and performance of the Prepetition Obligations on the terms set forth in that certain Limited Recourse Guaranty dated as

of March 21, 2017 (the "***Prepetition Guaranty***"). The Prepetition Note, the Prepetition Loan Agreement, the Prepetition Deed of Trust, the Prepetition Guaranty, and any related documents or instruments executed in connection with the Prepetition Loan are referred to collectively as the "***Prepetition Loan Documents***."

(iii)     *Validity of Prepetition First Priority Liens and Prepetition Obligations*. The Prepetition First Priority Liens are (a) valid, binding, perfected, duly recorded and enforceable liens on, and security interests in, all of the Debtor's right, title, and interest in, and to, the Prepetition Collateral, and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, offset, recoupment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity. The Prepetition First Priority Liens were granted to the Prepetition Lender for fair consideration and reasonably equivalent value, and were granted in consideration of the making and/or continued making of loans, commitments, and/or other financial accommodations under the Prepetition Loan Documents. No portion of the Prepetition Obligations or any payments made to the Prepetition Lender or applied to or paid on account of the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable nonbankruptcy law.

(iv)     *Adequate Protection*. As a result of the authorization for the Debtor to use cash collateral (***"Cash Collateral"***), the use, sale, or lease, loss or decline in market value of the Prepetition Collateral, and the imposition of the automatic stay, the Prepetition Lender is entitled

to receive adequate protection pursuant to Bankruptcy Code sections 361, 362, and 363 for any diminution in the value, from and after the Petition Date, of its interests in the Prepetition Collateral (including the Cash Collateral) resulting from the automatic stay and/or from the Debtor's use, sale or lease of the Prepetition Collateral, or otherwise during this Chapter 11 Case. As adequate protection, the Prepetition Lender will receive the adequate protection described in this Interim Order.  In light of such adequate protection, the Prepetition Lender has consented to the Debtor's use of Cash Collateral, solely on the terms and conditions set forth in this Interim Order. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code, reflect a sound exercise of the Debtor's business judgment, are consistent with the Debtor's need for the DIP Loans, and are necessary to obtain the Prepetition Lender's consent.

E.      Section 552(b); Section 506(c). Subject to entry of the Final Order, the Prepetition Lender is entitled to a waiver of (a) any "equities of the case" exception under Bankruptcy Code section 552(b); and (b) the provisions of Bankruptcy Code section 506(c).

F.      Necessity for Relief Requested; Immediate and Irreparable Harm. The Debtor requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2) and Local Rules 4001-2(b) and 9013-1(m). The Debtor has an immediate need to use Cash Collateral and obtain financing on the terms and conditions set forth in the DIP Loan Commitment Term Sheet between the Debtor and the Prepetition Lender (in such capacity, the "*DIP Lender*") attached hereto as Exhibit A (the "*DIP Term Sheet*", and the term loan advanced thereunder, the "*DIP Loan*") to, among other things, preserve and maximize the value of the Debtor's assets, absent which immediate and irreparable harm will result to the Debtor, its estate, and creditors. The preservation and maintenance of the Debtor's assets and business are necessary and

appropriate to maximize values available for distribution to creditors. Absent the Debtor's ability to use Cash Collateral and obtain the financing set forth in the DIP Term Sheet, the Debtor would not have sufficient available sources of working capital and would be unable to administer the Chapter 11 Case and its estate, pay its operating expenses or maintain its assets, all to the detriment of the Debtor's estate and creditors. Accordingly, the relief requested in the Motion and the terms herein are (i) critical to the Debtor's ability to maximize the value of its chapter 11 estate, (ii) in the best interests of the Debtor and its estate, and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtor and its assets.

G.      Good Cause. Good cause has been shown for entry of this Interim Order, and the entry of this Interim Order is in the best interests of the Debtor and its estate and creditors. Among other things, the relief granted herein will permit the Debtor to preserve and maintain the value of its assets. The terms of the Debtor's use of Cash Collateral and proposed adequate protection arrangements, as set forth in this Interim Order and the DIP Term Sheet, are fair and reasonable under the circumstances, and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

H.      Good Faith. The DIP Term Sheet and the Debtor's use of Cash Collateral has been negotiated in good faith and at arms' length among the Debtor and the DIP Lender.  The DIP Lender consents to the Debtor's use of Cash Collateral and proceeds of the DIP Loans on the terms set forth in the DIP Term Sheet, and such use on the terms set forth herein shall be deemed to have been negotiated in "good faith."

I.      Notice. The Debtor has caused notice of the Motion, the relief requested therein, and the Interim Hearing to be served by facsimile, email, overnight courier, or hand delivery on the following parties or their counsel: (i) the U.S. Trustee; (ii) the Internal Revenue

Service; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the offices of the attorneys general for the state(s) in which the Debtor operates; (v) the U.S. Department of Justice; (vi) counsel to the Debtor's Prepetition Lender and DIP Lender; (vii) the Debtor's largest unsecured creditors, as identified in its chapter 11 petition; and (viii) all parties requesting notice pursuant to Bankruptcy Rule 2002. Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and of the Interim Hearing is sufficient and complies with Bankruptcy Rules 2002, 4001(b), (c) and (d).

**BASED UPON THE FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. <u>Motion Granted</u>. The Motion is **GRANTED** to the extent provided herein on an interim basis. Any objection to the interim relief requested in the Motion to the extent not withdrawn or resolved is hereby overruled on the merits.

2. <u>Authorization to Obtain Postpetition Financing and to Use Cash Collateral</u>. Subject to the terms and conditions of this Interim Order, the Court hereby authorizes the Debtor to (a) obtain postpetition financing on the terms described in the DIP Term Sheet and (b) use existing and hereafter acquired Cash Collateral during the period beginning with the Petition Date and ending on the Maturity Date (as defined in the DIP Term Sheet) for the disbursements set forth in the budget attached as Exhibit 1 to the DIP Term Sheet (as such budget may be modified from time to time by the Debtor with the consent of the DIP Lender in its sole discretion, the "***Budget***").

3. <u>Authorization of the DIP Term Sheet</u>. The DIP Term Sheet is hereby approved. The Debtor is expressly and immediately authorized and empowered, on an interim basis and subject to a final order, to execute and deliver the DIP Term Sheet, and to incur and to perform the

obligations thereunder in accordance with its terms, the Budget, and this Interim Order, and to execute, deliver and perform under all agreements and other documents which may be required or necessary for the performance by the Debtor under the DIP Term Sheet. Upon entry of this Interim Order, the DIP Term Sheet shall constitute legal, valid, binding and non-avoidable obligations of the Debtor, enforceable in accordance with the terms of this Interim Order and the DIP Term Sheet. No obligation, payment, transfer, or grant of security hereunder or under the DIP Term Sheet shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under applicable law (including, without limitation, under Bankruptcy Code sections 502(d), 544, and 547 to 550 or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or challenge, whether under the Bankruptcy Code or any other applicable law or regulation by any person or entity for any reason.

4.     <u>Authorization to Borrow and Make Payments Under the DIP Term Sheet</u>. Subject to the entry of a final order, and subject further to the terms and conditions of the DIP Term Sheet, the Debtor is hereby authorized to request an extension of credit (in the form of DIP Loans) pursuant to the DIP Term Sheet up to $150,000.00 on an interim basis, and make all payments and transfers of the Debtor's property as provided, permitted or required under the DIP Term Sheet and this Interim Order, including, without limitation, pay or reimburse the DIP Lender for all present and future costs and expenses, including, without limitation, all reasonable and documented professional fees, consultant fees, and legal fees and expenses paid or incurred by the DIP Lender in connection with the financing transactions as provided in the DIP Term

Sheet and this Interim Order regardless of whether such amounts are in the Budget.

5.        Effect of Stipulations on Third Parties.

(a)        *Generally*. The representations, admissions, stipulations, agreements, releases, and waivers set forth in this Interim Order (collectively, the "***Prepetition Lien and Claim Matters***") are and shall be binding on the Debtor, its estate and any successors thereto  (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor), creditors, responsible persons, examiners with expanded powers, any other estate representative, and all parties in interest and all of their successors in interest and assigns, including, without limitation, any official committee of unsecured creditors appointed in the Chapter 11 Case, if any (the "***Creditors Committee***"), unless, a party in interest with standing and requisite authority (other than the Debtor, as to which any Challenge (as defined herein) is irrevocably waived and relinquished) (a) has timely commenced a proceeding challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "***Challenge***") by no later than seventy- five (75) calendar days from the date of entry of this Interim Order, as may be extended by the Court for good cause shown pursuant to an application filed by a party in interest before the expiration of the Challenge Period (as defined herein), or otherwise extended in writing from time to time without further order of the Court in the sole discretion of the Prepetition Lender (the "***Challenge Period***"); and (b) the Court enters judgment in favor of the plaintiff or movant in any such timely and property commenced Challenge proceeding, and any such judgment has become final and is not subject to any further review or appeal.

(b)        *Binding Effect*. To the extent no Challenge is commenced during the Challenge Period by a party with requisite standing, or to the extent such proceeding does not result in a

final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition

Lien and Claim Matters, then, without further notice, motion, or application to, order of, or

hearing before, this Court and without the need or requirement to file any proof of claim, the

Prepetition Lien and Claim Matters shall, pursuant to this Interim Order, become binding,

conclusive, and final on the Debtor, its estate, all creditors, any person, entity, or party in interest

in the Chapter 11 Case, and their successors and assigns, and in any Successor Case (as defined

herein) for all purposes and shall not be subject to challenge or objection by any party in interest,

including, without limitation, a trustee, responsible individual, examiner with expanded powers,

or other representative of the Debtor's estate. More specifically, as to (i) any parties in interest,

including any Creditors Committee, who fail to file a Challenge within the Challenge Period, or

if any such Challenge is filed and overruled, or (ii) any and all matters that are not expressly the

subject of a timely Challenge: (A) any and all such Challenges by any party (including, without

limitation, any Creditors Committee, any chapter 11 trustee, any examiner or any other estate

representative appointed in the Chapter 11 Case, or any chapter 7 trustee, any examiner or any

other estate representative appointed in any Successor Case), shall be deemed to be forever

waived and barred, (B) all of the findings, Debtor's Stipulations, waivers, releases, affirmations,

and other stipulations hereunder as to the priority, extent, validity, and enforceability as to the

Prepetition Lender's claims, liens, and interests shall be of full force and effect and forever

binding upon the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in

interest in the Chapter 11 Case and any Successor Case, and (C) the Prepetition Lender and its

agents, officers, directors, employees, attorneys, consultants, professionals, successors, and

assigns shall be deemed released and discharged from all claims and causes of action arising out

of or in any way relating to the Prepetition Lien and Claim Matters, which shall not be subject to

any further objection or challenge by any party at any time.  For the avoidance of doubt, any trustee appointed or elected in this Chapter 11 Case shall, until the expiration of the period provided herein for asserting a Challenge, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations and stipulations of the Debtor in this Interim Order.

(c)    *No Standing*. Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Creditors Committee, standing or authority to pursue any claim or cause of action belonging to the Debtor and/or its bankruptcy estate, including, without limitation, any Challenge with respect to the Prepetition Loan Documents, the Lien and Claim Matters or the Prepetition Obligations.

6.    <u>DIP Collateral</u>. In order to secure its obligations under the DIP Term Sheet, effective immediately and subject to entry of a final order, pursuant to sections 361, 362, 363 and 364(c)(2), (3) and (d) of the Bankruptcy Code, the DIP Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected first priority priming postpetition security interests in and liens (the "***DIP Liens***") in and upon all property and rights and interests in property of the Debtor and its estate of any kind or nature whatsoever in existence as of the Petition Date as well as thereafter created or acquired, and wherever located, including, without limitation: (a) all Prepetition Collateral; (b) all accounts and accounts receivable, inventory, chattel paper, equipment, fixtures, machinery, commercial tort claims, deposit accounts, instruments, documents, cash and cash equivalents, investment property

(including, without limitation, all equity interests in subsidiaries), books and records, patents, trademarks, trade names, copyrights, rights under license agreements and all other intellectual property, rights, rebates, refunds and other claims under and with respect to insurance policies, tax refunds, deposits, rebates, contract rights and other general intangibles, software, letter of credit rights, money, and inter- company claims or receivables (whether or not evidenced by notes) at any time owing to the Debtor; (c) all real property, leaseholds, rents and profits, and proceeds thereof (*provided*, *however*, that as to a lien on all fee, leasehold, and other real property interests and the proceeds thereof, with respect to non-residential real property leases, no liens or encumbrances shall be granted or extended to such leases under this Interim Order, except as permitted by the applicable lease or applicable law, *provided*, *further*, that if any such restriction applies, liens shall then be deemed to be granted and created upon the economic value of proceeds of any sale or other disposition of, and any other proceeds or products of, such leasehold interests); (d) if not otherwise described above, all of the property or rights in property identified as Collateral (as defined in the Prepetition Loan Agreement); (e) all other personal property of the Debtor and its estate of every kind and nature; and (f) as to all of the foregoing, all rents, issues, products, proceeds (including insurance policies), and profits of, from, or generated by any of the foregoing, in whatever form (all of the foregoing being collectively referred to in this Interim Order as the "***DIP Collateral***"). The DIP Liens are granted to the DIP Lender to secure all existing and future obligations and liabilities of every kind or nature (including, without limitation, principal of, and accrued interest on, amounts advanced to the Debtor under the DIP Term Sheet, which, upon entry of the Final Order, shall be deemed issued under the DIP Term Sheet, and all other fees, indemnity obligations, reimbursement obligations, and other obligations under or in connection with the DIP Term Sheet and DIP Loans, whether due or to become due,

absolute or contingent (the "***DIP Obligations***").

7.       DIP Lien Priority. Subject to the Carve Out, pursuant to sections 364(c)(2) and 364(d) of the Bankruptcy Code, the DIP Liens are valid, enforceable, non-avoidable, and fully perfected first priority priming security interests in and first priority priming liens upon all now owned or hereafter acquired assets and property of the Debtor including the Debtor's right, title, and interest in, to, and under all DIP Collateral, in each case, senior to any and all other security interests in and liens upon on the DIP Collateral, whether now in existence or hereafter incurred and whether arising before or after the Petition Date.

8.       DIP Superpriority Claims. Subject to the Carve Out, the DIP Lender is hereby granted, pursuant to sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code, allowed superpriority administrative expense claims for all amounts advanced to the Debtor under the DIP Term Sheet, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtor, whether now in existence or hereafter incurred by the Debtor, of every kind or nature, including any and all unsecured claims, administrative expenses, adequate protection claims, priority claims or any other claims of the kind specified in, or ordered pursuant to, the Bankruptcy Code, including, without limitation, *inter alia*, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 507, 364(c)(1), 546(c), 726, or 1114 and, upon entry of the Final Order, sections 506(c) and 552(b) ("***DIP Superpriority Claims***").

9.       Adequate Protection. In consideration for the Debtor's use of the Prepetition Collateral (including Cash Collateral), the Prepetition Lender shall receive the following adequate protection:

(a)       *Adequate Protection Liens*. Subject only to the Carve Out and the terms of this Interim Order, pursuant to Bankruptcy Code sections 361, 363(e) and 364, and in consideration

of the stipulations and consents set forth herein, as adequate protection for and solely to the extent of any diminution in the value, from and after the Petition Date, of the Prepetition Lender's interests in the Prepetition Collateral (including Cash Collateral) resulting from: (i) the use, sale, or lease of the Prepetition Collateral; and (ii) the imposition of the automatic stay (together, the "***Adequate Protection Obligations***"), the Debtor hereby grants to the Prepetition Lender an additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected, *nunc pro tunc* to the Petition Date, postpetition security interests in and liens on (the "***Adequate Protection Liens***") the DIP Collateral which Adequate Protection Liens shall be subordinate only to the DIP Liens and the Carve Out.

(b)      *Superpriority Claims*. Pursuant to Bankruptcy Code section 507(b), the Prepetition Lender, effective as of entry of this Interim Order, is hereby further granted an allowed superpriority administrative expense claim (the "***Prepetition Superpriority Claim***") for the diminution in the value (as determined under applicable bankruptcy law) of the Prepetition Collateral, which claim shall be junior only to the DIP Superpriority Claims and the Carve Out.

10.      <u>Modification of Automatic Stay</u>. The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtor to provide the adequate protection provided herein; (b) permit the Debtor to perform such acts as the Prepetition Lender may reasonably request to assure the perfection and priority of the Adequate Protection Liens granted herein; (c) enter into, execute, deliver, perform, and comply with all of the terms, conditions, and covenants of the DIP Term Sheet and execute all other documents or agreements required for the Debtor's performance of its obligations under the DIP Term Sheet and the creation and perfection of liens granted or contemplated thereby; and (d) pay all obligations

incurred by the Debtor under the DIP Term Sheet (whether principal, interest, fees, costs, expenses, indemnities, or other amounts described therein) as such amounts become earned, due, and payable and without need to obtain further Court approval.

11.    <u>Carve Out.</u> The carve-out (the "***Carve-Out***") shall mean the sum of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee, (ii) solely upon any conversion of this Chapter 11 Case to a case under chapter 7, all reasonable fees and expenses up to $10,000.00 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "***Chapter 7 Trustee Carve-Out***"); and (iii) to the extent included in the Budget and allowed at any time, whether by interim order, procedural order, or otherwise, the payment of all unpaid fees, costs, disbursements and expenses (the "***Allowed Professional Fees***") incurred or earned  by persons or firms retained by the Debtor pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "***Professional Persons***") at any time before or on the first business day following delivery by the DIP Lender of a Carve Out Notice (as defined below), whether allowed by the Court prior to, on or after delivery of a Carve Out Notice (the amounts in   (i)-(iii), collectively, the "***Pre-Trigger Carve Out Cap***"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $15,000.00 incurred after the first business day following delivery by the DIP Lender of the Carve Out Notice to the Carve Out Notice Parties (as defined in the Interim Order) (such date, the "***Trigger Date***"), to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "***Post-Carve Out Notice Cap***" and such amounts set forth in clauses (i) through (iv), the "***Carve Out Cap***"); provided that nothing herein shall be construed to impair any party's ability to object to Court approval of any request for approval of compensation or reimbursement of expenses of any Professional Person.  Prior to

the Debtor's receipt of any Carve-Out Notice, the Debtor shall wire transfer funds from the Debtor's cash or the proceeds of the DIP Facility, on a weekly basis, to the Ashby & Geddes P.A. Client Trust Account (to the extent of such funds actually deposited, the "**Reserve Account**") in the amount equal to, but not to exceed, the professional fees and costs set forth in the Budget for the Debtor's professionals, Ashby & Geddes, P.A. and Lane Powell P.C. (together, the "***Debtor's Professionals***") for each such week. From such funds held in the Reserve Account, Ashby & Geddes, P.A. shall release to the Debtor's Professionals such amounts as are payable pursuant to an applicable order of this Court, including an order approving interim compensation procedures in the Chapter 11 Case and any order granting interim or final fee applications for Debtor's Professionals (each, a "**Fee Order**"). Funds held in the Reserve Account shall be applied to payable professional fees that have been incurred following the Petition Date in the manner set forth in this Interim Order and in accordance with the procedures established in the Chapter 11 Case. All amounts payable to Debtor's Professionals pursuant to an applicable order of this Court shall be paid first from funds remaining in the Reserve Account, if any, and, upon exhaustion thereof, from the Carve-Out as such fees are payable pursuant to a Fee Order.  For purposes of the foregoing, "**Carve Out Notice**" shall mean a written notice delivered via email by the DIP Lender to the Debtor, counsel to the Debtor (Ashby & Geddes; Attn: Gregory A. Taylor), counsel to any Creditors Committee and the U.S. Trustee (collectively, the "**Carve Out Notice Parties**"), which notice shall be delivered upon the expiration of the Cure Period (as defined below), and shall describe in reasonable detail such Event of Default (as defined in the DIP Term Sheet) that is alleged to have occurred and to be continuing at the end of such Cure Period and stating that the Post-Carve Out Notice Cap has been invoked.

12.     <u>Default; Rights and Remedies</u>.

(a)     *Events of Default*. Each Event of Default set forth in the DIP Term Sheet shall constitute an "<u>Event of Default</u>" under this Interim Order.  Any Event of Default may be waived by the DIP Lender in its sole discretion.

(b)     *Rights and Remedies*.

(1)     Upon the occurrence of an Event of Default, and without the necessity of seeking relief from the automatic stay or any further order of the Court, the DIP Lender shall provide the Debtor and its counsel with notice of such Event of Default, and the Debtor shall have three (3) business days in which to cure such Event of Default (the "***Cure Period***"). If the Debtor fails to cure the Event of Default within the Cure Period, then, without the necessity of seeking relief from the automatic stay or any further order of the Court (but subject and subordinate in all respects to the Carve Out set forth in this Interim Order):

(i)     the DIP Lender shall no longer have any obligation to make any DIP Loans (or otherwise extend credit) under the DIP Term Sheet,

(ii)     all amounts outstanding under the DIP Term Sheet shall, at the option of the DIP Lender, be accelerated and become immediately due and payable,

(iii)     the DIP Lender shall be entitled to charge the default rate of interest under the DIP Term Sheet,

(iv)     the DIP Lender and Prepetition Lender shall be entitled to immediately terminate the Debtor's right to use Cash Collateral, without further application or order of this Court,

(v)     the Debtor shall be bound by all post-default restrictions, prohibitions, and other terms as provided in this Interim Order and the DIP Term Sheet,

(vi)    both the DIP Lender and Prepetition Lender shall be entitled to take any other action or exercise any other right or remedy as provided in this Interim Order, the DIP Term Sheet, the Prepetition Loan Documents, or applicable law, as they may deem appropriate in their sole discretion to, among other things, proceed against and realize upon the DIP Collateral (including the Prepetition Collateral) or any other assets or properties of the Debtor's estate which the DIP Lender and the Prepetition Lender have been or may hereafter be granted liens or security interests (including without limitation, setting off any DIP Obligations or Prepetition Obligations with DIP Collateral, Prepetition Collateral, or proceeds in the possession of the DIP Lender or Prepetition Lender, and enforcing any and all rights and remedies with respect to the DIP Collateral or Prepetition Collateral, as applicable), in order to obtain the full and indefeasible payment of all the DIP Obligations and Prepetition Obligations; and

(vii)    the Debtor shall waive any right to seek relief under the Bankruptcy Code to the extent such relief would restrict or impair the rights or remedies of the DIP Lender and the Prepetition Lender under this Interim Order, the DIP Term Sheet or the Prepetition Loan Documents, as applicable, and cooperate with the DIP Lender and Prepetition Lender in the exercise of any of the foregoing rights and remedies against the Debtor and the DIP Collateral, and assist the DIP Lender or Prepetition Lender in effecting any sale or other disposition of the DIP Collateral required by the DIP Lender or Prepetition Lender, including any sale of DIP Collateral pursuant to Bankruptcy Code section 363, or assumption and assignment of DIP Collateral consisting of contracts and leases pursuant to Bankruptcy Code section 365, in each case, upon such terms acceptable to the DIP Lender or Prepetition Lender in their sole discretion.

(2)    The rights and remedies of the DIP Lender or Prepetition Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender or Prepetition

Lender may have under the DIP Term Sheet, the Prepetition Loan Documents, or otherwise and may be exercised in whole or in part, in any order. With respect to the exercise of such rights and remedies, the fourteen-day stay provisions of Bankruptcy Rules 6004(h) and 4001(a)(3) are hereby waived.

13.    <u>Release</u>. Subject to paragraph 5 supra, in consideration of and as a condition to the DIP Lender making the DIP Loan under the DIP Term Sheet, consenting to the use of Cash Collateral, and providing other credit and financial accommodations to the Debtor pursuant to the provisions of this Interim Order and the DIP Term Sheet, the Debtor, on behalf of itself, and successors and assigns and its estate (collectively, the "***<u>Releasors</u>***"), hereby absolutely releases and forever discharges and acquits the DIP Lender and the Prepetition Lender, and each of their respective successors, participants, and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, and other representatives (collectively,  the "***<u>Releasees</u>***") of and from any and all claims, demands, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, cross claims, defenses, rights of set-off, demands, and liabilities whatsoever (individually, a "***<u>Released Claim</u>***," and collectively, the "***<u>Released Claims</u>***") of every kind, name, nature, and description, known or unknown, foreseen or unforeseen, matured or contingent, liquidated or unliquidated, primary or secondary, suspected or unsuspected, both at law and in equity, including, without limitation, any so-called "lender liability" claims or defenses, that any Releasor may now or hereafter own, hold, have, or claim to have against the Releasees, or any of them for, upon, or by reason of any nature, cause, or thing whatsoever that arose or may have arisen at any time on or prior to the date of this Interim Order, in respect of the Debtor, the Prepetition Obligations, the

Prepetition Loan Documents or other financial accommodations under the Prepetition Loan Documents, DIP Term Sheet or the DIP Loan; _provided_, _however_, that such release shall not be effective with respect to the Debtor until entry of a Final Order, and with respect to the estate, until the expiration of the Challenge Period.  In addition, upon entry of a Final Order and subject to the Challenge Period, the indefeasible payment and satisfaction in full of all DIP Obligations owed to the DIP Lender by the Debtor, and termination of the rights and obligations arising under this Interim Order and the DIP Term Sheet (which payment and termination shall be on terms and conditions acceptable to the DIP Lender), the DIP Lender shall be automatically deemed to be absolutely and forever released and discharged from any and all obligations, liabilities, actions, duties, responsibilities, commitments, claims, and causes of action arising, occurring in connection with, or related to the DIP Term Sheet or this Interim Order (whether known or unknown, direct or indirect, matured or contingent, foreseen or unforeseen, due or not due, primary or secondary, liquidated or unliquidated).

14.    <u>Section 552(b) Waiver</u>. Subject to entry of the Final Order, the Prepetition Lender shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception shall not apply.

15.    <u>Section 506(c) Waiver</u>. Subject to entry of the Final Order, the Debtor and its estate waive any claim under Bankruptcy Code section 506(c) for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Prepetition Lender upon the Prepetition Collateral.

16.    <u>No Marshalling/Application of Proceeds</u>. Subject to entry of the Final Order, in no event shall the Prepetition Lenders be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral or any proceeds thereof.

17.    <u>Good Faith</u>. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, pursuant to Bankruptcy Code sections 105, 361, 363, and 364, the Debtor and the DIP Lender are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Interim Order and are entitled to the protections afforded by Bankruptcy Code section 364(e).

18.    <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

19.    <u>No Liability to Third Parties</u>. In permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, neither the Prepetition Lender nor the DIP Lender shall be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq*. as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to the Debtor, its creditors or estate, or shall constitute or be deemed to constitute a joint venture or partnership with the Debtor. Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose upon the Prepetition Lender or the DIP Lender any liability for any claims arising from the prepetition or postpetition activities of the Debtor (as defined in Bankruptcy Code section 101(2)).

20.    <u>Binding Effect of Interim Order</u>. The provisions of this Interim Order shall be binding upon all parties in interest in the Chapter 11 Case, including the DIP Lender, any official committees that may be appointed in the Chapter 11 Case, and the Debtor and their respective

successors and assigns and shall inure to the benefit of the DIP Lender, the Debtor and their respective successors and assigns. This Interim Order shall bind any trustee hereafter appointed or elected for the Debtor's estate whether in the Chapter 11 Case or in the event of the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code. Such binding effect is a benefit of the DIP Lender's bargain in connection with the Debtor's use of Cash Collateral and is an integral part of this Interim Order.

21.    <u>Survival</u>. The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any chapter 11 plan, (ii) converting the Chapter 11 Case to a chapter 7 case, or (iii) dismissing the Chapter 11 Case. The terms and provisions of this Interim Order, including the adequate protection granted pursuant to this Interim Order, shall continue in full force and effect notwithstanding the entry of any of the foregoing orders, and such claims and liens shall maintain their priority as provided by this Interim Order until all of the DIP Obligations and Prepetition Obligations are indefeasibly paid and satisfied in full in cash.

22.    <u>Findings of Fact and Conclusions of Law</u>. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof. To the extent that any findings of fact are determined to be conclusions of law, such findings of fact shall be adopted as such; and to the extent that any conclusions of law are determined to be findings of fact, such conclusions of law shall be adopted as such.

23.    <u>Order Effective upon Entry</u>. Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

24. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction and power to enforce this Interim Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

25. <u>Final Hearing</u>. The Court will conduct a hearing to consider the entry of an order granting the relief requested in the Motion on a final basis on _____, 2024 at __:__ __.m. (prevailing Eastern Time), before The Honorable _____, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, __th Floor, Courtroom No. __, Wilmington, Delaware 19801.  Any responses or objections to the Motion shall be made in writing, conform to the applicable Bankruptcy Rules and Local Rules, be filed with the Court, set forth the name of the objecting party, the basis for the objection, and the specific grounds therefor, and be served by no later than _____, 202__, at 4:00 p.m. (prevailing Eastern time) on the following parties (the "<u>Notice Parties</u>"): (i) the Debtor c/o Ashby & Geddes, P.A., Attn: Gregory A. Taylor (gtaylor@ashbygeddes.com) and Michael D. DeBaecke (mdebaecke@ashbygeddes.com); (ii) counsel for Keystone Real Estate Lending Fund, L.P., Snell & Wilmer, L.L.P., Attn: Raminta Rudys (rrudys@swlaw.com); (iii) the Office of The United States Trustee, 844 King Street, Suite 2207 Lockbox 35, Wilmington, Delaware 19801, Attn: Richard L. Schepacarter (Richard.Schepacarter@usdoj.gov); and (iv) and (c) counsel to any statutory committee appointed in this case, so as to be received by the above objection deadline. The Final Hearing may be continued from time to time without further notice other than given in open Court.

## EXHIBIT 1

**(DIP Loan Commitment Term Sheet)**

# DIP LOAN COMMITMENT TERM SHEET
## November 30, 2023

This term sheet (the "***DIP Term Sheet***") describes the principal terms and conditions of a debtor in possession loan (the "***DIP Loan***") from Keystone Real Estate Lending Fund L.P. (the "***DIP Lender***") to CAPREF Lloyd Center East, LLC (the "***Borrower***" or "***Debtor***").  This DIP Term Sheet shall be binding upon (i) due execution by the parties hereto, (ii) entry of an order by the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***") for the Debtor's chapter 11 bankruptcy proceeding anticipated to be filed on December 4, 2023 (the "***Petition Date***") under title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***"), Case No. 23-_____ (___) (the "***Chapter 11 Case***"), approving the terms of the DIP Loan on an interim basis with the DIP Term Sheet annexed thereto as an exhibit (the "***Interim DIP Order***"), and (iii) entry of an order by the Bankruptcy Court approving the DIP Loan on a final basis with the DIP Term Sheet annexed thereto as an exhibit (the "***Final DIP Order***", and together with the Interim DIP Order, the "***DIP Orders***"), each in form and substance acceptable to the DIP Lender in its sole discretion.

The DIP Lender is prepared to provide a commitment to the Debtor for a DIP Loan upon the terms and conditions described below.

| | |
|---|---|
| **DIP Lender:** | Keystone Real Estate Lending Fund L.P. (the "***DIP Lender***") |
| **Borrower/Debtor:** | CAPREF Lloyd Center East, LLC (the "***Borrower***" or "***Debtor***" and together with the DIP Lender, the "***Parties***") |
| **Prepetition Loan:** | Borrower is obligated to Keystone Real Estate Lending Fund L.P. as lender (in such capacity, the "***Prepetition Lender***") under a loan (the "***Prepetition Loan***") evidenced by, among other things, (i) that certain Term Loan Agreement dated as of March 21, 2017, by and between Borrower and Lender (as thereafter amended and/or modified, the "***Prepetition Loan Agreement***") and (ii) that certain Secured Promissory Note dated as of March 21, 2017, in the original principal amount of $7,526,520.00 made by Borrower in favor of Lender (the "***Prepetition Note***"). |
| | The obligations evidenced by the Prepetition Note and Prepetition Loan Agreement (the "***Prepetition Obligations***") are secured by, among other things, that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of March 21, 2017, and recorded in the Multnomah County Official Records on March 24, 2017 as Instrument No. 2017-035671 (the "***Prepetition Deed of Trust***").  The Prepetition Deed of Trust encumbers real property , buildings, fixtures and other improvements, including all rights and easements appurtenant thereto (the "***Prepetition First Priority Liens***"), all as described therein (the "***Prepetition Collateral***"). |
| | Cypress Acquisition Partners Retail Fund, L.P. (the "***Guarantor***") has guaranteed payment and performance of the obligations of Borrower to Lender on the terms set forth in that certain Limited Recourse Guaranty dated as of March 21, 2017 (the "***Prepetition Guaranty***"). |
| | The Prepetition Note, the Prepetition Loan Agreement, the Prepetition Deed of Trust, the Prepetition Guaranty, and any related documents or instruments executed in connection with the Prepetition Loan are referred to collectively as |

| | the "***Prepetition Loan Documents***." |
|---|---|
| **Loan Amount/Funding:** | The initial principal amount of the DIP Loan shall be up to six hundred fifty thousand ($650,000.00) ("***Initial Loan Amount***"), subject to the terms and conditions provided herein. |
| | The DIP Loan proceeds shall be made available to the Debtor as a debtor-in-possession multi-draw term loan facility, as follows: |
| | • *First Draw*: Upon entry of the Interim DIP Order in form and substance satisfactory to the DIP Lender in its sole discretion, the DIP Lender shall advance to the Debtor the lesser of (x) the amount approved by the Interim Order and (y) one hundred fifty thousand ($150,000.00) (the "***Interim Advance***"). |
| | • *Second Draw*: Upon entry of the Final DIP Order in form and substance satisfactory to the DIP Lender in its sole discretion, the DIP Lender shall advance, in one or more draws not less than $50,000.00, to the Debtor an additional amount up to the amount approved by the Final Order less the Interim Advance (the "***Final Advance***" and, together with the Interim Advance, the "***Advances***" and each individually, an "***Advance***"). For the avoidance of doubt, in no event shall the sum of the Interim Advance and Final Advance exceed the initial principal amount of six hundred fifty thousand ($650,000.00). |
| **Uncommitted Incremental Facility:** | The Debtor shall have the option to request additional funding up to two hundred fifty thousand ($250,000.00) (the "***Incremental Funding***") in amounts and upon terms and conditions set forth herein, subject to the DIP Lender's receipt of a revised or incremental Budget (as defined below) for the amount and use of the Incremental Funding proceeds, which incremental funding shall be approved by the DIP Lender in its sole discretion. For the avoidance of doubt, the Incremental Funding shall be in addition to the Interim Advance and the Final Advance, and may be authorized by the Bankruptcy Court in the DIP Orders without requirement for further orders separately authorizing the Incremental Funding. |
| **Term/Maturity Date:** | The maturity date (the "***Maturity Date***") of the DIP Loan shall be the earliest of: |
| | • June 1, 2024 (the "***Stated Maturity Date***"); |
| | • the date of the closing (the "***Sale Closing Date***") of a sale of all or substantially all of the Collateral (as defined below) (the "***Sale***"); |
| | • the effective date of a Chapter 11 plan (the "***Plan***") confirmed pursuant to an order entered by the Bankruptcy Court; and |
| | • the occurrence and continuation of an Event of Default (as defined below). |
| **Repayment and Amortization:** | The DIP Loan shall not be subject to any amortization and shall be due and payable in full in cash on the Maturity Date. |
| **Prepayment:** | The Debtor may prepay the DIP Loan, in full or in part, at any time, including all principal, interest, fees and expenses with respect to the DIP Loan. |
| **Budget/Use of Proceeds:** | DIP Loan proceeds shall be used by the Debtor solely in accordance with the budget (the "***Budget***") set forth as **Exhibit A**. On any reporting date, the Debtor |

|  | may submit to the DIP Lender an updated Budget and, if approved by the DIP Lender in its sole discretion, such updated Budget shall become the "**Budget**" for all purposes hereunder subject to any notice required under the Interim DIP Order or Final DIP Order. If the DIP Lender does not approve the updated Budget, the then-current Budget shall continue to govern the Debtor's receipts and disbursements.

The Budget shall consist of a budget beginning on the Petition Date through the first 13-weeks, setting forth all anticipated weekly uses of the DIP Loan proceeds, which shall include, among other things, available cash, cash flow, trade payables and ordinary course expenses, total expenses and incremental capital expenditures, fees and expenses relating to the DIP Loan, fees and expenses related to the Chapter 11 Case (including management fees and professional fees), and other general corporate needs, which forecast shall be in form and substance satisfactory to the DIP Lender. |
|---|---|
| **Financial Reporting:** | The Debtor shall provide the DIP Lender with a detailed, line-by-line, computation of actual to Budget deviations on a bi-weekly basis beginning on Wednesday of the week following entry of the Interim DIP Order. For the foregoing analysis, the Debtor shall provide brief commentary for each material line-item deviation (both favorable and unfavorable) when comparing actuals to Budget for all line-item variances in excess of the lesser of (x) 10% and (y) $50,000.00 (the "**Permitted Variance**"). |
| **Representations and Warranties / Covenants:** | Customary and appropriate for financings of this type, as set forth in the DIP Orders. |
| **Interest:** | The interest on each Advance shall accrue at the rate of 15.00% per annum, from the date of the funding of such Advance until such Advance is paid in full.  The interest shall be payable in kind; provided, however, if the Maturity Date occurs on or prior to April 30, 2024, the payment of all interest shall be waived.

Interest shall be computed based on a 360-day year over the actual days elapsed, unless such computation results in the effective interest rate of the DIP Loan exceeding the maximum rate of interest allowable under applicable state and federal law. It is hereby understood and agreed upon by and between the Debtor and DIP Lender that the DIP Lender does not intend, under any circumstances, to charge, collect, assess or receive interest, at an effective rate, in excess of the maximum rate allowable under applicable state and federal law. |
| **Default Interest:** | Upon the occurrence of and during the continuation of an Event of Default, as defined below, the DIP Loan will automatically bear interest at a rate of 5.00% per annum greater than the interest rate set forth in the preceding section, accruing monthly (on the same dates and in the same manner as the regular interest) and payable in full on the Maturity Date. |
| **Fees:** | An initial loan fee in the amount of 1.00% of the Initial Loan Amount (the "**Initial Loan Fee**").

An Incremental Funding advance fee of 0.75% of the amount of any Incremental Funding advances by DIP Lender (the "**Incremental Funding Fee**").

All fees shall be paid in kind and are due and payable at the Maturity Date. |
| **Collateral/Other Rights:** | Subject to the Carve Out (as defined below) and any Prior Permitted Lien (as defined in the Interim Order), the DIP Loan shall be secured by a first priority mortgage and/or lien (including, without limitation, under a deed of trust or |

|  | similar security instrument) on all assets of the Debtor, whether now owned or hereafter acquired and wherever located, including, without limitation, all accounts, inventory, equipment, capital stock in subsidiaries of the Debtor, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles, and all products and proceeds thereof, including, without limitation, (i) any proceeds from (a) the Sale or (b) the confirmed Plan that becomes property of the Debtor's estate (the "*Collateral*").<br><br>Subject to the Carve Out and any Prior Permitted Liens, the priming mortgage liens and security interests in favor of the DIP Lender shall be senior to any and all other prepetition or postpetition liens or interests, including, without limitation, judgment liens, mechanics' liens, liens imposed by applicable covenants, declarations and restrictions, mortgages and security interests encumbering said Collateral pursuant to Sections 364(d) and 364(c)(2) of the Bankruptcy Code.<br><br>In addition to the foregoing and subject to the Carve Out, as a condition precedent to the DIP Lender's obligation to make the DIP Loan and as a material inducement to the DIP Lender, all obligations of the Debtor to the DIP Lender with respect to the DIP Loan (the "*Post-Petition Obligations*") and proceeds thereof shall at all times constitute a superpriority administrative expense claim against the Debtor and its estate in the Chapter 11 Case pursuant to Sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code, with priority and seniority over any and all other administrative expense claims in the Chapter 11 Case now existing or hereafter arising. |
| --- | --- |
| **Lien Perfection:** | All liens authorized and granted by the Bankruptcy Court approving the DIP Loan shall be deemed perfected and no further action or filing will be required to effect such perfection. |
| **Carve Out:** | The carve-out (the "*Carve-Out*") shall mean the sum of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee, (ii) solely upon conversion of this Bankruptcy Case to a case under chapter 7, all reasonable fees and expenses up to $10,000.00 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "*Chapter 7 Trustee Carve-Out*"); and (iii) to the extent included in the Budget and allowed at any time, whether by interim order, procedural order, or otherwise, the payment of all unpaid fees, costs, disbursements and expenses (the "*Allowed Professional Fees*") incurred or earned  by persons or firms retained by the Debtor pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "*Professional Persons*") at any time before or on the first business day following delivery by the DIP Lenders of a Carve Out Notice (as defined in the Interim Order), whether allowed by the Court prior to, on or after delivery of a Carve Out Notice (the amounts in   (i)-(iii), collectively, the "*Pre-Trigger Carve Out Cap*"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $15,000.00 incurred after the first business day following delivery by the DIP Lenders of the Carve Out Notice to the Carve Out Notice Parties (as defined in the Interim Order) (such date, the "*Trigger Date*"), to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "*Post-Carve Out Notice Cap*" and such amounts set forth in clauses (i) through (iv), the "*Carve Out Cap*"); provided that nothing herein shall be construed to impair any party's ability to object to Court approval of the fees, expenses, reimbursement of expenses or compensation of any Professional Person. |

| Default/Remedies: | Each of the following specified events shall constitute an event of default under this DIP Term Sheet (each event of default specified below is referred to herein as an "***Event of Default***"): |
|---|---|

- the failure by the Debtor to obtain court approval of the Interim DIP Order on or before December 11, 2023;

- the failure by the Debtor to obtain court approval of the Final DIP Order on or before January 11, 2024;

- any filing by the Debtor seeking to vacate or modify the entered DIP Orders over the objection of the DIP Lender;

- the failure by the Debtor to make any required payments or comply with any deadline set forth herein;

- the filing by the Debtor of (or supporting any other party in the filing of) any pleading seeking entry of an order by the Bankruptcy Court granting any superpriority claim or lien that is senior to or *pari passu* with those granted to the DIP Lender hereunder;

- the granting of any superpriority claim or lien senior or *pari passu* with those granted to the DIP Lender hereunder;

- the use or application of proceeds in a manner not provided for in the Budget;

- the entry of a court order in the Chapter 11 Case appointing a chapter 11 trustee or examiner with expanded powers;

- the filing by the Debtor of a Chapter 11 plan that has not been consented to by the DIP Lender;

- if no hearing to confirm a Plan has been held on or before May 10, 2024;

- a court order confirming a Plan (the "***Confirmation Order***") has not been obtained on or before May 15, 2024;

- the reversal or vacation of the Confirmation Order;

- the withdrawal, revocation or termination of a confirmed Plan pursuant to the terms therein;

- if the Confirmation Order has not become a final court order on or before May 30, 2024;

- the entry of an order dismissing the Chapter 11 Case or converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code;

- the sale of any Collateral (i) without the approval of the Bankruptcy Court, or (ii) that does not indefeasibly satisfy all obligations of the Debtor under the DIP Loan in full in cash, absent consent of the DIP Lender in its sole discretion; and

- the failure to close a Sale by May 30, 2024, unless such date is extended by the DIP Lender in its sole discretion.

Upon the occurrence of an Event of Default, the DIP Lender shall provide the Debtor and its counsel with notice of such Event of Default in writing (a "***Default Notice***"). The Debtor shall have three (3) business days in which to cure such Event of Default (the "***Cure Period***"). If the Debtor fails to cure the Event of Default within the Cure Period, then without further notice or order of the

| | |
|---|---|
| | Bankruptcy Court, the automatic stay of Section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to allow the DIP Lender, in its sole discretion and without any further notice to the Debtor, to immediately suspend or terminate any obligation to fund the Interim Advance and/or the Final Advance, as applicable, to declare all obligations in respect of the DIP Loan to be immediately due and payable, and to exercise all rights and remedies available under the DIP Orders or as a secured lender under applicable law; *provided* that the Debtor shall waive any right to seek relief under the Bankruptcy Code to the extent such relief would restrict or impair the rights or remedies of the DIP Lender under the DIP Orders or the DIP Term Sheet. |
| **Conditions:** | The DIP Lender's obligations to close the DIP Loan shall be expressly subject to the following conditions precedent:<br><br>• By December 4, 2023, the Debtor shall have filed a copy of this Term Sheet with a motion seeking entry of the proposed DIP Orders each in form and substance acceptable to the DIP Lender, and served the same on all parties in interest required to be so served.<br><br>• The Debtors shall have delivered the Budget to the DIP Lender in form and substance satisfactory to the DIP Lender.<br><br>• By January 11, 2024, the Bankruptcy Court shall have entered the Final DIP Order in form and substance acceptable to the DIP Lender authorizing the DIP Loan under the terms set forth in this DIP Term Sheet and the Final DIP Order, which Final DIP Order shall not have been appealed, modified, stayed, vacated, or reversed, and which shall provide for, without limitation, (i) priming first priority liens or security interests in favor of the DIP Lender in the Collateral as more fully set forth above, (ii) a superpriority administrative expense claim of the DIP Lender against the Debtor and its estate  in the amount of the DIP Loan and proceeds thereof as more fully set forth above, (iii) payment of the DIP Lender's fees and expenses incurred in connection with the DIP Loan and the Chapter 11 Case (including its attorney's fees and expenses), (iv) the validity, perfection, priority, enforceability and non-avoidability of the liens and security interests granted in favor of the DIP Lender under the Pre-Petition Credit Agreement, and waiver by the Debtor of any and all claims of any kind against the DIP Lender with respect to the Pre-Petition Credit Agreement and the liens and security interests granted thereunder, including any right to investigate or challenge the validity, perfection, priority, enforceability or non-avoidability of such liens and security interests, and (v) any other customary provisions of final orders approving similar DIP financings.<br><br>• All reasonable fees, costs, disbursements and expenses of the DIP Lender (including all reasonable fees, costs, expenses and disbursements of the DIP Lender's lead counsel, Snell & Wilmer LLP, and the reasonable fees and expenses of a Delaware law firm who will serve as Delaware counsel for the DIP Lender), to the extent included in the Budget, shall have been paid in full including through use and application of DIP Loan proceeds. |
| **Documentation:** | The DIP Loan shall be documented in the form of this DIP Term Sheet, duly executed by the Parties and annexed as an exhibit to the Interim DIP Order and to the Final DIP Order.  In the event of any conflict between this DIP Term Sheet and the DIP Orders, the terms of the DIP Orders shall control. |

| | |
|---|---|
| **DIP Lender Expenses:** | The Debtor shall pay all reasonable fees, costs, disbursements and expenses of the DIP Lender (including all fees, costs, disbursements and expenses of the DIP Lender's lead counsel and Delaware counsel), to the extent included in the Budget, whether incurred prior to or after commencement of the Chapter 11 Case, in connection with the discussion, negotiation, preparation, execution and delivery of any documents in connection with the DIP Loan, the DIP Orders or the Chapter 11 Case. All such payments shall be paid without further motion, fee application, or order of the Bankruptcy Court, but subject to customary review by the US Trustee as required by the local rules of the Bankruptcy Court. |
| **Indemnification:** | The DIP Lender and its affiliates, all of their respective officers, directors, employees, advisors and agents shall have no liability for, and shall be indemnified and held harmless against, any losses, claims, damages, liabilities or expenses (collectively, "*Losses*") incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent such Losses are found by a presiding court to arise from the gross negligence or willful misconduct of the relevant indemnified person(s). |
| **Governing Law:** | Delaware law shall govern this DIP Term Sheet without giving effect to any choice of law or conflict provision or rule that would cause the application of the laws of any jurisdiction other than the State of Delaware. |
| **Submission to Jurisdiction:** | The DIP Lender shall submit to the jurisdiction of the Bankruptcy Court. |
| **Closing:** | The closing on the DIP Loan shall take place as soon as practical after satisfaction of the conditions contained herein. |
| **Assignment:** | The DIP Lender shall not assign any or all of its obligations and rights hereunder to any other entities. |
| **Non-Waiver:** | No failure or delay on the part of the DIP Lender to exercise any rights under the DIP Term Sheet shall operate as a waiver thereof, nor shall any single or partial exercise by DIP Lender of any right under the DIP Term Sheet preclude any further exercise thereof, or the exercise of any other right. Each and every right or remedy granted under this DIP Term Sheet or any final order relating to the DIP Loan or under any document delivered thereunder or in connection therewith or allowed to the DIP Lender in law or equity shall be deemed cumulative and may be exercised from time to time. |
| **Section 506(c) Waiver** | Upon entry of the Final DIP Order, the Debtor and its estate shall waive any claim under Bankruptcy Code section 506(c) for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Pre-petition Lenders upon the Pre-petition Collateral (as defined in the Pre-Petition Credit Agreement) or the Collateral as defined herein. |
| **Section 552(b) Waiver** | The Pre-petition Lenders shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and, upon entry of the Final Order, the Debtor shall agree that the "equities of the case" exception shall not apply. |
| **Validity of Liens & Claims and Releases** | Subject to the right of other parties in interest with standing to assert a Challenge (as defined in the Interim Order), the Debtor shall (i) stipulate to the amount, validity, enforceability, perfection and unavoidability of the Prepetition |

| | Obligations and the liens of the Prepetition Lender upon the Prepetition Collateral, (ii) acknowledge that no affirmative claims exist with respect to the Prepetition Lender with respect to any matters, and (iii) release and waive any such matters, including affirmative causes of action and objections to claims, with respect to the Prepetition Lender. |

**<u>Exhibit A</u>**

Budget

**DIP Budget**                                                                       For the week ending

| | 12/9/2023 | 12/16/2023 | 12/23/2023 | 12/30/2023 | Interim Total | 1/6/2024 | 1/13/2024 | 1/20/2024 | 1/27/2024 | 2/3/2024 | 2/10/2024 | 2/17/2024 | 2/24/2024 | 3/2/2024 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Utilities | 2,000 | | | | 2,000 | 2,000 | | | | | 2,000 | | | | 6,000 |
| Insurance | 3,700 | | | | 3,700 | 3,700 | | | | | 3,700 | | | | 11,100 |
| Management | | | | | | | 75,000 | | | | | | | | 75,000 |
| Security | 1000 | | | | 1000 | 1000 | | | | | 1000 | | | | 3,000 |
| Travel | 1,500 | | | | 1,500 | 1,500 | | | | | 1,500 | | | | 4,500 |
| | | | | | | | | | | | | | | | |
| Ashby & Geddes | 10,000 | 35,000 | 35,000 | 37,500 | 117,500 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 25,000 | 37,500 | 37,500 | 37,500 | 405,000 |
| Lane Powell | | | | | | | | | | 37,500 | | | | 37,500 | 75,000 |
| R/E Broker | | | | | | | | | | | | | | | |
| Receiver/counsel | | | | | | | | 25,000 | | | | | | | 25,000 |
| DIP Lender Fees and Costs | | | | 5,000 | 5,000 | | | | | | | | | 5,000 | 10,000 |
| US Trustee | | | | | | | | | | | | | | 5,000 | 5,000 |
| Contingency | | | | 2,500 | 2,500 | | | | | 2,500 | | | | 2,500 | 7,500 |
| | | | | | | | | | | | | | | | |
| Totals: | | | | | 133,200 | | | | | | | | | | 627,100 |