## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CAPREF LLOYD CENTER EAST, LLC[1] | Case No. 23-11942 (JTD) |
| Debtor. | **Hearing Date: March 19, 2024 @ 10:00 am (ET)**<br>**Objections: March 12, 2024 @ 4:00 pm (ET)** |

### DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT OF HILCO REAL ESTATE, LLC AS REAL ESTATE BROKER, EFFECTIVE AS OF FEBUARY 21, 2024, AND IN CONNECTION THEREWITH WAIVING CERTAIN REPORTING REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2(H)

Pursuant to sections 105(a), 327(a), 328(a), 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2, the above-captioned debtor and debtor in possession (the "Debtor") files this Application ("Application") seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (a) authorizing the Debtor to employ Hilco Real Estate, LLC ("Hilco" or "Broker") as its real estate agent in accordance with the terms and provisions set forth in that Real Estate Consulting and Advisory Services Agreement, dated as of February 21, 2024 (the "Agreement"), a copy of which is attached hereto as **Exhibit B,** with respect to the sale of the Debtor's land, buildings, and related improvements located at 1260 NE Lloyd Center, Portland, OR 97232  (hereafter, the "Property"); (b) approving the terms and conditions under which Hilco will be employed and compensated as set forth in the Agreement; (c) waiving certain reporting requirements of Bankruptcy Rule 2016 and Local Rule 2016-2; (d) as to Hilco, waiving

---

[1]    The Debtor in this case, along with the last four digits of its federal tax identification number, is CAPREF Lloyd Center East, LLC (1920) and the location of its service address is 4514 Travis Street, Suite 208, Dallas, TX 75205.

requirements and procedures for interim compensation and reimbursement of expenses for professionals set forth in that certain *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [Dkt. No. 40] (the "Interim Compensation Order"); and (e) granting such other and further relief as the Court deems just and proper.  In support of this Application, the Debtor submits the declaration of Eric Kaup (the "Kaup Declaration"), attached hereto as **Exhibit C** and declaration of Todd Minnis (the "Minnis Declaration"), attached hereto as **Exhibit D.**  In further support of this Application, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Pursuant to Local Rule 9013-1(f), the Debtor confirms its consent to entry of a final order by the Court in connection with this Application if it is later determined the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases and authority for the relief requested herein are Bankruptcy Code sections 105(a), 327(a), 328(a), 330, and 331, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2.

## BACKGROUND

4.      On December 4, 2023 (the "Petition Date"), the Debtor filed in this Court its voluntary chapter 11 bankruptcy petition.  The Debtor operates its business and manages its

property and assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no request for the appointment of a trustee or examiner has been made and no official committee of unsecured creditors has been appointed in this chapter 11 case.

5.      With assistance from its professionals, the Debtor seeks to market and sell substantially all of its assets, free and clear of all liens, claims, interests, and encumbrances.  The Property is the Debtor's primary asset.  The Property and any related assets up for sale shall be referred to herein as the "Assets".[2]

6.      Additional information about the Debtor, its assets and business, and the facts and circumstances leading up to the Petition Date can be found in the First Day Declaration.

## EMPLOYMENT OF BROKER

7.      As indicated in the First Day Declaration, the Debtor intends to market and sell the Property during this chapter 11 case.[3]  The Debtor seeks to employ Hilco to provide assistance with respect to the marketing and sale of the Property and ongoing efforts to generate the highest and/or best offer available for the Property.

8.      Proposals were solicited from, and Debtor representatives subsequently interviewed, several well-known real estate firms regarding the marketing and sale of the Property. Based upon the proposals and materials received, the Debtor in the exercise of its reasonable business judgment has determined that retaining Hilco under the terms and provisions of the Agreement will be in the best interests of the estate.

---

[2]  The first day declaration of Todd Minnis (the "First Day Declaration") also is incorporated by reference herein in support of the relief requested. [Dkt. No. 3.]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration or the Agreement.

[3]  The Debtor expects to file contemporaneously herewith a motion for entry of separate orders (i) approving bidding procedures, (ii) approving a free and clear sale of the Assets, and (iii) granting related relief.

9.      Headquartered in Northbrook, Illinois, Hilco is a diversified real estate consulting and advisory firm that evaluates, restructures, facilitates the acquisition of, and disposes of all types of real estate both nationally and internationally.  Hilco is a recognized leader in the real estate field and boasts an experienced team of real estate brokers, analysts, and other professionals that have worked on numerous accelerated sales of challenging properties in bankruptcy and other distressed scenarios.  Hilco possesses extensive experience in the commercial real estate industry and has advised numerous debtors in connection with similar issues related to their restructuring and property disposition efforts, including in the following cases: *500 Summit Avenue Mazal LLC*, Case No. 23-11831 (Bankr. S.D.N.Y. Feb. 14, 2024); *4452 Broadway Mazal LLC*, Case No. 23-11832 (Bankr. S.D.N.Y. Feb. 14, 2024); *Uptown Partners, LP*, Case No. 23-00988 (Bankr. M.D. Pa. Oct. 10, 2023); *9th & 10th Street L.L.C.*, Case No. 23-10423 (Bankr. S.D.N.Y. Sept. 1, 2023); *Duling Son's Inc.*, Case No. 21-30026 (Bankr. D.S.D. July 25, 2023); *Chapin Center RE, LLC*, Case No. 23-30136 (Bankr. D. Mass. July 18, 2023); *Uptown 240, LLC*, Case No. 23-10617 (Bankr. D. Colo. July 17, 2023); *RODA, LLC*, Case No. 23-30250 (Bankr. D. Or. May 1, 2023); and *Acorn Realty Property Acquisition, Inc.*, Case No. 22-42718 (Bankr. E.D.N.Y. Jan. 30, 2023).

10.      The Debtor has determined that Hilco's services and assistance will substantially enhance its ongoing efforts to maximize the value of the Property.  The Debtor believes Hilco is well-qualified and well-situated to perform all services contemplated by the Agreement and to represent the Debtor's interests in this chapter 11 case in a cost effective, efficient and timely manner.

## <u>COORDINATION OF SERVICES</u>

11.      Hilco will work jointly and cooperatively with the Debtor's principals and the Debtor's other professionals as all navigate the section 363 sale and auction process.  All will work

jointly and cooperatively, in good faith, to maximize the value of the Property.

## AGREEMENT AND SCOPE OF SERVICES[4]

I.    **Scope of Services**

12.    As set forth in the Agreement, the Debtor seeks to engage Hilco to provide services in connection with the marketing and sale of the Property and any related Assets.

13.    Without limitation, and as detailed in the Agreement, it is anticipated Hilco will perform the following services (the "Services"):

  a. Meet with the Debtor and its professionals to ascertain the Debtor's goals, objectives and financial parameters in selling the Property;

  b. Coordinate with Debtor the development of a data room and due diligence materials, the cost of which shall be Debtor's sole responsibility;

  c. Market the Property and solicit potentially interested parties for the sale of the Property, through an accelerated sales process;

  d. Coordinate and conduct site visits at the Property with parties deemed (after consultation with the Debtor and its professionals) to be credible potential qualified bidders for the Property;

  e. Keep the Debtor and its professionals up-to-date and informed regarding Hilco's marketing efforts;

  f. At the Debtor's direction and on the Debtor's behalf, assist the Debtor with qualification of potential bidders for the Property, negotiation of the terms of bids received for the Property, and the selection of any stalking horse bidder and/or successful bidder for the Property; and

  g. Assist the Debtor with obtaining approval of bidding procedures and a sale of the Assets, including the provision of any testimony given at or in connection with any necessary Bankruptcy Court hearings, all with the goal of effectuating and closing a beneficial sale transaction.

---

[4]    The terms of the Agreement are summarized below for convenience of the Court and the parties. In the event of any conflict between this Application and the Agreement, the terms of the Agreement shall control.

## II.    <u>Term</u>

14.    Subject to the Bankruptcy Court approval, the initial term of Broker's employment is from February 21, 2024, the date of execution of the Agreement, through the earlier of four (4) months after entry of an order approving this Application or termination of the Agreement pursuant to its terms.  The initial term of the Agreement can be extended by further agreement of the parties, without the need for further application to the Bankruptcy Court.

## III.    <u>Indemnification</u>

15.    Subject to entry of an approval order, the Agreement provides that the Debtor and Broker will defend, indemnify and hold harmless the other and their respective directors, officers, employees, members, principals, and agents from and against certain claims, damages, expenses and liabilities (including reasonable attorneys' fees) (the "<u>Indemnification Provisions</u>"). (*See* Agreement, §8.)

16.    The Indemnification Provisions were negotiated at arms length and in good faith between the Debtor and Broker.  The Debtor respectfully submits such terms are reasonable, customary in agreements of this type, and in the best interests of the Debtor, its bankruptcy estate, and creditors.

## IV.    <u>Exclusivity</u>

17.    The Agreement provides that Broker shall serve as the Debtor's exclusive agent during the Term of the Agreement. (*See* Agreement, §3.)

## V.    <u>Compensation and Expenses</u>

18.    In accordance with the terms of the Agreement, upon closing of a sale transaction Broker is entitled to be paid as follows :

      a.    <u>Fees.</u>  The fees that would be due Hilco under the terms of the Agreement are referenced in Section 4(a) of the Agreement and described in detail in

Exhibit B to the Agreement. Other than as stated in paragraphs 2 and 3 of Exhibit B to the Agreement, if the Property is sold, Hilco shall earn a fee equal to five percent (5.0%) of the Gross Sale Proceeds, in addition to payment of Hilco's Reimbursable Expenses, all in accordance with the terms and provisions of the Agreement and Retention Order. "Gross Sale Proceeds" shall mean the aggregate cash and non-cash consideration received by the Debtor from a sale of the Property. The value of any non-cash consideration paid for the Property shall be determined by mutual agreement between Hilco and the Debtor, or otherwise as determined by the Bankruptcy Court at or in connection with a sale hearing.

Paragraph 2 of Exhibit B to the Agreement provides that if the Property is sold to the Debtor's current prepetition and postpetition lender, Keystone Real Estate Lending Fund, L.P. or any affiliate, parent, sister company, subsidiary, joint venture, assignee, or other party related thereto (collectively, "Keystone") by virtue of a credit bid, Hilco shall earn a Section 4(a) fee equal to two percent (2.0%) of the full amount of Gross Sale Proceeds (as defined above) received in connection with such successful credit bid, in addition to payment of Hilco's Reimbursable Expenses due under Section 6 of the Agreement. The value of any non-cash consideration paid by Keystone for the Property shall be determined by mutual agreement between Hilco and the Debtor, or otherwise as determined by the Bankruptcy Court at or in connection with a sale hearing.

Paragraph 3 of Exhibit B to the Agreement provides that if the Property is sold to KKR Real Estate Finance Trust or any affiliate, parent, sister company, subsidiary, joint venture, assignee, or other party related thereto (collectively, and including Urban Renaissance Group and any of its related parties, "KKR") as the successful purchaser, Hilco shall earn a Section 4(a) fee equal to (a) two percent (2.0%) of the Gross Sale Proceeds (as defined above) proposed in any initial KKR bid made during the Term of the Agreement, including any cash and non-cash consideration comprising the initial KKR bid for the Property (the "Baseline Gross Proceeds", as that term is defined in the Agreement), plus (b) five percent (5.0%) of any Gross Sale Proceeds over and above the Baseline Gross Proceeds, as set forth in any subsequent bid made by KKR in order to become the successful purchaser for the Property. The value of any non-cash consideration paid by KKR for the Property shall be determined by mutual agreement between Hilco and the Debtor, or otherwise as determined by the Bankruptcy Court at or in connection with a sale hearing. Any fee payable to Hilco hereunder shall be in addition to payment of Hilco's Reimbursable Expenses due under Section 6 of the Agreement. The fee described in said Paragraph 3 is specific to any sale of the Property to KKR.

b.  <u>Timing of Payment.</u> All fees and Reimbursable Expenses due and payable to Hilco under the Agreement would be due and payable at the time of closing on a sale of the Property or as otherwise specified in the Agreement or Retention Order.  All fees and expenses payable to Hilco shall be free and clear of any liens, claims and encumbrances, including the liens of any secured parties. (*See* Agreement, §§4, 6.)

c.  <u>Survival</u>:  If, within ten (10) days after the termination or expiration of the Term of the Agreement, Hilco delivers to the Debtor a written list of prospects for the Property (the "<u>Prospect List</u>"), and within one hundred and twenty (120) days after the termination or expiration of the Term of this Agreement, the Debtor consummates a sale of the Property to a prospect set forth on the Prospect List, Hilco shall be entitled to a fee, paid by the Debtor, in accordance with Section 4(a) of the Agreement as if the sale had been agreed to or consummated during the Term of the Agreement, except and unless such termination is for cause as provided in Section 10 of the Agreement.  For an entity to be properly included on the Prospect List, such entity prior to the termination or expiration of the Term of the Agreement must have submitted a written letter of intent, contract, or purchase offer to the Debtor or Hilco in connection with the Property, or otherwise must have been shown the Property in a site visit conducted by Hilco. (*See* Agreement, §5.)

d.  <u>Reimbursable Expenses</u>. In addition to the payment of fees, the Debtor shall reimburse Hilco for reasonable and customary Reimbursable Expenses (as defined in Section 6 of the Agreement) incurred in connection with the performance of the services proposed thereunder, for which Hilco and the Debtor shall discuss and agree on a proposed budget; provided, further, that such Reimbursable Expense obligation shall be capped at $25,000 and shall be in accordance with the terms and provisions of the Retention Order.  In addition to any other fees due hereunder, the Reimbursable Expenses shall be due and payable (i) at the closing of a sale of the Property, including a sale to a lender successfully credit bidding on such Property, (ii) in the event the Property does not sell during the full Term of the Agreement, within 15 days of the expiration of the full Term, (iii) in the event the sale hearing and/or auction is cancelled and there is no purchaser for the Property (including in connection with a refinancing of the Property), within 15 days of the later of the date the sale hearing and/or auction was scheduled to occur, or (iv) upon termination of the Agreement pursuant to Section 10 thereof, unless such termination was for cause (in which case, all parties' rights, claims, and defenses are fully reserved). "Reimbursable Expenses" means all out-of-pocket expenses incurred in connection with performance of the contemplated services, including,

without limitation: reasonable expenses incurred by Hilco in connection with marketing, advertising, economy travel and transportation (including airfare, hotels, car service charges, parking charges, and meals), capped at $25,000 in the aggregate For the avoidance of doubt, Hilco shall not be responsible for any out-of-pocket due diligence costs and expenses, including without limitation for updating appraisals, title reports, surveys, environmental reports, property condition assessments, etc.

19.    In no event shall Broker or any of its employees or agents be entitled to receive hourly compensation for (a) providing assistance in seeking and obtaining Court approval of the Agreement, including providing any required testimony and Court time related thereto, or (b) providing assistance in obtaining Court approval of a sale transaction, which assistance may include responding to requests for information and preparing for and testifying at or in connection with any Sale Hearing.

## VI.    <u>Allowance of Fees</u>.

20.    Pursuant to Local Rule 2016-2(h), the Debtor requests modification of the reporting requirements set forth in Local Rule 2016-2(d) with respect to Broker.  Broker is being employed pursuant to sections 327(a) and 328(a) of the Bankruptcy Code to provide real estate brokerage services to the Debtor.  It is standard practice in Broker's industry for professionals to provide services relating to the sale of real property on a flat fee percentage basis, rather than on an incremental hourly basis.  Moreover, Broker does not, in its ordinary course, keep time entries or detail of its services rendered, as is required by Local Rule 2016-2(d).  The Debtor and Broker respectfully request waiver of any such requirements in connection with the employment of Broker.

21.    When the Debtor seeks Court approval of a sale transaction, the Debtor shall include a request for approval of the payment, on an interim basis, of Broker's compensation due under the terms of the Agreement.  Upon such Court approval, Broker shall be paid, in full and

off-the-top, its proper fee compensation and reimbursement of expenses (in accordance with the terms of the Agreement), from sale proceeds and immediately following a closing or other consummation of such transaction.   Notwithstanding receipt of interim compensation, and pursuant to section 328(a) of the Bankruptcy Code, Broker will prepare and file a final fee application for review by the Court and parties in interest.   In addition, Broker shall apply for reimbursement of expenses in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, Local Rules, and orders of the Court.

22.     Broker has confirmed (a) no commitments have been made or received by it with respect to compensation or payment in connection with this case other than in accordance with the provisions of the Bankruptcy Code and (b) consistent with section 504 of the Bankruptcy Code, Broker will not share any compensation received by it in connection with its employment in this chapter 11 case with any other person or entity.

23.     Broker provided no services and was not engaged by the Debtor until after the Petition Date.   For the avoidance of doubt, Hilco has no prepetition claims to assert in this bankruptcy case.

## **DISINTERESTEDNESS**

24.     To the best of the Debtor's knowledge, except as may otherwise be set forth herein and in the Kaup Declaration, Hilco (a) is not a creditor, equity security holder or insider of the Debtor, (b) is not and was not, within 2 years before the Petition Date, a director, officer, manager, or employee of the Debtor, (c) does not hold or represent any interest materially adverse to the interests of the bankruptcy estate or any class of creditors or equity security holders and (d) is not related to any judge of this Court, the U.S. Trustee responsible for this District, or any employee of that U.S. Trustee's Office.

25.     Accordingly, the Debtor believes Hilco is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.  Its employment by the Debtor is permissible under sections 327(a) and 328(a) of the Bankruptcy Code and is in the best interests of all creditors and parties in interest.

26.     The Debtor understands Broker will use reasonable efforts to identify or discover any new material facts or relationships and will promptly file a supplemental declaration, as contemplated by Bankruptcy Rule 2014(a) and Local Rule 2014-1(a).

## RELIEF REQUESTED

27.     By this Application, pursuant to sections 327 and 328 of the Bankruptcy Code, the Debtor requests authority to employ Broker as its real estate broker with respect to the Assets, effective as of February 21, 2024, pursuant to the terms and provisions set forth in the Agreement.

## BASIS FOR RELIEF

28.     Section 327(a) of the Bankruptcy Code provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtor] in carrying out [its] duties under this title." 11 U.S.C. § 327(a).

29.     Additionally, section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 ... on any reasonable terms and conditions of employment, including ... on a fixed or percentage fee basis, or on a contingent fee basis ....". 11 U.S.C. § 328(a).

30.     Courts generally hold that real estate brokers are "professionals" pursuant to section 327 of the Bankruptcy Code when acting on behalf of a debtor to sell assets and property of the estate, including real property.  *See F/S Airlease II, Inc.* v. *Simon,* 844 F.2d 99, 108 (3d Cir. 1999)

("a real estate broker, like an attorney, is a professional"); *Indian River Homes, Inc. v. Sussex Trust Co.,* 108 B.R. 46, 50 n. 12 (D. Del. 1989) ("Bankruptcy courts routinely hold that real estate brokers are professional persons for purposes of § 327(a)") (citation omitted); *In re Channel 2 Associates,* 88 B.R. 351, 352 (Bankr. D.N.M. 1988); *In re 31-33 Corp.,* 100 B.R. 744, 746 (Bankr. E.D. Pa. 1989).

31.     As stated above, section 328(a) of the Bankruptcy Code permits the compensation of professionals on flexible terms that reflect the nature of their services and market conditions. That section was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to provide that a debtor may employ a professional person on any reasonable terms and conditions of employment, including "on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  The terms of the Agreement are consistent with and permissible under section 328(a).

32.     The Court should authorize the employment of Broker because Broker will apply its extensive industry experience in marketing and selling distressed real estate; it will tap into its deep network of potential acquirors; and it will utilize its national and global network to market the Property and related Assets, all in an effort to obtain the highest and/or best price in an expedient and efficient manner.

33.     Broker should be employed as a professional person pursuant to section 327 of the Bankruptcy Code, with its compensation subject to the standard of review set forth in section 328(a) of the Bankruptcy Code.

34.     The Debtor further believes the proposed compensation structure and the Indemnification Provisions are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code.  The compensation structure and the

Indemnification Provisions are fair and reasonable in light of, among other things, (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Broker's substantial experience with respect to real estate consulting and brokerage services, (d) the circumstances of this bankruptcy case, and (e) the services to be performed.  The compensation structure and the Indemnification Provisions appropriately reflect the nature and scope of services to be performed by Broker in this chapter 11 case and the fee structures and indemnification provisions typically approved in other bankruptcy cases.

35.    Additionally, Bankruptcy Rule 2016 and Local Rule 2016-2 require employed professionals to submit applications for payment of compensation and reimbursement of expenses. Local Rule 2016-2(d) also requires employed professionals to submit detailed time entries that set forth, among other things, a description of the activities performed, the amount of time spent on each activity (in tenth of an hour increments), the subject matter of the activities, and the parties involved with the activities at issue.  However, the Court is permitted to waive these informational requirements.  *See* Local Rule 2016-2(h).

36.    As to Broker, the Debtor requests a waiver of the requirements of Bankruptcy Rule 2016, Local Rule 2016-2, and the Interim Compensation Order.[5]

37.    In exchange for its services, Broker will receive the compensation set forth in the terms and provisions of the Agreement.  The detailed filing requirements of Bankruptcy Rule 2016 and the informational requirements of Local Rule 2016-2 would require the expenditure of unnecessary time and fees in compiling time records and preparing fee applications and could hinder Broker from performing the Services in as efficient a manner as possible (which is crucial, given the proposed marketing and sale schedule).  Moreover, because Broker's compensation is

---

[5]  *See* Dkt. No. 40 (the "Interim Compensation Order").

not a function of the time spent working on this engagement, and instead essentially constitutes a success fee based upon a future and currently unknown sale transaction that closes, keeping time records is completely unnecessary and would be unduly burdensome for Broker.

38.     Moreover, the compensation procedures detailed in the Interim Compensation Order will be unnecessarily cumbersome and essentially inapplicable as to Broker, given the terms and provisions of compensation.   Therefore, the Debtor requests that Broker be relieved of any requirement to file monthly and interim fee applications, and, instead, file only a final fee application, without providing time records, following a sale closing.

39.     The Debtor believes an application for compensation submitted in the manner set forth herein is consistent with existing practice before this Court and will provide the Court and other parties in interest with sufficient information to monitor and evaluate the services rendered by and compensation paid to Broker.   Accordingly, the Debtor requests modification of Local Rule 2016-2(d) requirements and permit Broker to receive compensation in the manner set forth herein.

40.     Finally, the Debtor believes that employment of Broker effective as of February 21, 2024, is warranted under the circumstances presented.   Broker in good faith already has begun working to market and solicit potential acquirors of the Property.   *See, e.g., In re Arkansas Co.,* 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power.") (collecting cases); Del. Bankr. L.R. 2014(b) ("If the retention motion is granted, the retention shall be effective as of the date the motion was filed, <u>unless the Court orders otherwise</u>." (emphasis added)). The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring retroactive retention. *See In re Arkansas Co.,* 798 F.2d at 650.   This certainly holds true here.

41.     In this instance, it has been and continues to be important to market the Property fully and promptly in order to monetize it, stop the drain of resources and monthly expenses, comply with DIP Financing milestones, and maximize the benefit to the Debtor's bankruptcy estate.  And, the Broker in good faith commenced work immediately upon reaching agreement with the Debtor, notwithstanding the need for and pendency of this Application before the Court.

42.     The terms and conditions of the Agreement were negotiated at arms length and in good faith by the Debtor and Broker.  The Debtor respectfully submits the indemnification, reimbursement, and other provisions contained in the Agreement, viewed in conjunction with the other terms of Broker's proposed employment, are fair and reasonable and in the best interests of the Debtor, the bankruptcy estate, and creditors.  Further, Broker is well qualified to perform all services contemplated and to represent the Debtor's interests in a cost-effective, efficient and timely manner.

43.     Accordingly, the Debtor respectfully requests Court approval of the Agreement.

## **NOTICE**

44.     Notice of this Application will be provided to the following parties or their respective known counsel: (a) the office of the U.S. Trustee for the District of Delaware; (b) counsel for Eastgate Theatre, Inc. and New RCI Holdings, Inc.; (c) counsel for Keystone; (d) Multnomah County (Portland, Oregon); (e) counsel for the Receiver; (f) the Internal Revenue Service; (g) the offices of the attorneys general for Oregon and Delaware; (h) the U.S. Department of Justice; (i)  the Debtor's largest unsecured creditors, as identified in its chapter 11 petition; and (j) any other parties requesting notice pursuant to Bankruptcy Rule 2002.  Given the nature of the relief requested, the Debtor submits no other or further notice need be given.

## NO PRIOR REQUEST

45.     No prior request for the relief sought in this Application has been made to this or

any other court.

WHEREFORE, the Debtor respectfully requests entry of an order substantially in the

form attached hereto as **Exhibit A** and such other and further relief as is deemed just and proper.

Dated: February 27, 2024
Wilmington, Delaware

*/s/ Todd Minnis*
Todd Minnis
President of CAPREF Lloyd Center East, LLC