**Exhibit A**

**(Bidding Procedures Order)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CAPREF LLOYD CENTER EAST, LLC[1] | Case No. 23-11942 (JTD) |
| Debtor. | **Related Docket No. _____** |

**ORDER (I) AUTHORIZING AND APPROVING BIDDING PROCEDURES FOR THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (II) SCHEDULING
AN AUCTION AND SALE HEARING IN CONNECTION THEREWITH AND
APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (III)
GRANTING RELATED RELIEF**

Upon consideration of the above-captioned debtor and debtor in possession's *Motion for
Entry of (I) an Order (A) Approving Bidding Procedures for the Sale of Substantially All of the
Debtor's Assets; (B) Scheduling an Auction and Sale Hearing and Approving the Form and
Manner of Notice Thereof; and (C) Granting Related Relief; and (II) an Order (A) Approving the
Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances; and
(B) Granting Related Relief* (the "Motion")[2] and any opposition filed in response thereto; and this
Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended
Standing Order of Reference from the United States District Court for the District of Delaware*,
dated February 29, 2012; and the Court being able to issue an order on the bidding procedures-
related portion of the Motion consistent with Article III of the United States Constitution; and
venue of this case and the Motion being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and
appropriate notice of and the opportunity for a hearing on the relief contained herein having been

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number, is CAPREF
Lloyd Center East, LLC (1920) and the location of its service address is 4514 Travis Street, Suite 208,
Dallas, TX 75205.

[2] Capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to those
terms in the Motion or the Bidding Procedures, as applicable.

provided pursuant to the Bankruptcy Code and applicable rules; and this Court having held an initial hearing on the Motion (the "Bidding Procedures Hearing"); and this Court having determined the legal and factual bases set forth in the Motion and at the Bidding Procedures Hearing establish just cause and that sound business reasons exist in support of the relief granted herein; and it appearing the relief requested in the Motion as it pertains to Bidding Procedures is in the best interests of the Debtor, the bankruptcy estate, creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor;

**THE COURT FINDS THAT**:[3]

A.    Bidding Procedures.    The Debtor in the exercise of its sound business judgment has articulated good and sufficient reasons for authorizing and approving the Bidding Procedures. The Bidding Procedures were negotiated in good faith and at arms length and are reasonably designed under the circumstances presented to promote a competitive and robust bidding process for the Assets.

B.    The Bidding Procedures comply with Local Rule 6004-1(c).

C.    Auction and Sale Notice.    The Auction and Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (i) the Bidding Procedures and certain dates and deadlines related thereto; (ii) the date, time, and place of any Auction (if held); (iii) objection deadlines for the Sale and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Assets for sale; and (v) that the Sale of the Assets is proposed to be free and clear of all Adverse Interests, with all such Adverse Interests to attach to the net sale proceeds with the same priority and the same validity, force, and extent, as

---

[3]   The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. If any of the following findings of fact constitute conclusions of law, they are adopted as such and if any of the following conclusions of law constitute findings of fact, they are adopted as such.

existed immediately prior to a Sale, as subject to any assumed liabilities or permitted encumbrances expressly set forth in an asset purchase agreement.  No other or further notice of the Sale shall be required.

      D.  <u>Auction</u>.  The Auction, if held, is necessary to determine which person or entity is willing to enter into a definitive agreement on the most favorable terms and conditions for the Debtor and bankruptcy estate.  If there is more than one Qualified Bid received, an Auction will be held to determine the highest and/or otherwise best bid available for the Assets.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED**:

1.     The Motion is approved as set forth herein with respect to the Bidding Procedures portion of the relief requested.  Any responses or objections to the Bidding Procedures portion of the relief requested are hereby overruled on the merits.

2.     The Bidding Procedures attached hereto as Exhibit 1 are approved and shall govern the submission and evaluation of all bids received and the selection of any Winning Bidder for the Assets.

3.     Any person or entity wishing to submit a bid shall comply with the Bidding Procedures and this Order.  The Debtor is authorized to take all reasonable actions necessary to implement the Bidding Procedures and the terms and provisions of this Order.

4.     The form and manner of service of the Auction and Sale Notice attached hereto as Exhibit 2 is approved.  As soon as reasonably practicable following entry of this Order, the Debtor will cause the Auction and Sale Notice to be served upon the following parties or their respective known counsel:  (i) the Office of the U.S. Trustee for the District of Delaware; (ii) Eastgate Theatre, Inc. and New RCI Holdings, Inc.; (iii) Keystone; (iv) the Receiver; (v) Multnomah County (Portland, Oregon); (vi) the Internal Revenue Service; (vii) the offices of the attorneys general for

Oregon, Texas, and Delaware; (viii) the U.S. Department of Justice; (ix) the Debtor's largest

unsecured creditors, as identified in its chapter 11 petition; and (x) all other parties that have filed

written requests for notice pursuant to Bankruptcy Rule 2002. No other or further notice is

necessary or required.

## SALE TIMELINE

5.    Qualified Bid Deadline. April 17, 2024, at 5:00 p.m. (Eastern Time), shall be the

deadline by which all Qualified Bids for the Assets must actually be received by the Debtor

and its advisors.

6.    Auction.  The Auction, if any, shall be held on April 24, 2024, beginning at

10:00 a.m. (Eastern Time). The Debtor in its discretion, after consultation with its advisors and

any Consultation Parties, may determine any Auction will be conducted via a virtual meeting

(either via Zoom or other videoconference platform), on advance notice to Qualified Bidders.

Only Qualified Bidders shall be entitled to participate as bidders at an Auction. Each Qualified

Bidder participating in an Auction shall confirm it has not and will not engage in any collusion with

respect to bidding, the Auction, the Sale Hearing, entry of a Sale Order, or the proposed Sale. Any

Auction held shall be transcribed and/or videotaped.

7.    Sale Objection Deadline.   Objections to the proposed sale of the Assets and/or to

entry of a Sale Order must (i) be in writing and specify the nature of such objection, (ii) comply

with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all orders of this Court,

(iii) be filed with this Court by (a) April 4, 2024, at 4:00 p.m. Eastern Time (the "Sale Objection

Deadline"), or (b) if an Auction is held, and solely with respect to objections related to the conduct

of the Auction or the identity of the selected Winning Bidder, by no later than April 30, 2024, at

4:00 p.m. Eastern Time (the "Post-Auction Objection Deadline"), and (iv) be served upon the

following parties: (a) counsel to the Debtor: (i) A s h b y & Geddes, P.A., 500 Delaware Avenue, 8th Floor, Wilmington, Delaware 19801 (Attn: Gregory A. Taylor and Michael D. DeBaecke (gtaylor@ashbygeddes.com and mdebaecke@ashbygeddes.com)) and (ii) Lane Powell PC, 601 SW Second Avenue, Suite 2100, Portland, OR 97204 (Attn: Bruce H. Cahn and Andrew J. Geppert (CahnB@lanepowell.com and GeppertA@lanepowell.com); (b) counsel to Keystone: Snell & Wilmer, 601 SW Second Avenue, Suite 2000, Portland, OR 97204  (Attn: Raminta Rudys (rrudys@swlaw.com)); and (c) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), 844 N. King Street, Wilmington, Delaware 19801 (Attn: Richard Schepacarter, Esquire (richard.schepacarter@usdoj.gov)).

8.      Any person or entity who fails to timely file and serve an objection to the Sale on or before the Sale Objection Deadline or the Post-Auction Objection Deadline, as applicable, shall be forever barred from asserting any objection to the Sale, including with respect to a transfer of the Assets free and clear of all Adverse Interests, and shall be deemed to "consent" to a Sale for purposes of section 363(f) of the Bankruptcy Code.

9.      Sale Hearing.  The Sale Hearing shall be held on May [3], 2024, at [══]:00 a.m. Eastern Time; provided, however, the Sale Hearing may be adjourned or canceled by the Debtor, from time to time, without further notice to creditors or parties in interest other than via an announcement made in open Court or the filing of a hearing agenda or other written notice to reflect such adjournment or cancellation.

10.     Other than the Sale Hearing Date, the dates and deadlines set forth in this Order are subject to modification by the Debtor in accordance with the approved Bidding Procedures.

11.     The form of the Winning Bidder Notice attached hereto as Exhibit 3 is approved.

12.     Absent further Court order, no person or entity submitting a bid for the Assets shall

be entitled to claim or receive any expense reimbursement, breakup fee, or other similar fee or payment in connection with any such bid.  By submitting a bid, such person or entity is deemed to have waived any right to request from this Court any expense reimbursement, breakup fee, or similar fee, whether pursuant to section 503(b) of the Bankruptcy Code or otherwise.

13.     All persons or entities participating in an Auction or the bidding for any Assets during the Sale process shall be deemed to have knowingly and voluntarily consented to the core jurisdiction of the Court to enter any order related to bidding, the Bidding Procedures, the Auction, the Sale Hearing, the Sale, or any other relief requested in the Motion or granted in this Order.  Such persons or entities also shall be deemed to have (a) waived any right to a jury trial in connection with any disputes relating to bidding, the Bidding Procedures or this Order, the Auction, the Sale Hearing, any Sale Order, or any Sale, and (b) consented to entry of a final order or judgment in connection with any disputes relating to any of the foregoing if it is determined the Court would lack Article III jurisdiction to enter such a final order or judgment absent consent of the relevant parties.

14.     Any deposit provided by a Qualified Bidder shall be held in trust by the Debtor or its professionals in a segregated, non-interest bearing account in accordance with the Bidding Procedures and shall not become property of the bankruptcy estate unless and until released to the Debtor pursuant to the terms of the Bidding Procedures or separate Court order (which order may be a Sale Order).

15.     Nothing in this Order shall modify, waive, or impair any of the terms or provisions of the Final Financing Order or the DIP Term Sheet.

16.     Any bidder, including Keystone, holding a perfected security interest in any of the Assets may seek to credit bid all (or a portion) of such bidder's claims for its respective collateral

in accordance with section 363(k) of the Bankruptcy Code; *provided*, that such Credit Bid complies with the terms of the Bidding Procedures.

17.     The Debtor, as it may reasonably determine in the sound exercise of its business judgment, is authorized to modify the Bidding Procedures in good faith so as to (a) further the goal of attaining the highest or otherwise best offer(s) for the Assets, for the benefit of the bankruptcy estate; or (b) impose, at or prior to the occurrence of an Auction or the selection of the Winning Bidder (or Backup Bidder, as applicable), additional customary terms and conditions in connection with a sale of the Assets; provided that any changes to the dates and deadlines set forth herein shall not conflict with the Final Financing Order or DIP Term Sheet, including milestones contained therein, in each case as may be modified by consent of Keystone as DIP Lender.  The Debtor shall provide reasonable notice under the circumstances presented of any such modification to any Qualified Bidder.

18.     Notwithstanding entry of this Order and any actions taken pursuant to its terms and provisions, nothing in this Order or in the Motion shall be deemed: (a) an admission or concession as to the validity, extent, perfection, priority, allowability, enforceability, or character of any claim, any security interest which purportedly secures such claim, or any other asserted right or obligation, or a waiver or other limitation on the Debtor's ability to contest the same on any ground permitted under any applicable law; (b) a waiver of the Debtor's rights to dispute under any applicable law the amount of, basis for, or validity of any claim asserted against the Debtor; (c) a promise of the Debtor to pay any claim; or (d) a waiver of any rights, claims, or causes of action the Debtor or its bankruptcy estate may have under applicable law, as against any person or entity.

19.     The terms and provisions set forth herein are immediately effective and enforceable upon entry.  The failure to include or reference specifically in this Order a particular provision of the

Bidding Procedures shall not diminish or impair the effectiveness or enforceability of such provision.

20.     This Order shall govern in the event of any inconsistencies between the terms and provisions of this Order on the one hand, and the Motion or the Bidding Procedures on the other hand.

21.     The Debtor is authorized to take all actions and pay all amounts necessary to effectuate the relief granted in this Order.

22.     This Order shall be binding on the Debtor and its successors and assigns, including any chapter 7 trustee or other fiduciary appointed for the bankruptcy estate.

23.     This Court retains exclusive jurisdiction with respect to all matters and disputes arising from or related to the implementation, interpretation, or enforcement of the terms and provisions of this Order.

# Exhibit 1

**(Bidding Procedures)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CAPREF LLOYD CENTER EAST, LLC[1] | Case No. 23-11942 (JTD) |
| Debtor. | |

## BIDDING PROCEDURES

On December 4, 2023 (the "Petition Date"), the above-captioned debtor and debtor in possession (the "Debtor"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

Thereafter, on March [==], 2024, the Court entered its *Order (I)(A) Approving Bidding Procedures For the Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; and (II) Granting Related Relief* (the "Bidding Procedures Order") [Dkt. No. ==.]  By the Bidding Procedures Order, the Court approved the bidding procedures set forth herein (the "Bidding Procedures").[2]

These Bidding Procedures govern the sale, marketing, and auction process the Debtor is authorized to conduct in furtherance of its efforts to sell all or substantially all of its assets (the "Assets").  The Assets consist primarily of the land, buildings, and related improvements located at 1260 NE Lloyd Center, Portland, OR 97232 (hereafter, the "Property").  The Property is part of a larger shopping center and mall (together, the "Lloyd Center") situated in Portland, Oregon (Multnomah County).[3]

Pursuant to section 363 of the Bankruptcy Code, and as further described in the Motion, the Debtor intends to seek Court approval of a sale transaction for the Property and any related Assets (the "Sale" or "Sale Transaction"), with such Sale to be free and clear of all liens, claims, interests, leaseholds, contractual rights, and other encumbrances of any kind whatsoever (hereafter,

---

[1]  The Debtor in this case, along with the last four digits of its federal tax identification number, is CAPREF Lloyd Center East, LLC (1920) and the location of its service address is 4514 Travis Street, Suite 208, Dallas, TX 75205.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order or in the underlying motion filed at Dkt. No. [●] (the "Motion").

[3]  The Property formerly was owned and operated by Sears as a retail location.  Other parcels comprising the Lloyd Center mall property include those sometimes referred to as the Enclosed Mall Parcels, the West Anchor Parcel, the North Parcels, and the South Superblock Parcel(s).  Upon information and belief, these other parcels currently are owned by KKR Real Estate Finance Trust and/or its affiliates or partners.  The Property sometimes is referred to as the East Anchor Parcel in relation to the Lloyd Center.

together and in the aggregate, "Liens" or "Adverse Interests"), with any such Liens to attach to net Sale proceeds with the same priority and the same validity, force, and extent, as existed immediately prior to a Sale, as subject to any assumed liabilities or permitted encumbrances expressly set forth in the subject asset purchase agreement and as subject to any rights, claims, remedies, and defenses available to the Debtor or its bankruptcy estate.

Subject to the following terms and provisions of these Bidding Procedures, a Potential Bidder (as defined below) may bid on some or all of the Assets. The ability to undertake and consummate any sale of the Assets shall be subject to competitive bidding as set forth herein and approved by the Court. The Debtor will consider bids received from single bidders or any joint bid received from multiple bidders.

The Debtor, in the exercise of its sound business judgment and in consultation with any Consultation Party (as defined below), may elect to sell the Assets at either a private or public sale, subject to Court approval. The Debtor may determine in its discretion, following consultation with any Consultation Party, whether to proceed with any Sale pursuant to these Bidding Procedures.

1.    **KEY DATES AND DEADLINES**

| Date and Time (all times in Eastern Time) | Event or Deadline |
|---|---|
| April 17, 2024 @ 5:00 p.m. | Qualified Bid Deadline |
| April 24, 2024 @ 10:00 a.m. | Auction (if required) |
| April 25, 2024 @ 4:00 p.m. | Notice of Winning Bidder (if Auction held) |
| April 4, 2024 @ 4:00 p.m. | Initial Sale Objection Deadline |
| April 30, 2024 @ 4:00 p.m. | Post-Auction Sale Objection Deadline |
| May 3, 2024 @ [TBD] | Sale Hearing for approval of Winning Bid (or Backup Bid, as applicable) |

2.    **SUBMISSIONS TO THE DEBTOR; CONSULTATION PARTIES**

All submissions to the Debtor required or permitted to be made under these Bidding Procedures must be directed to each of the following persons or entities unless otherwise provided:

2.1.    Debtor: 4514 Travis Street, Suite 208, Dallas, TX 75205, Attn.: Todd Minnis and Jack Shaw (todd.minnis@arrow-cre.com; jack.shaw@arrow-cre.com).

2.2.    Debtor's Counsel: (i) A s h b y & Geddes, P.A., 500 Delaware Avenue, 8th Floor, Wilmington, Delaware 19801, Attn: Gregory A. Taylor and Michael D. DeBaecke (gtaylor@ashbygeddes.com and mdebaecke@ashbygeddes.com) and (ii) Lane Powell PC, 601 SW Second Avenue, Suite 2100, Portland, OR 97204 (Attn: Bruce H. Cahn

and Andrew J. Geppert (CahnB@lanepowell.com and GeppertA@lanepowell.com)).

2.3.    <u>Debtors' Proposed Real Estate Broker</u>: Hilco Real Estate LLC: Jeff Azuse & Jamie Cote, (jazuse@hilcoglobal.com and jcote@hilcoglobal.com).

The term **"**<u>Consultation Parties</u>**"** as used herein shall mean and include any party the Court directs to be a Consultation Party.

For the avoidance of doubt, any consultation rights provided to any Consultation Parties shall not limit the Debtor's discretion in any way and shall not include the right to veto any decision made by the Debtor in the exercise of its business judgment. Materials and information provided to the Debtor may be shared with any Consultation Party and its advisors, subject to confidentiality protections.

## 3.    POTENTIAL BIDDERS

To participate in the bidding process or otherwise be considered a b i d d e r for any purpose under these Bidding Procedures, a person or entity interested in making a bid and consummating a Sale Transaction (a "<u>Potential Bidder</u>") must deliver or have previously delivered to the Debtor and its advisors an executed confidentiality agreement (a "<u>Confidentiality Agreement</u>") in form and substance reasonably acceptable to the Debtor and its advisors that includes, without limitation the following information (unless the Debtor in its sole discretion and business judgment chooses to waive for any Potential Bidder any of the requirements set forth herein):

3.1.    a statement, to the Debtor's satisfaction, that the Potential Bidder has a *bona fide* interest in purchasing any or all of the Assets, is likely to be able to submit a Qualified Bid by the Bid Deadline, and has the financial ability to consummate a proposed Sale;

3.2.    information identifying the interested party, its principals, affiliates, and insiders, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding a potential Sale Transaction; and

3.3.    a description of any connections the Potential Bidder, its affiliates, and/or related persons or insiders have to the primary parties and creditors in the bankruptcy case.

Copies of materials delivered by any Potential Bidder to the Debtor may, upon reasonable request, be provided by the Debtor to any Consultation Party and/or its advisors, subject to confidentiality protections.

## 4.      DUE DILIGENCE

The Debtor, with its advisors, will establish and maintain an electronic data room (the "Data Room") that contains standard and customary diligence materials regarding the Assets, including information to allow Potential Bidders to submit a Qualified Bid (as defined below) and to seek and obtain any required financing commitments in connection therewith. Any Potential Bidder that submits a Qualified Bid will be a "Qualified Bidder" for purposes of these Bidding Procedures.

Bidders that comply with the above requirements shall be eligible to receive due diligence information and access to the Data Room and to additional non-public information regarding the Debtor and its Assets. Subject to the other terms herein, the Debtor may provide to each Potential Bidder reasonable and readily available due diligence information, as requested by such Potential Bidder in writing, and the Debtor shall use commercially reasonable efforts to post to the Data Room substantially all written due diligence provided to any Potential Bidder.

For all Potential Bidders, the due diligence period will end on the Bid Deadline. The Debtor may (but shall have no obligation to) furnish any additional due diligence information following the Bid Deadline.

The Debtor shall furnish confidential information relating to the Assets or the Sale only to Potential Bidders or Qualified Bidders and their duly authorized representatives, subject to the applicable Confidentiality Agreement. The Debtor and its advisors shall coordinate all reasonable requests for additional information and due diligence access; *provided* that the Debtor may decline to provide such information to Potential Bidders who, at such time and in the Debtor's reasonable business judgment and after consultation with its advisors and any Consultation Parties, have not established or who have raised doubts that such Potential Bidder intends in good faith to, or has the capacity to, consummate an acceptable Sale Transaction.

Neither the Debtor nor any of its advisors or representatives shall be obligated to furnish any information of any kind or nature whatsoever relating to the Assets (a) to any person or entity who is not a Potential Bidder or (b) if and to the extent doing so would (1) violate any law to which the Debtor is subject, including any privacy law, (2) violate any legally binding obligation of any Debtor with respect to confidentiality, non-disclosure or privacy, or (3) jeopardize protections afforded to any Debtor under the attorney-client privilege or the attorney work product doctrine (*provided*, that, in case of each of clauses (1) through (3), the Debtor shall use commercially reasonable efforts to provide such access as can be provided (or otherwise convey such information regarding the applicable matter as can be conveyed) without violating such privilege, doctrine, contract, obligation or law.

The Debtor also reserves the right to withhold any diligence materials the Debtor reasonably and in good faith determines are sensitive or otherwise not appropriate for disclosure, including to a Potential Bidder.

Each Potential Bidder shall comply with the Debtor's reasonable requests for information and due diligence access regarding such Potential Bidder or its contemplated Sale Transaction.

## 5. BID REQUIREMENTS.

Any proposal, solicitation, or offer to consummate a Sale Transaction for any of the Assets (each, a "Bid") must be submitted in writing and must satisfy the following requirements (collectively, the "Bid Requirements") in order to become a Qualified Bid:

5.1.    **Proposed Sale Transaction.** Each Bid must clearly propose a Sale Transaction for the Assets. Each Bid must specify (1) which Assets are to be included in the proposed Sale Transaction and (2) to the extent such Bid is for less than all of the Assets, which Assets are to be excluded from the proposed Sale Transaction (the "Excluded Assets"), as well as the disposition of any liabilities or obligations of the Debtor.

5.2.    **Purchase Price.** Each Bid must clearly specify a purchase price, including and identifying separately any Cash and non-Cash components in US dollars (the "Purchase Price").

5.3.    **Deposit.** Each Bid other than a credit bid must be accompanied by a Cash deposit equal to ten percent (10%) of the applicable aggregate Purchase Price (the "Deposit"), to be held in trust by the Debtor or one of its professionals in a segregated, non-interest bearing account; *provided, however*, the Debtor, in its reasonable business judgment and in consultation with any Consultation Parties, on a case-by-case basis may elect to waive or modify the requirement of a Deposit. For the avoidance of doubt, to the extent a Purchase Price is increased, at any time or from time to time, whether prior to or during an Auction, the amount of the required Deposit shall automatically increase accordingly (to be equal to 10% of any increased Purchased Price) and the corresponding bidder will be required to deposit with the Debtor or one of its professionals the amount of such increase, as promptly as practicable, and in any event within one business day, following such increase. Without limiting the foregoing, if a Purchase Price is increased in order to make a bid a Qualified Bid, the Debtor may condition participation of the applicable bidder at the Auction on such bidder having paid the then full amount of required Deposit.

5.4.    **Transaction Documents.** Each Bid must be accompanied by an executed purchase agreement with respect to the proposed Sale Transaction, including forms of exhibits, schedules, and ancillary agreements related thereto and any other related material documents integral to such Bid. In addition, the executed purchase agreement

accompanying such bidder's Bid must be further accompanied by a redline copy marked to reflect any amendments or modifications to any form purchase agreement provided by the Debtor.

5.5.    **Backup Bidder Commitment.**    Each Bid must include a written commitment by the applicable bidder to serve as a Backup Bidder in the event such Bid is not selected as the Winning Bid.

5.6.    **Proof of Financial Ability to Perform.**    Each Bid must include written evidence that the Debtor reasonably concludes, in consultation with any Consultation Parties, sufficiently demonstrates the bidder possesses the necessary financial ability to close the proposed Sale Transaction.  Such information must include the following:

5.6.1.    contact names and telephone numbers for verification of financing sources;

5.6.2.    evidence of the bidder's internal resources and, if applicable, proof of fully executed and effective financing commitments with limited conditionality customary for transactions of this type from one or more reputable sources in an aggregate amount equal to the Cash portion of such Bid, in each case, as are needed to close the Sale Transaction;

5.6.3.    a description of the bidder's pro forma capital structure; and

5.6.4.    any other financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtor demonstrating that such bidder has the ability to close the proposed Sale Transaction.

5.7.    **No Contingencies; No Financing or Diligence Outs.**    Each Bid shall not be conditioned on (i) the obtaining or sufficiency of financing, (ii) any necessary internal approvals, or (iii) the outcome or review of due diligence materials or information.

5.8.    **Identity.**    Each Bid must fully disclose the identity of each entity bidding or otherwise participating in connection with such Bid—including each equity holder or other financial backer if such bidder is an entity formed for the purpose of consummating the proposed Sale Transaction—and the full terms of any such participation.  Each Bid should also include contact information for the specific person(s) and counsel whom the Debtor (and its advisors) should contact regarding such Bid.

5.9.    **Authorization.**    Each Bid must contain evidence acceptable to the

Debtor that the bidder has obtained s u f f i c i e n t authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid and the consummation of the Sale Transaction contemplated by such Bid.

5.10.    **Contracts and Leases**.  N/A

5.11.    **As-Is, Where-Is**.  Each Bid must include a written acknowledgement and representation that:  (1) the bidder has had an opportunity to conduct any and all due diligence regarding the Sale Transaction prior to making its offer; (2) the bidder has relied solely upon its own independent review, investigation, or inspection of any documents in making its Bid; (3) the bidder did not and will not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, by the Debtor or its advisors or  other  representatives regarding the p r o p o s e d Sale Transaction, the completeness of any information provided in connection therewith, or otherwise; and (4) the bidder has not and will not engage in any collusive conduct and at all times has and will act in good faith in submitting any Bid.

5.12.    **No Breakup Fee**.  Each Bid must expressly state and acknowledge that such bidder shall not be entitled to, and shall not seek, any transaction breakup fee, termination fee, expense reimbursement, working fee, or similar type of payment; *provided further*, each bidder submitting a Bid must expressly waive any right to (i) assert any substantial contribution or administrative expense claim under section 503(b) of the Bankruptcy Code or (ii) receive any claim or payment for any broker fees or costs in connection with bidding for any of the Assets and/or otherwise participating in the Auction or the sale process.

5.13.    **Transition Services**.  N/A

5.14.    **Commitment to Close**.  Each Bid must include a commitment to close as soon as practicable, and state the expected date of closing the proposed Sale Transaction.

5.15.    **Irrevocable Bid**.  Each Bid must contain a statement by the applicable bidder acknowledging and agreeing that such Bid and each of its provisions is binding and irrevocable in all respects.

5.16.    **Compliance with Bidding Procedures**.  Each Bid must contain a covenant that the applicable bidder will comply with the terms of these Bidding Procedures and the Bidding Procedures Order.

By submitting a Bid, each bidder is agreeing, and shall be deemed to have agreed, to

abide by and honor the terms of these Bidding Procedures and to refrain from (A) submitting a Bid after conclusion of an Auction or (B) seeking to reopen the Auction once closed. **The submission of a Bid shall constitute a binding and irrevocable offer (a) from the Winning Bidder, until consummation of the Sale Transaction, (b) from the Backup Bidder (if any), as provided in these Bidding Procedures, including Section 10 hereof, and/or in any Sale Order, and (c) from any bidder other than a Winning Bidder or Backup Bidder, until the earlier of (i) when the bidder is informed by the Debtor its bid is not a Qualified Bid; or (ii) conclusion of the Auction, and each Bid is required to include a written acknowledgment and representation of the foregoing.**

6.      **BID DEADLINE.**

Any Bid must be transmitted via email (in .pdf or similar format) to each of the parties specified in Section 2 hereof so as to be actually received by such parties on or before **April 17, 2024, at 5:00 p.m. Eastern Time** (the "Bid Deadline"), unless extended by the Debtor.

7.      **QUALIFIED BIDS & QUALIFIED BIDDERS.**

A Bid is a "Qualified Bid" if the Debtor, in its reasonable business judgment and in consultation with any Consultation Parties, determines that such Bid (A) satisfies the Bid Requirements set forth above; (B) is otherwise for an acceptable purchase price amount; and (C) is reasonably likely to be consummated if selected as the Winning Bid (or Backup Bid, as applicable), by no later than the outside date specified in the Bid, all as subject to any deadlines or milestones set forth in the Final Financing Order or DIP Term Sheet, as may be extended with consent from Keystone; for the avoidance of doubt, the Debtor upon consultation with any Consultation Parties may in its sole discretion reject any bid deemed to be in an insufficient amount or otherwise on unacceptable terms.

A bidder submitting a Qualified Bid is a "Qualified Bidder" with respect to the Assets to which such Qualified Bid relates.

As soon as reasonably practicable after the applicable Bid Deadline, the Debtor will notify each bidder whether such party is a Qualified Bidder and shall provide counsel for any Consultation Parties with a copy of each Bid received, subject to confidentiality protections. If a Bid is determined not to be a Qualified Bid, the Debtor will refund such bidder's Deposit (if any) within three business days after the Bid Deadline.

Between the date the Debtor notifies a bidder it is a Qualified Bidder and the date set for an Auction, the Debtor may discuss, negotiate, or seek modification or clarification of any Qualified Bid. Without the prior written consent of the Debtor following consultation with any Consultation Parties, a Qualified Bidder during the period its Qualified Bid remains binding (as specified in these Bidding Procedures and Bidding Procedures Order) may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price, or otherwise improve the terms of, the Qualified Bid; *provided* that any Qualified Bid may be improved at any Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures and the bidding

Procedures Order.

Notwithstanding anything herein to the contrary, the Debtor, in consultation with any Consultation Parties, reserves the right to work with (A) bidders to aggregate two or more Bids into a single consolidated Qualified Bid prior to the applicable Bid Deadline and (B) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of an Auction. The Debtor, in consultation with any Consultation Parties, reserves the right to cooperate with any bidder to cure any deficiencies in a Bid(s) not initially deemed a Qualified Bid(s).

### 8.  RIGHT TO CREDIT BID.

Pursuant and subject to section 363(k) of the Bankruptcy Code, any Qualified Bidder that has a valid and perfected lien on any Assets (a "Secured Party") shall be entitled to credit bid all or a portion of the face value of such Secured Party's claim toward the Purchase Price specified in a n y Bid; *provided* that a Secured Party shall be entitled to credit bid its claim(s) only with respect to Assets subject to a valid and perfected lien in favor of such Secured Party as to such claim(s). Notwithstanding anything to the contrary herein, Keystone may submit a credit bid of all or any portion of the aggregate amount of its respective allowed secured claims, including with respect to any postpetition DIP financing claims.

### 9.  AUCTION.

If the Debtor receives two or more Qualified Bids with respect to the same Assets, the Debtor will, in consultation with any Consultation Parties, conduct an auction (the "Auction") to determine the Winning Bidder (or Backup Bidder, as applicable) for such Assets.

In such event, the Debtor will (A) notify all Qualified Bidders of the highest or otherwise best Qualified Bid with respect to the applicable Assets, as determined by the Debtor in its reasonable business judgment and in consultation with any Consultation Parties (each such Qualified Bid, a "Baseline Bid") and (B) subject to confidentiality, provide the terms of the Baseline Bid to all Qualified Bidders, in each case, as soon as reasonably practicable after the Bid Deadline and in any event no later than prior to the commencement of the Auction. The Debtor's determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Debtor, in its reasonable business judgment and in consultation with any Consultation Parties, deems relevant to the value and benefits presented to the bankruptcy estate.

If the Debtor, in consultation with any Consultation Parties, determines it has received no Qualified Bids or it has received only a single Qualified Bid, then an Auction will not be held, and the sole Qualified Bid could be deemed the Winning Bid for the Assets to which it relates. If the Debtor makes such a determination, the Debtor shall file a notice with the Court within one business day of making such determination.

Any Auction will be held on **April [24], 2024, beginning at [10:00 a.m.] Eastern Time**. The Auction likely will be conducted via Zoom or other videoconferencing platform, at the Debtor's election, and shall be conducted according to the procedures set forth immediately below

(the "Auction Procedures") and in the Bidding Procedures Order.

## AUCTION PROCEDURES

(i)    **The Debtor Shall Conduct the Auction; General Provisions.**  The Debtor, with the assistance of its advisors, shall direct and preside over any Auction and shall consult with any Consultation Parties throughout the Auction process.  At the commencement of the Auction, the Debtor (1) may announce procedural and related rules governing the Auction, including time periods available for participating bidders to submit any successive Bid(s) during Auction bidding rounds; and (2) shall describe the key terms of the Baseline Bid.  Only incremental Bids complying with the terms set forth in section 10(ii) below shall be considered qualified "Overbids" made at the Auction.  Overbids shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other bidders continuing to participate in the Auction.   The Debtor, in consultation with any Consultation Parties, shall determine in its reasonable business judgment whether an incremental Bid is a qualified Overbid.  The Debtor shall maintain a written record of all bids made and announced at the Auction, including the Baseline Bid, all qualified Overbids, and the Winning Bid (or Backup Bid, as applicable).

Only the Debtor, Qualified Bidders and their representatives, any Consultation Parties and their representatives, and any creditors, together with any professional advisors to each of the foregoing parties, may attend the Auction; provided that any creditors desiring to attend the Auction must provide counsel for the Debtor at least two (2) business days written notice of their intent to attend the Auction and the identities of their respective attending designees.

Qualified Bidders shall be required to appear at the Auction and may speak or bid themselves or through duly authorized agents or representatives.  Only previously identified Qualified Bidders shall be entitled to participate as bidders at the Auction.

The Debtor has the right to request any additional information that will allow the Debtor to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the contemplated proposed Sale Transaction and any further information the Debtor believes is reasonably necessary to clarify and evaluate any Overbid made during the Auction.

The Debtor may in its discretion announce at the Auction any modified or additional procedures for conducting the Auction.

(ii)   **Terms of Overbids.**  Each Auction Overbid must comply with the following terms:

(a)   <u>Minimum Overbid Increment</u>.  At the commencement of the initial solicitation of Overbids at the Auction, the Debtor, in consultation with any Consultation Parties, shall announce the minimum increment by which any Auction Overbid must exceed the applicable Baseline Bid.  The initial Minimum Overbid Amount at the Auction will be $50,000. At the commencement of each subsequent round of bidding, the Debtor shall announce the minimum increment by which any Overbid must exceed the Prevailing Highest Bid (as defined below).  The Debtor may, in its reasonable business judgment and in consultation with any Consultation Parties, announce increases or reductions to the applicable minimum Overbid increment at the commencement of each bidding round.

(b)   <u>Conclusion of Each Overbid Round</u>.  Upon the commencement of each round of Auction Overbids, the Debtor may announce a deadline by which any Overbids must be submitted in that round (an "<u>Overbid Round Deadline</u>"); *provided* that the Debtor, in its reasonable business judgment and after consultation with any Consultation Parties, may extend any Overbid Round Deadline.

(c)   <u>Overbid Alterations</u>.  An Auction Overbid may contain alterations, modifications, additions, or deletions (together, "<u>Modifications</u>") of any terms of the Qualified Bidder's previous highest Overbid, so long as any such Modifications are no less favorable in the aggregate to the bankruptcy estate than such Qualified Bidder's previous highest Overbid, as determined in the Debtor's reasonable business judgment and after consultation with any Consultation Parties. Any Auction Overbid shall otherwise comply  with the terms of these Bidding Procedures.

(d)   <u>Announcing Highest Bid</u>.  After the completion of each Auction bidding round, the Debtor shall announce, after consultation with any Consultation Parties, the Bid identified as the current highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>").  The Debtor shall describe to all applicable Qualified Bidders the material terms of any Prevailing Highest Bid, as well as the value attributable by the Debtor to such Prevailing Highest Bid.  The current Highest Prevailing Bid shall be the bid that forms the floor for and begins the next successive round of bidding.

(iii)    **Consideration of Overbids.**  The Debtor reserves the right, in its reasonable business judgment and in consultation with any Consultation Parties, to adjourn the Auction one or more times, to, among other things (1) facilitate discussions with any Qualified Bidders; (2) allow any Qualified Bidders the opportunity to consider how they wish to proceed and bid, or not; and (3) provide any Qualified Bidders the opportunity to provide such additional evidence as the Debtor, in its reasonable business judgment, determines is required in connection with any aspect of the Qualified Bidder's Bid and proposed Sale Transaction.

(iv)    **Closing the Auction.**  The Auction shall continue until there is only one  Qualified Bid for the Assets that the Debtor determines, in its reasonable business judgment and in consultation with its advisors and any Consultation Parties, is the highest or otherwise best bid for the applicable Assets.  Such Qualified Bid shall be designated the "Winning Bid" and the Qualified Bidder who submitted the Winning Bid, shall be the "Winning Bidder" with respect to the subject Assets, at which time the Auction with respect to such Assets shall be closed; *provided* that (1) such Auction shall not close unless and until all remaining Qualified Bidders have been given a reasonable opportunity to submit an Overbid with respect to the then Prevailing Highest Bid; and (2) the Debtor's designation of a Qualified Bid as a Winning Bid (or Backup Bid, as applicable) shall be subject to and conditioned on finalization of definitive documentation and Court approval.  As soon as reasonably practicable after the designation of a Winning Bid (or Backup Bid, as applicable), the Debtor, in consultation with any Consultation Parties, shall finalize definitive documentation to implement the terms of such Winning Bid (or Backup Bid, as applicable) and cause such definitive documentation to be filed with the Court.

(v)    **No Collusion; Good Faith Offer.**  Each Qualified Bidder participating at the Auction will be required to confirm on the record that (1) such Qualified Bidder has not and will not engage in any collusion with respect to the bidding process, submission of its Bid, participation in the Auction, the Sale Hearing, and any Sale Transaction; (2) each Bid it makes is a good faith and irrevocable offer and such Qualified Bidder intends to consummate the Sale Transaction contemplated by its Bid if selected as the Winning Bidder (or Backup Bidder, as applicable); and (3) its Bid will serve as the Backup Bid if selected as such by the Debtor at the conclusion of the Auction.

(vi)    **Rejection of Bids.**  The Debtor, in its reasonable business judgment and in consultation with any Consultation Parties, may reject at any

time before entry of a Court order approving a Winning Bid (or Backup Bid, as applicable), any Bid the Debtor determines in its sole discretion, after consultation with any Consultation Parties, is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code and/or these Bidding Procedures, or (3) contrary to the best interests of the Debtor, its estate, creditors, and other stakeholders.

### 10.   DESIGNATION OF A BACKUP BIDDER.

If for any reason the Winning Bidder fails to consummate the Winning Bid within the required period after entry of the Sale Order, the Qualified Bidder selected at the conclusion of the Auction and as set forth in the Sale Order as having made the next highest or otherwise best Bid (the "Backup Bidder"), will automatically be deemed to have submitted the highest or otherwise best Bid (the "Backup Bid"), and the Debtor will be authorized, but not required, to document and consummate the Backup Bid transaction as soon as is commercially reasonable, without further Court order, with appropriate notice to be filed with the Court.

Upon designation at the Auction, the Backup Bid must remain open and irrevocable until the earlier of (1) the closing of the transactions contemplated by the Winning Bid and (2) the date that is 30 days following conclusion of the Auction.

### 11.   FIDUCIARY OUT.

Notwithstanding anything to the contrary in these Bidding Procedures or in any filing made in the bankruptcy case or otherwise entered by the Court, nothing in these Bidding Procedures or in the Bidding Procedures Order shall require the Debtor or its governing body to take any action or to refrain from taking any action with respect to any Sale Transaction, unless it is determined in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or the Debtor's fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures or in any document filed with or entered by the Court, until entry of a Sale Order, the Debtor and its respective managers, officers, attorneys, brokers, and other advisors or representatives shall have the right to, in the Debtor's discretion:

(A) consider, respond to, and facilitate alternate proposals for a sale or other transaction involving any of the Assets (each, an "Alternate Proposal"); (B) provide access to non-public information concerning the Debtor or the Assets to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (C) maintain or continue discussions or negotiations with respect to Alternate Proposals; (D) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (E) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.

12.     **"AS IS, WHERE IS".**

Consummation of any Sale Transaction will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor or its estate, except as specifically accepted and agreed to by the Debtor in the executed definitive written documentation for the applicable Sale Transaction (the "Definitive Sale Documents"). Unless otherwise specifically accepted and agreed to in Definitive Sale Documents or in the Sale Order, all of the Debtor's right, title, and interest in and to the Assets subject to a Sale Transaction will be transferred to the Winning Bidder (or Backup Bidder, as applicable), free and clear of all Liens, as provided for in section 363(f) of the Bankruptcy Code.

By submitting a Bid, each bidder will be deemed to acknowledge and represent it (A) has had an opportunity to conduct adequate due diligence regarding the Assets and the proposed Sale Transaction prior to making its Bid, (B) has relied solely on its own independent review, investigation, inspection, and analysis of any document or information in making its Bid, and (C) did not rely on or receive from any person or entity (including the Debtor or any of its advisors or other representatives) any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the Bid or the completeness of any information provided in connection with the proposed Sale Transaction or the Auction (if any), except as may be set forth in Definitive Sale Documents.

13.     **COMMISSIONS.**

The Debtor shall be under no obligation to and shall not pay any commissions, fees, bonuses, or expenses to any bidder's agent, advisor, or broker. Any commissions, fees, bonuses, or expenses due any such agents, advisors, or brokers shall be the obligation and responsibility of the applicable bidder. In no case shall any such obligations be deducted from any proceeds to be paid or otherwise derived from any Sale of the Assets, unless expressly provided for in a Court order.

14.     **RESERVATION OF RIGHTS.**

The Debtor in its reasonable business judgment and in consultation with any Consultation Parties, is entitled to modify these Bidding Procedures in any manner deemed to best promote the goals of these Bidding Procedures, all in furtherance of and in the best interests of the bankruptcy estate. The Debtor also may impose, at or prior to the Auction (if any), additional customary terms and conditions for a Sale Transaction, including: (A) extending deadlines set forth in these Bidding Procedures; (B) adjourning the Auction; (C) adding procedural rules reasonably necessary or advisable under the circumstances for conducting the Auction; (D) canceling the Auction; and (E) rejecting any or all Bids or Qualified Bids; provided, however, the Debtor may not amend these Bidding Procedures or the bidding process to be inconsistent with or contrary to the express terms of the Bidding Procedures Order or the Final Financing Order or DIP Term Sheet, absent the consent of Keystone or absent further Court order. All such modifications and additional rules will be communicated to each of the Consultation Parties and Qualified Bidders; provided that, to the extent such modifications occur at the Auction, disclosure of such

modifications will be made only to those in attendance.

### 15.    CONSENT TO JURISDICTION.

All Qualified Bidders participating in bidding and at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes arising out of or relating to such bidding, the Auction, the Sale Hearing, the Sale Order, the Sale, or the interpretation and enforcement of these Bidding Procedures.

### 16.    SALE HEARING.

The Court shall hold a hearing to consider approval of the selected Winning Bid and any Backup Bid (the "Sale Hearing").  **The Sale Hearing shall be held on or about May [3], 2024, subject to availability of the Court.  The Sale Hearing may be adjourned to a later date by prior filed written notice or announcement made at the Sale Hearing.  No further notice of any such adjournment will be required.**

### 17.    RETURN OF DEPOSIT.

Any Deposits provided by Qualified Bidders shall be held in trust in one or more segregated, non-interest bearing accounts maintained by the Debtor or one of its advisors.  Any Deposits will be returned to Qualified Bidders not selected as a Winning Bidder (or Backup Bidder, as applicable) by the date that is f i v e  (5) business days following the Auction.  Any Deposit from a Backup Bidder will be returned by the date that is three (3) business days following closing of the Winning Bid, unless the Backup Bid has become the Winning Bid.

Subject to the below, any Deposit provided by a Winning Bidder (or Backup Bidder, as applicable) shall be applied by the Debtor at Closing toward the purchase price of the applicable Sale Transaction.

If a Winning Bidder (or Backup Bidder, as applicable) fails to consummate the Sale Transaction contemplated by its respective Bid because of a breach by such Winning Bidder (or Backup Bidder), the Debtor will have no obligation to return any Deposit provided by such breaching party.  Rather, such Deposit may be kept and applied by the Debtor as liquidated damages, in addition to all other rights, claims, remedies, or causes of action available to the Debtor and its bankruptcy estate as against such breaching party.

**Exhibit 2**

**(Auction and Sale Notice)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

CAPREF LLOYD CENTER EAST, LLC[1]

      Debtor.

Chapter 11

Case No. 23-11942 (JTD)

## NOTICE OF AUCTION AND SALE HEARING FOR THE SALE
## OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

### PLEASE TAKE NOTICE OF THE FOLLOWING:

On March [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered its *Order (I) Authorizing and Approving Bidding Procedures For the Sale of Substantially All of the Debtor's Assets, (II) Scheduling an Auction and Sale Hearing in Connection Therewith and Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief* [Docket No. [●]] (the "Order").[2] The Order authorizes the above-captioned debtor and debtor in possession (the "Debtor") to conduct a marketing and sale process for all or substantially all of its assets (the "Assets").

As described more fully in the Debtor's underlying Motion filed at Docket No. [ ** ], the primary Assets for sale are the land, buildings, and related improvements located at 1260 NE Lloyd Center, Portland, OR 97232 (hereafter, the "Property"). The Property is part of a larger shopping center and mall (together, the "Lloyd Center") located in Portland, Oregon. The Property sometimes is referred to as the East Anchor Parcel; it is one of several parcels comprising the Lloyd Center mall property but it is the only mall parcel owned by the Debtor.

By the Motion, the Debtor in part seeks entry of a Sale Order authorizing a sale and transfer of its Assets free and clear of all liens, claims, interests, and other encumbrances of any kind or nature whatsoever (hereafter, "Liens"), with all such Liens to attach to the net sale proceeds with the same priority and the same validity, force, and extent as existed immediately prior to a Sale, subject to any permitted encumbrances and/or assumed liabilities as set forth in the applicable purchase agreement. Any person or entity who wishes to object or otherwise respond to a proposed Sale may do so by filing with the Court and serving an objection or response by the Sale Objection Deadline or the Post-Auction Objection Deadline, as applicable. The location of the Court is 824 Market Street Mall, Third Floor, Wilmington, Delaware 19801 (302-252-2900).

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number, is CAPREF Lloyd Center East, LLC (1920) and the location of its service address is 4514 Travis Street, Suite 208, Dallas, TX 75205.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order or the Bidding Procedures, as applicable.

The Sale Objection Deadline is **April 4, 2024, at 4:00 p.m. Eastern Time** and the Post-Auction Objection Deadline is **April 30, 2024, at 4:00 p.m. Eastern Time.** Any responses or objections must be filed with the Court and served upon the following persons by the applicable deadline: (a) counsel to the Debtor: (i) A s h b y & Geddes, P.A., 500 Delaware Avenue, 8th Floor, Wilmington, Delaware 19801 (Attn: Gregory A. Taylor and Michael D. DeBaecke (gtaylor@ashbygeddes.com and mdebaecke@ashbygeddes.com)) and (ii) Lane Powell PC, 601 SW Second Avenue, Suite 2100, Portland, OR 97204 (Attn: Bruce H. Cahn and Andrew J. Geppert (CahnB@lanepowell.com and GeppertA@lanepowell.com)); (b) counsel to Keystone: Snell & Wilmer, 601 SW Second Avenue, Suite 2000, Portland, OR 97204 (Attn: Raminta Rudys (rrudys@swlaw.com)); and (c) the Office of the United States Trustee for the District of Delaware, 844 N. King Street, Wilmington, Delaware 19801 (Attn: Richard Schepacarter, Esquire (richard.schepacarter@usdoj.gov)).

**Any person or entity that fails to timely file and serve an objection or response to the proposed Sale on or before the applicable objection deadline shall be forever barred from asserting any objection to the Sale, including with respect to a free and clear transfer of the Assets, and such party shall be deemed to "consent" to a Sale for purposes of section 363(f)(2) of the Bankruptcy Code.**

Pursuant to the Order and Bankruptcy Code section 363(k), any Qualified Bidder that has a valid and perfected lien on any Assets shall be entitled to credit bid all or a portion of the face value of such party's s e c u r e d claim toward the Purchase Price specified in a n y Bid. Keystone may submit a credit bid of all or any portion of the aggregate amount of its respective allowed secured claims, including, with respect to its postpetition DIP Financing claims.

If more than one timely Qualified Bid (including any Credit Bid) is received for the Assets, the Debtor intends to conduct an auction (the "Auction") on **April [24], 2024, beginning at 10:00 a.m. (Eastern Time)**. The Auction (if any) will be governed by the approved Bidding Procedures attached as Exhibit 1 to the Order (the "Bidding Procedures"). Any person or entity that wishes to participate in an Auction must comply fully with the requirements set forth in the Bidding Procedures. The Bid Deadline is **April [17], 2023, at 5:00 p.m. (Eastern Time). Only those bidders who have submitted timely Qualified Bids shall be permitted to participate as bidders at an Auction.** Any creditors desiring to attend the Auction must provide counsel for the Debtor at least two (2) business days written notice of their intent to attend any Auction and the identities of their respective attending designees.

Following the conclusion of any Auction, the Debtor will select a Winning Bidder (and if applicable, a Backup Bidder) for the Assets. Notice of the Winning Bidder will be filed within one business day of conclusion of the Auction or as reasonably practicable thereafter.

The Court has scheduled **May [3], 2024, at --- .m. Eastern Time** as the date for a hearing (the "Sale Hearing") to consider approval of the Winning Bid (and Backup Bid, as applicable). The Sale Hearing may be adjourned to a later date by prior filed written notice or announcement made at the Sale Hearing.

Copies of the Order, the Bidding Procedures, or other filings related thereto are available from the Court docket maintained in the bankruptcy case or upon written request emailed to undersigned counsel for the Debtor. The Debtor reserves the right to modify the Bidding Procedures, in its reasonable business judgment in accordance with the Order and approved Bidding Procedures.

Dated: March __, 2024

**ASHBY & GEDDES, P.A.**

*/s/*_____
Gregory A. Taylor (No. 4008)
Michael D. DeBaecke (No. 3186)
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801
Phone: (302) 654-1888
Email: GTaylor@ashbygeddes.com
            MDeBaecke@ashbygeddes.com

*Counsel for the Debtor*

## **Exhibit 3**

**(Notice of Winning Bidder)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CAPREF LLOYD CENTER EAST, LLC[1] | Case No. 23-11942 (JTD) |
| Debtor. | |

**NOTICE OF WINNING BIDDER AND**
**ANY BACKUP BIDDER FOR THE DEBTOR'S ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On March [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered its *Order (I) Authorizing and Approving Bidding Procedures For the Sale of Substantially All of the Debtor's Assets, (II) Scheduling an Auction and Sale Hearing in Connection Therewith and Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief* [Docket No. [●]] (the "Order").[2] The Order authorizes the above-captioned debtor and debtor in possession (the "Debtor") to conduct a marketing and sale process for the sale of all or substantially all of its assets (the "Assets"). The Order approved the bidding procedures-related relief requested in the Debtor's underlying motion filed at Docket No. [---].

Pursuant to the Order, on **April [24], 2024, beginning at [10:00] a.m. (Eastern Time)**, the Debtor and its advisors conducted an Auction among and between Qualified Bidders for the Assets. At the conclusion of the Auction, the Debtor, in consultation with any Consultation Parties, selected the following Winning Bidder (and Backup Bidder, if any) for the Assets.

| Asset(s) | Winning Bidder | Backup Bidder | Proposed Bid Protections | Key Terms of Proposed Sale |
|---|---|---|---|---|
| | | | | |

A copy of the proposed Winning Bid is attached to a Notice filed with the Court at Docket No. [ --- ].

The Sale Hearing to consider approval of the proposed sale to the Winning Bidder will be held on May [3], 2024, at [●] [a/p].m. (Eastern Time) before the Honorable John T. Dorsey, United

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number, is CAPREF Lloyd Center East, LLC (1920) and the location of its service address is 4514 Travis Street, Suite 208, Dallas, TX 75205.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order or the Bidding Procedures, as applicable.

States Bankruptcy Court for the District of Delaware, located at 824 Market Street, Fifth Floor, Wilmington, Delaware 19801 [302-252-2900].

Unless the Court orders otherwise, the Sale Hearing will be an evidentiary hearing on matters relating to the proposed Sale; there will be no further bidding at or in conjunction with the Sale Hearing.  If a Winning Bidder refuses or otherwise cannot consummate the applicable Sale Transaction following entry of a Sale Order, the Backup Bidder (if any) will be deemed the new Winning Bidder and the Debtor shall be authorized, but not required, to finalize, consummate, and close on the Backup Bid without further order of the Court.

This notice is subject to the terms and provisions of the Order and Bidding Procedures, with the Order controlling in the event of any conflict.  The Debtor encourages parties in interest to review such documents in their entirety.  Copies of the Motion, the Order, the Bidding Procedures, and any other related filings are available: (a) for a fee via PACER by visiting https://pacer.uscourts.gov, or (b) upon reasonable written request made to undersigned counsel for the Debtor.

Dated: April __, 2024

**ASHBY & GEDDES, P.A.**

*/s/*_____
Gregory A. Taylor (No. 4008)
Michael D. DeBaecke (No. 3186)
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801
Phone: (302) 654-1888
Email: GTaylor@ashbygeddes.com
        MDeBaecke@ashbygeddes.com

*Counsel for the Debtor*